# STEIN & VARGAS LLP

Overcoming Barriers | Ensuring Communication | Creating Access

May 29, 2020

**VIA ELECTRONIC MAIL**
Michael Bernstein, Ph.D.
Michael.Bernstein@stonybrook.edu
Presidents_Office@stonybrook.edu
Interim President, Stony Brook University
310 Administration Building
Stony Brook, NY 11794-0701

Kenneth Kaushansky, M.D.
Kenneth.Kaushansky@stonybrookmedicine.edu
Dean, Renaissance School of Medicine at Stony Brook University
101 Nicolls Road
Health Sciences Center, Level 4
Stony Brook, NY 11794-8434

   RE: Medical Student Robert Sampson

Dear Dr. Bernstein and Dr. Kaushansky:

  My firm has been retained to represent Robert Sampson who is a medical student at Renaissance School of Medicine at Stony Brook University ("the Medical School").

  Mr. Sampson is a gifted student with dyslexia and ADHD who was approved by the Medical School to begin receiving accommodations for his disabilities based on the results of comprehensive psychoeducational evaluation. Prior to receiving these accommodations, Mr. Sampson struggled to overcome his disabilities in the absence of necessary accommodations. In December of 2016, Mr. Sampson was brought before the CAPP committee.[1] Mr. Sampson was open with the Committee about his disabilities, their impact on his test performance, and his need for accommodation. The Committee concluded that Mr. Sampson was eligible to continue his medical education. In reaching this conclusion, the CAPP Committee placed a condition on Mr. Sampson that it does not impose on his classmates. Specifically, the CAPP Committee required Mr. Sampson to take and pass Step 1 of the United States Medical Licensing

---

[1] There is concerning discrepancy in the calculation and application of marginality points that resulted in Mr. Sampson being brought before the CAPP Committee. While it appears that he should not have been brought before the CAPP Committee at all, Mr. Sampson has been and remains motivated to do all that is asked of him to prove that he is a student of whom the Medical School can be proud.

Examination ("USMLE") in advance of the rest of his peers as a condition of continuing his education.

Mr. Sampson has been on Leave of Absence since December 2016 attempting to comply with the Medical School's requirement that he take and pass Step 1 of the USMLE before continuing his medical education. He has been diligent in submitting documentation to the National Board of Medical Examiners ("NBME") and in requesting the accommodations that his doctors and the Medical School agree he needs in order to demonstrate his knowledge on Step 1.

As is unfortunately the case for many gifted medical students who require extended testing time and other accommodations due to dyslexia and ADHD, Mr. Sampson's requests for accommodation have thus far been denied by the NBME. As a result, Mr. Sampson attempted Step 1 without accommodation. This effort was not successful. Notably, without necessary accommodations, his test results measured the extent of his disability, rather than the extent of his knowledge and skill.

Now, Mr. Sampson has been instructed to appear before the CAPP committee on June 1, 2020. He has been instructed to appear remotely without legal representation.

I write to make pellucidly clear that removing Mr. Sampson from medical school under the present circumstances would be discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act ("ADA").

Both Section 504 and the ADA prohibit discrimination on the basis of disability to include the application of discriminatory criteria and the requirement that students test without necessary accommodations. Specifically, Section 504 provides, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. §794(a).  Likewise, Title II of the ADA provides, "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

The ADA is crystal clear that students with disabilities should only be subjected to testing administered ". . . in a place and manner accessible to persons with disabilities..." 42 U.S.C. §12189 (emphasis added). The U.S. Department of Justice regulations further provide that examinations be

> … administered so as to *best ensure* that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to

measure).

28 C.F.R. §36.309(b)(1)(i) (emphasis added).

Unfortunately, students who require accommodations from the NBME face significant obstacles. In two recent cases, it took federal courts ordering the NBME to provide extended testing time to medical students who, like Mr. Sampson, had faced repeated denials of accommodation requests by the NBME that had resulted in delay in their medical education. *See Ramsay v. NBME*, Civ. A. No. 19-CV-2002, 2019 U.S. Dist. LEXIS 222782 (E.D. Pa. Dec. 30, 2019); *Berger v. NBME*, Case No.: 1:19-cv-99, 2019 U.S. Dist. LEXIS 145666 (S.D. Ohio Aug. 27, 2019). In both of these recent cases the students who were awarded injunctions by federal judges were gifted students who like Mr. Sampson were diagnosed with dyslexia and ADHD later in their education.[2]

To its credit, the Medical School has supported Mr. Sampson's requests for accommodation to the NBME. Notably, Christopher Heedles, LMSW, stated that it was "imperative" that Mr. Sampson receive accommodations for Step 1 and described Mr. Sampson as "a truly dedicated and hard-working student," who is "honest, dependable" and who does whatever is asked of him "in the highest quality possible, when properly accommodated." See Letter from Christopher Heedles, Stony Brook Disability Support Services to the NBME, dated 3/27/2017. Likewise in March of 2017, Linda DeMotta, the Learning Specialist at Stony Brook University School of Medicine reported to the NBME that Mr. Sampson needed accommodation for his disability, that once he received appropriate accommodations he was a student "in good standing" and that taking examinations without the necessary accommodations would result in Mr. Sampson being unfairly tested on his disabilities rather than his knowledge. See Letter from Linda DeMotta to NBME, March 2019.

Yet it now appears knowing Mr. Sampson needs accommodation to demonstrate his knowledge on Step 1, the Medical School is conditioning his remaining a medical student at Stony Brook on taking and passing Step 1 earlier than his peers and without the accommodations the Medical School has gone on record confirming he needs. Such action violates both Section 504 and the ADA. As the United States Court of Appeals held, Section 504 and the ADA require medical schools to "start by considering how [its educational programs] are used by non-disabled [medical school students] and then take reasonable steps to provide [the medical student] with a like experience." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 451 (8th Cir. 2013). The Medical School is violating this federal mandate by subjecting Mr. Sampson to a different, higher standard than students without disabilities.

Should the Medical School proceed with this discriminatory action, the harm to Mr. Sampson would be significant. Notably, if Mr. Sampson is not enrolled as a student at Stony Brook he is not eligible to register to take Step 1. In other words, should Stony Brook persist in requiring Mr. Sampson to take and pass Step 1 before his peers and without necessary accommodations, his medical career is over. Without the ability to register and seek the opportunity to test with necessary accommodations, he is left with no choice but to pursue legal action.

---

[2] Both the *Berger* and the *Ramsay* cases are currently on appeal.

Obviously, requiring Mr. Sampson to take Step 1 earlier than his peers put Mr. Sampson at a disadvantage not only because he was required to take and pass Step 1 with less experience and knowledge than his peers but because the NBME routinely delays the processing of requests for accommodation by students with disabilities and likewise routinely denies accommodations to students with dyslexia and ADHD despite the clear requirements of the Americans with Disabilities Act and section 504 of the Rehabilitation Act.[3]

It would likewise be discriminatory to disregard that Mr. Sampson has been on Leave of Absence because he is unable to get the accommodations the Medical School agrees he needs in calculating the time within which Mr. Sampson must complete his medical degree.

It is my hope that the Medical School is invested in Mr. Sampson and will support his right to be tested based on his knowledge and skill with appropriate accommodations. To this end, I propose that Mr. Sampson be permitted to proceed with his medical education, with the understanding that he will need to take and pass Step 1 at the same point in his education as required of other students, after completion of Phase II classes during his third year and before beginning Phase III classes. Furthermore, Mr. Sampson will continue to seek appropriate accommodation from the NBME so that he can take and pass the test under an equitable test administration as soon as possible. Should the NBME continue to deny necessary accommodations at such time as Mr. Sampson completes Phase II classes, the law would require the Medical School to permit Mr. Sampson to remain a student in good standing on leave of absence pending his ability to take a fair administration of Step 1.

Our firm has a special focus on advocating on behalf of medical students with disabilities both with medical schools and against the NBME. As you are no doubt aware, there is a critical shortage in medical providers for individuals with disabilities. A key national study concluded that a primary reason for the disability community being underserved in medicine is the lack of medical professionals who themselves have disabilities.  Our focus on ensuring equal access for medical students with disabilities addresses this gap in care while also ensuring that talented and compassionate professionals with disabilities are judged based on their skills rather than sidelined by discriminatory barriers. For example, our firm litigated *Argenyi v. Creighton University*, Case No. 8:09CV341, 2014 U.S. Dist. LEXIS 63726 (D. Neb. May 8, 2014), winning a key victory in the U.S. Court of Appeals for the Eighth Circuit, winning a lengthy jury trial, and consequently being awarded $478,000 in legal fees and costs to be paid by Creighton University. Likewise, we have served as counsel in cases against the NBME for discrimination based on disability. For example, we recently prevailed in obtaining an injunction against the NBME after a hearing in December 2019 in *Ramsay v. National Board of Medical Examiners*.

---

[3] Notably, is was Mr. Sampson's leadership and advocacy that lead the Medical School to move the deadline for taking Step 1 from before second year to the third year. While this change was optional the first year it was in effect, the additional learning time prior to taking Step 1 was so beneficial that it was made permanent. Students who took Step 1 in 3rd year rather than before second year scored approximately 10 points higher on Step 1 demonstrating the importance of additional learning before taking Step 1. It is the ultimate irony that Mr. Sampson was responsible for a positive change to Medical School policy for all of his peers – and he alone did not benefit from that change.

    It is our strong preference to work cooperatively. Mr. Sampson values the education he has received at Stony Brook and is eager to prove himself. He is eager to resume his education and I would welcome the opportunity to discuss with counsel how that might be achieved. I am gravely concerned that the CAPP Committee is poised to make a decision on June 1, 2020 that would violate Mr. Sampson's federally protected rights, and leave us litigating against each other for a number of years as we seek to glue back together his future. I respectfully ask that the CAPP Committee ensure that it complies with Section 504 and the ADA.

    I can be reached at Mary.Vargas@steinvargas.com or at 240-793-3185 and would welcome the opportunity to discuss a resolution that is in everyone's best interests.

    Sincerely,

    *[signature]*

    Mary Vargas

Cc:

Andrew Wackett, MD
Andrew.wackett@stonybrookmedicine.edu