UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT SAMPSON,

                              *Plaintiff,*

                v.

STONY BROOK UNIVERSITY; and MAURIE
MCINNIS, in her official capacity as President of
Stony Brook University,

                              *Defendants.*

2:22-cv-04490
(JMA) (AYS)

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

Helena Lynch
Assistant Attorney General,
 *of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

STATEMENT OF FACTS.....................................................................................................3

    A.    Relevant Academic Policies and Procedures......................................................3

    B.    Plaintiff's Academic Record at the School of Medicine..................................5

STANDARDS ON MOTION FOR PRELIMINARY INJUNCTION ...................................10

ARGUMENT.....................................................................................................................11

POINT I
PLAINTIFF FAILS TO SHOW A LIKELIHOOD OF SUCCESS ON HIS CLAIMS, OR A
SERIOUS QUESTION AS TO THE MERITS ALONG WITH A BALANCE OF
HARDSHIPS TIPPING IN HIS FAVOR .............................................................................11

    A.    Standards for Failure-to-Accommodate Claim under ADA or Rehabilitation
        Act ......................................................................................................................11

    B.    Plaintiff Fails to Show Likelihood of Success or a Serious Question as to the
        Merits of His Claim that Defendants Failed to Offer a Reasonable
        Accommodation ................................................................................................13

    C.    Plaintiff Fails to Show that the Balance of the Hardships Tips in His Favor 21

POINT II
PLAINTIFF FAILS TO SHOW IRREPARABLE HARM CAUSED BY DEFENDANTS, OR
THAT THE INJUNCTION HE SEEKS IS IN THE PUBLIC INTEREST ...........................22

CONCLUSION .................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**  **Page**

*Alexander v. Choate,*
469 U.S. 287 (1985)...............................................................................12

*Branum v. Clark,*
927 F.2d 698 (2d Cir. 1991) ...................................................................14

*Brief v. Albert Einstein Coll. of Medicine,*
423 F. App'x 88 (2d Cir. 2011) ..........................................................17, 18

*Dean v. University of Buffalo School of Medicine and Biomedical Sciences,*
804 F. 3d 178 (2d Cir. 2015) ...........................................................13, 17, 19, 20

*Doe v. St. Louis Univ. School of Medicine,*
No. 4:12-cv-905, 2013 WL 1305825 (E.D. Mo. Mar. 28, 2013) ........................................18

*Doe v. Samuel Merritt University,*
921 F. Supp. 2d 958 (N.D. Ca. 2013)...................................................................19

*Garcia v. SUNY Health Scis. Ctr. of Brooklyn,*
280 F.3d 98 (2d Cir. 2001) ...................................................................2, 13

*J.C. v. Rowan University School of Osteopathic Medicine,*
No. 17-2778, 2018 WL 447615 (D.N.J. Jan. 17, 2018) ........................................20

*Kaltenberger v. Ohio Coll. of Podiatric Med.,*
162 F.3d 432 (6th Cir. 1998) ...................................................................12

*Lipton v. New York Univ. Coll. of Dentistry,*
865 F. Supp. 2d 403 (S.D.N.Y. 2012)................................................... *passim*

*McCoy v. Eastern Virginia Medical School,*
No. 11-cv-494, 2012 WL 662529 (E.D. Va. Feb. 28, 2022) ................................20

*McElwee v. County of Orange,*
700 F.3d 635 (2d Cir. 2012) ...................................................................12

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018) ...................................................................................10

*Perros v. County of Nassau*,
238 F. Supp. 3d 395 (E.D.N.Y. 2017) ...........................................................2, 13

*Powell v. Nat'l Bd. of Med. Examiners*,
364 F.3d 79 (2d Cir. 2004) ........................................................................11, 12, 18

*Shaikh v. Texas A and M University College of Medicine*,
739 F. App'x 215 (5th Cir. 2018) ......................................................................20

*Stewart v. Metro. Transportation Auth.*,
566 F. Supp. 3d 197 (E.D.N.Y. 2019) ..........................................................10, 22

*Sussman v. Crawford*,
488 F.3d 136 (2d Cir. 2007) ...............................................................................10

*White v. Creighton Univ.*,
No. 06-cv-536, 2006 WL 2871830 (D. Neb. Aug. 11, 2006).........................22, 24

*Wong v. Regents of University of California*,
192 F. 3d 807 (9th Cir. 1999) .............................................................................20

*Wright v. Nat'l Bd. of Med. Examiners*,
No. 21-cv-02319, 2021 WL 5028463 (D. Colo. Oct. 15, 2021)...........................23

*Yousaf v. Curators of Univ. of Missouri*,
No. 4:18-cv-00321, 2018 WL 5839395 (W.D. Mo. Nov. 7, 2018) ......................24

**Federal Statutes**                                                                   **Page**

42 U.S.C. § 12112(b)(5)(A) ....................................................................................12

**State Statutes**                                                                     **Page**

N.Y. Educ. Law § 351............................................................................................1

N.Y. Educ. Law § 352............................................................................................1

## PRELIMINARY STATEMENT

Defendants, State University of New York[1] and Maurie McInnis, by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in opposition to Plaintiff's motion for a preliminary injunction. This memorandum of law is accompanied by the Declaration of Andrew Wackett, M.D. ("Wackett Decl."), with its annexed Exhibits 1-11, and the Declaration of David Cohen, M.D. ("Cohen Decl."), with its annexed Exhibits A-C.

Plaintiff seeks a preliminary injunction requiring Stony Brook University's Renaissance School of Medicine (the "School of Medicine") to violate its own policies and dilute its standards by allowing Plaintiff—who has not completed his medical degree within the seven-year maximum time allotment applicable to all students, despite being provided accommodations—to remain enrolled as a student indefinitely while he belatedly pursues litigation against the National Board of Medical Examiners ("NBME"), a third-party over whom Defendants have no control. Since 2017 Plaintiff has been seeking a time-limit accommodation from the NBME for a national test he was required to pass before continuing his studies at the School of Medicine, and he has known since at least May 2020 that he would need to seek judicial relief against the NBME, but he did

---

[1] As a subdivision of SUNY, Stony Brook University is not a legally cognizable entity separate from SUNY. *See* N.Y. Educ. Law §§ 351 and 352. Therefore, SUNY Stony Brook is not a proper defendant in this action.

not file a lawsuit against the NBME until August 29, 2022, even though his deadline to complete his studies at the School of Medicine was August 12, 2022.

Plaintiff is not entitled to the injunction he seeks. *First*, Plaintiff fails to show either that he is likely to succeed on the merits of his claims, or a serious question as to the merits along with the balance of hardships tipping in his favor. Plaintiff asserts failure-to-accommodate claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, but neither of those statutes requires Defendants[2] to provide an accommodation that would fundamentally alter the School of Medicine's academic requirements. Instead, those statutes require educational institutions only to provide reasonable accommodations. The indefinite suspension of the deadline to complete studies that Plaintiff seeks is a fundamental alteration of the School of Medicine's academic requirements that is, as a matter of law, not reasonable. And the balance of hardships does not tip in Plaintiff's favor. Plaintiff is not going to receive his medical degree, but that is because he cannot satisfy the requirements, and the School of Medicine, like all professional educational institutions, must be able to ensure that *all* of its

---

[2] This memorandum refers to "Defendants" merely for ease of reference. Plaintiff's claims against Defendant McInnis are subject to dismissal at the outset because no individual liability is recognized under the ADA Title II or the Rehabilitation Act. *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017) ("[I]t is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity.").

graduates meet the same standards. The public interest requires no less. Patients seeking treatment are entitled to be secure in the knowledge that their medical providers have undergone the training that their degrees represent.

*Second*, because the circumstances Plaintiff alleges were caused by his actions and by the NBME, and not by Defendants, Plaintiff cannot show irreparable harm. It is the NBME, a third party over which Defendants have no control, that is refusing to provide a testing accommodation, and Plaintiff has known for years that he would need to seek judicial relief against the NBME in order to have any chance of getting a testing accommodation. Yet he waited until August 29, 2022, which is two weeks *after* he was required to complete his medical studies, to file a lawsuit against the NBME. *Finally*, for the same reasons that the balance of the hardships tips in favor of Defendants, the public interest tips their way. The public has an obvious interest in having assurances that medical providers are held to consistent standards. Plaintiff's motion should be denied.

**STATEMENT OF FACTS**

### A.  Relevant Academic Policies and Procedures

The School of Medicine has in place a Medical Student Academic Policies and Procedures Manual ("APP Manual"). *See* APP Manual, annexed as Exhibit 1 to Wackett Decl.[3]; *see also* Pl.'s Ex. K (ECF 3-12). The APP Manual applies equally to all students, who

---

[3] Exhibits to the Wackett declaration are designated numerically and are cited herein as "Ex. 1," "Ex. 2," etc. Exhibits to the Declaration of David Cohen are designated alphabetically and are cited herein as "Ex. A," "Ex. B," etc.

are expected to be familiar with its contents. *See* Ex. 1 § 1.1. The School of Medicine has a Committee on Academic & Professional Progress ("CAPP"), which is charged with interpreting and applying the provisions of the APP Manual. Ex. 1 § 1.1.

The curriculum for the MD degree consists of three phases: Phase I; Phase II; and Phase III. Ex 1 § 2.4.1. The School of Medicine uses a Pass/Fail grading system for Phase I courses. Ex. 1 § 5.1. Students are normally permitted to retake exams that are failed on the first attempt. Ex. 1 § 5.5.1. A student may contest a final course grade by submitting a written request within five days of the grade being posted on the electronic database of student records referred to as "CBase." Ex. 1 § 5.4.

If a student displays a pattern of marginal academic performance, CAPP may require the student to repeat a Phase, or CAPP may dismiss the student from the educational program. Ex. 1 § 5.5.1.

All students are also required to take certain national exams not administered by the School of Medicine. For example, all students must take and pass the three-step United States Medical Licensing Examination ("USMLE"), administered by the NBME. At the time Plaintiff enrolled in the School of Medicine, all students were required to take the first step of this exam, USMLE Step 1 (or "Step 1"), after the completion of their Phase I studies, but the rule was later changed to require students to take Step 1 within eight weeks of the completion of Phase II of their academic studies and prior to beginning any Phase III course work. Ex. 1 § 9.2.1.

4

A student who fails to take the Step 1 exam by the deadline or who requests extended time to prepare for the exam will be placed on a leave of absence for academic remediation. *Id.* A student who fails the first attempt of the Step 1 exam must take a repeat Step 1 exam within six months of the first attempt. Ex. 1 § 9.2.1. The student must retake and pass the Step 1 exam before continuing any course work. *Id.*

Students must complete all requirements for the MD degree within seven years of their initial enrollment, except students enrolled in an approved combined degree program may receive more time. Ex. 1 § 2.5.3.

A medical student may request a leave of absence from the School of Medicine to participate in an educational program. Ex. 1 ¶ 4.7.3. The request must be made in writing to the Associate Dean for Student Affairs and must include a written petition specifying the "goals, scope and duration of study, and written verification from the supervisor of such activity." *Id.* Students seeking such a leave of absence after completing Phase II must complete the USMLE Step 1 and Step 2 exams as well as the School of Medicine's Clinical Performance Exam prior to starting the leave of absence. Ex. 1 § 4.7.4.

### B.  Plaintiff's Academic Record at the School of Medicine

Plaintiff's enrollment in the School of Medicine began August 12, 2015. Sampson Decl. (ECF No. 3-2) ¶ 14. Plaintiff was diagnosed earlier in his life with Attention Deficit Hyperactivity Deficit Disorder ("ADHD") and unspecified learning disabilities. Compl. ¶ 17; Samson Decl. (ECF No. 3-2) ¶¶ 10, 11. Upon his enrollment in the School of

5

Medicine, Plaintiff did not seek accommodations from the School of Medicine for these disabilities. Sampson Decl. ¶ 14; Compl. ¶ 29; Ex 3.

Plaintiff completed his first year of studies in the Spring of 2016. Pl.'s Ex. D (ECF 3-5). In November 2016, Plaintiff was notified by CAPP that his Phase I record showed a pattern of academic marginality. Ex. 2. CAPP is authorized to require that students showing a pattern of academic marginality repeat all or part of the curriculum or that they be dismissed from the School of Medicine. Ex. 1 § 5.5.1. Plaintiff was invited to a meeting held by CAPP to discuss his record. *Id*. Pursuant to that meeting, Plaintiff was told that, because of his pattern of academic marginality, he must (1) repeat two of the Phase I courses; or (2) stop his studies and prepare for the Step 1 exam, and (3) then take and pass the Step 1 exam before May 31, 2017. Ex. 3. Plaintiff was also told that if he failed the Step 1 exam he would be required to retake Phase I. *Id*. Plaintiff informed CAPP that he had diagnosed learning disabilities, but that he had not sought testing accommodations from the School of Medicine. Ex. 3.

Plaintiff appealed this decision, which was referred back to CAPP for reconsideration. Ex 4. After a meeting on January 9, 2017, at which Plaintiff was given an opportunity to present his views, and upon reconsideration, CAPP determined that Plaintiff could repeat Phase I or retake and pass only the Endocrine/Reproductive course. *Id*. If he chose to retake only the Endocrine/Reproductive course, upon completion of Phase I, he would be required to stop and prepare for the Step 1 exam, and take and pass

the Step 1 exam by May 31, 2017, before proceeding with the start of Phase II. As before, CAPP required that if Plaintiff failed the Step 1 exam, he would be required to repeat Phase I. *Id*.

Plaintiff chose to take the Step 1 exam rather than repeat any of his Phase I course work. Sampson Decl. ¶ 39. Plaintiff applied to the NBME for an accommodation which would allow him additional test-taking time for the Step 1 exam, but that accommodation was denied. Sampson Decl. ¶¶ 40, 41. On or about July 10, 2017, Plaintiff informed Dr. Andrew Wackett, the Vice Dean for Undergraduate Medical Education, of the NBME's denial of his request for a testing accommodation. Wackett Decl. ¶¶ 22, 23.

CAPP invited Plaintiff to a meeting to be held August 7, 2017 regarding his plans to take the Step 1 exam (which he was supposed to have taken by May 31, 2017). Ex. 5. CAPP invited Plaintiff to retake Phase I except for any course for which he scored above the class mean *Id*. Plaintiff was reminded that he must complete all course requirements for the MD degree within seven years of his initial enrollment. *Id*. Plaintiff was also notified that if he again chose to take the Step 1 exam instead of repeating any of Phase I, he should take the Step 1 exam no later than July 2018. *Id*.

In the meantime, Plaintiff appealed the NBME's denial of his request for an accommodation for the Step 1 exam, but the NBME denied his appeal. Sampson Decl. ¶¶ 42, 45. The School of Medicine assisted Plaintiff with his requests to the NBME. Pl.'s Ex. G (ECF No. 3-8), at 3 ("To its credit, the Medical School has supported Mr. Sampson's

7

requests for accommodation to the NBME."). The NBME repeatedly denied Plaintiff's

requests for a testing accommodation between 2017 and 2019. Sampson Decl. ¶¶ 45.

By email date July 17, 2017, Plaintiff notified Dr. Wackett that he had retained

counsel to assist him with his requests to the NBME, but NBME's policy prevented him

from signing up for a test date until his request for an accommodation was resolved. Ex.

6. Plaintiff also stated: "I also understand that the school policy is clear that all

requirements for the MD degree must be met within seven years after the date of first

enrollment in the School of Medicine." *Id*. In August 2018, CAPP notified Plaintiff that it

saw only two possible paths forward for him: either restart Phase I in August 2018 (which

CAPP recommended) or take the Step 1 exam in a timeframe that would allow him to

complete his studies within the seven-year limit. Ex. 7.

In November 2019, Plaintiff notified Dr. Wackett that he intended to take the Step

1 exam by the end of December 2019. Ex. 8. Then, in February 2020 the School of Medicine

learned that Plaintiff had taken the Step 1 exam in January 2020 and had failed. Wackett

Decl. ¶ 32.

CAPP held a virtual meeting on June 1, 2020, which Plaintiff attended. Ex. 9. CAPP

reminded Plaintiff that it had been recommending since December 2016 that he repeat

Phase I, to ensure that he had the foundation of medical knowledge necessary to proceed

to Phase II, but that Plaintiff instead had chosen to take the Step 1 exam as the way to

prove his knowledge of the Phase I material. *Id*. CAPP also noted that Plaintiff had been

reminded repeatedly of the seven-year time limit for completing the requirements for the MD degree. *Id*. Because it was then June 2020, and Plaintiff had failed the Step 1 exam and was unable to proceed to Phase II of his studies, it was no longer possible to complete his studies within the seven-year period, and CAPP would recommend he be dismissed from the School of Medicine. *Id*.

Plaintiff appealed CAPP's recommendation to Dr. Kenneth Kaushansky, then the Dean of the School of Medicine. Ex. 10. Dean Kaushansky determined that Plaintiff would be permitted to proceed to Phase II, despite his academic marginality in Phase I and his failure of the Step 1 exam, and that he would be required to take the Step 1 exam at the end of Phase II. *Id*. The Dean reminded Plaintiff that he was required to complete his studies within the seven-year time limit. *Id*.

Plaintiff completed his Phase II course work in July 2021 and was required to take the Step 1 exam by September 12, 2021. Ex. 11. Plaintiff requested permission from the new Dean, Dr. William Wertheim, to postpone the Step 1 exam, but Dean Wertheim denied the request and reminded Mr. Sampson again of the seven-year time limit and of Dean Kaushansky's final determination of July 2020. *Id*.

In April 2021, Plaintiff made a general inquiry about enrolling in an MBA program. *See* Declaration of David Cohen ("Cohen Decl.") ¶ 3; Ex. A. Plaintiff did not request permission to take a leave of absence for the MBA program, as the School of Medicine requires him to do, *see* Ex. 1 § 4.7.4, and no approval was ever given for a leave

of absence for the MBA program. Cohen Decl. ¶ 9. Plaintiff was not entitled to take a leave of absence for the MBA program in any event because all students who have completed Phase II must take the Step 1 and Step 2 exams before beginning such a leave of absence. Ex. 1 § 4.7.4. It is undisputed that Plaintiff has not taken these exams.

Nevertheless, Plaintiff enrolled in the MBA program. *See* Ex. B. Plaintiff still has not taken his Step 1 exam. Plaintiff was required to complete all the requirements for his MD degree by August 12, 2022. *See* Exs. 3-7, 9-11; Sampson Decl. ¶ 79.

## STANDARDS ON MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (internal quotation marks omitted).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The plaintiff must demonstrate that the alleged harm is "caused by Defendants' actions" and "can thus be prevented or mitigated by the specific injunctive relief Plaintiffs' seek." *Stewart v. Metro. Transportation Auth.*, 566 F. Supp. 3d 197, 215 (E.D.N.Y. 2019) (citing *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985)). If the plaintiff fails to show that "he or she suffers some adverse effect from

10

defendant's actions, then the plaintiff cannot also demonstrate any causal relationship between the alleged irreparable harm and the relief sought, and a preliminary injunction is not warranted." *Id*.

## ARGUMENT

**POINT I:**    **PLAINTIFF FAILS TO SHOW A LIKELIHOOD OF SUCCESS ON HIS CLAIMS, OR A SERIOUS QUESTION AS TO THE MERITS ALONG WITH A BALANCE OF HARDSHIPS TIPPING IN HIS FAVOR**

Plaintiff claims that Defendants violated the ADA and the Rehabilitation Act by failing to accommodate his request to remain enrolled in the School of Medicine for an indefinite period of time while he continues his years-long, thus far unsuccessful battle with non-party NBME for a testing accommodation. However, even if Plaintiff succeeds in obtaining the testing accommodation that the NBME has denied at least six times since 2017, Plaintiff will not be able to fulfill the requirements for an MD degree. Plaintiff, therefore, cannot show that the accommodation he requests is reasonable.

### A.  Standards for Failure-to-Accommodate Claim under ADA or Rehabilitation Act

The ADA and Rehabilitation Act "prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in . . . public accommodations. *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified

11

individual with a disability . . . unless [the provider of the service] can demonstrate that the accommodation would impose an undue hardship on" its operations. 42 U.S.C. § 12112(b)(5)(A)). Under the Rehabilitation Act "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

"A defendant is not required to offer an accommodation that imposes an undue hardship on its program's operation" or one that "'would fundamentally alter the nature of the service, program, or activity.'" *Powell*, 364 F.3d at 85 (quoting 28 C.F.R. § 35.130(b)(7)). A public entity, therefore, "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). The accommodation instead need only be reasonable. *Alexander*, 499 U.S. at 301.

In the educational context, "[w]hen reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference." *Powell*, 364 F.3d at 88 (citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985)). A court should "only reluctantly intervene in academic decisions especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998)

12

(internal quotation marks omitted). This is because "institutions of higher learning 'must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.'" *Lipton v. New York Univ. Coll. of Dentistry*, 865 F. Supp. 2d 403, 409 (S.D.N.Y. 2012), aff'd, 507 F. App'x 10 (2d Cir. 2013) (quoting *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n. 6 (1978)).

### B. Plaintiff Fails to Show Likelihood of Success or a Serious Question as to the Merits of His Claim that Defendants Failed to Offer a Reasonable Accommodation

Plaintiff fails to show he is likely to succeed, or even that he has raised a serious question as to the merits, on his claim of a denial of a reasonable accommodation.[4] Plaintiff bears the burden of proving that the accommodation he seeks will allow him to meet the "essential requirements" of the MD degree. *Dean v. University of Buffalo School of Medicine and Biomedical Sciences*, 804 F. 3d 178, 190 (2d Cir. 2015). Plaintiff fails to satisfy his burden. Instead, the accommodation Plaintiff seeks has no chance of allowing him to meet the essential requirements for the MD degree.

As Plaintiff has known all along, the School of Medicine requires students to complete all requirements for the MD degree within seven years of their initial enrollment. Exs. 3-7, 9-11. As Plaintiff acknowledges, the seven-year deadline was

---

[4] Plaintiff shows no chance of success on his claims against Defendant McInnis, which are subject to dismissal at the outset because no individual liability is recognized under the ADA Title II or the Rehabilitation Act. *See supra* n.2; *Garcia*, 280 F.3d at 107; *Perros*, 238 F. Supp. 3d at 402 n.3.

August 12, 2022, Sampson Decl. ¶ 79, and he still must complete at least 40 weeks of course work plus the Step 1 and Step 2 exams, *id*. ¶¶ 1, 22. These facts alone defeat Plaintiff's ability to prove that the accommodation he seeks is reasonable. Plaintiff's academic record further demonstrates why this is so.

Plaintiff's academic performance in Phase I of his studies was marginal. Ex. 2. Plaintiff was offered a set of options to remediate his academic marginality, and to prove, as all students must do, that he has a fundamental knowledge of the course material. These options included repeating all or part of his Phase I courses, or taking and passing the Step 1 exam. Exs. 4, 5. It is undisputed that Plaintiff at all times refused to repeat any of his Phase I course work, and chose instead to take the Step 1 exam, with the requirement that he pass on his first attempt or be required to repeat Phase I. *E.g.*, Ex. 9.[5]

After several delays and after having been given second and third chances, Plaintiff took the Step 1 exam in January 2020, two and one-half years after his initial deadline. *See* Sampson Decl. ¶ 47. He failed the exam. *Id*. Then, in August 2020, despite his failure to fulfill his obligation to demonstrate his knowledge of the Phase I material, as all medical students are required to do, Plaintiff was permitted to advance to Phase II

---

[5] CAPP's earlier determinations, including its finding in 2016 that Plaintiff's academic performance in Phase I was marginal, are not before the Court. Plaintiff disagrees with the mathematical calculation that determined his academic marginality, but accepts that he must prove he can meet the School of Medicine's standards. *See* Pl.'s Ex. G at 1 n.1. In any event, courts have determined that it is not their place, with certain exceptions not applicable here, to "second-guess an educational institution's academic judgments." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

of the curriculum. Ex. 10. Plaintiff was permitted to advance to Phase II of his studies, "despite [his] marginality in Phase I of the medical school curriculum and [his] failure of the USMLE Step 1." *Id*. Plaintiff was notified:

> You are permitted to proceed to Phase II of the curriculum at this time. At the end of Phase II you will take Step 1 of the USMLE. This progression provides sufficient time for you to comply with the [School of Medicine] policy which requires completion of your medical education within seven years of the date of first enrollment.

*Id*.

Plaintiff alleges, incorrectly, that the seven-year rule does not apply to him because he is enrolled in an MBA program. *See* Sampson Decl. ¶ 72. Plaintiff is wrong because he was never approved for a leave of absence for the MBA program. Cohen Decl. ¶ 9. Plaintiff could not have been approved for a leave of absence for an MBA degree because he did not fulfill the requirements. The APP Manual clearly states that a medical student who has completed Phase II of the curriculum must take the Step 1 exam and the Step 2 exam, as well as the School of Medicine's Clinical Performance Exam, before beginning a leave of absence. Ex. 1 § 4.7.4. It is undisputed that Plaintiff does not meet these requirements. Plaintiff also alleges that he was told by the Registrar that his graduation date is May 2023. Sampson Decl. ¶ 60, but this is a specious argument—the Registrar's failure to catch an incorrect date entered on a form filled out by Plaintiff (relating only to student membership in the American Urological Association) does not obviate the School

15

of Medicine's requirements, which had been explained to Plaintiff repeatedly, *see, e.g.*, Exs. 5, 7, 10, 11, and which he plainly understood, *see, e.g.*, Ex. 8.

Even if his deadline were to be moved back to August 12, 2023, Plaintiff still cannot prove that the accommodation he seeks will allow him to fulfill the requirements of the MD degree. Plaintiff refuses to take the Step 1 exam, which he must take and pass before resuming his coursework, until he succeeds in securing a judicial order forcing the NBME to provide a testing accommodation. *See, e.g.*, Pl.'s Mem. at 2. After first being denied an accommodation by the NBME in 2017, Plaintiff waited more than five years, until August 29, 2022, to file his lawsuit. *See Sampson v. Nat'l Bd. of Med. Examiners*, No. 2:22-cv-05120 (E.D.N.Y.). Accepting as true Plaintiff's allegation that he has forty weeks of academic studies remaining, *see* Compl. ¶ 9, Plaintiff would have to begin Phase III of his studies before November 5, 2022, forty weeks prior to August 12, 2023.[6] This means Plaintiff would necessarily have to prevail in his lawsuit against the NBME, which is far from guaranteed, and he would have to do so far enough in advance of November 5, 2022 to register for and take his Step 1 exam, and to receive the results. Plaintiff simply cannot show any plausible scenario under which that could occur.

In addition to Plaintiff's failure to show that the accommodation he seeks would allow him to complete the requirements for an MD degree, Defendants demonstrate conclusively that the accommodation Plaintiff seeks is unreasonable because it would

---

[6] *See* https://www.timeanddate.com/.

"require a fundamental or substantial modification to the nature of [the School of Medicine's] academic program or standard." *Dean*, 804 F.3d at 190. The accommodation Plaintiff seeks would require Defendants to dispense with the seven-year requirement, a policy which is presumptively reasonable: "it is not the business of the court to adjudge the wisdom of generally-applicable academic policies." *Lipton v. New York Univ. Coll. of Dentistry*, 865 F. Supp. 2d 403, 409 (S.D.N.Y. 2012), aff'd, 507 F. App'x 10 (2d Cir. 2013). The record also shows conclusively that Defendants carefully considered and diligently researched whether allowing an accommodation would require "a fundamental alteration to the academic caliber of its offerings." *Id*. at 191. Defendants repeatedly considered Plaintiff's academic record and explored options that would allow him to fulfill the School of Medicine's policy that all requirements for the MD degree be completed within seven years. *See, e.g.*, Exs. 2-6, 8-11.

Courts have consistently found that accommodations akin to that sought by plaintiff are not required by the ADA or the Rehabilitation Act. For example, in *Brief v. Albert Einstein Coll. of Medicine*, 423 F. App'x 88 (2d Cir. 2011), the Second Circuit affirmed summary judgment in favor of the defendant where the plaintiff sought to continue his studies even though his previous academic failures required his dismissal from the program. *Id*. at 92. The Court explained that the school was not required to ignore its own by-laws and that it had, just as Defendants herein have done, merely "made the permissible—and non-discriminatory—academic decision that permitting [the plaintiff]

17

to continue would be contrary to its promulgated academic standards concerning failures of examinations." *Id.* at 91 (internal quotation marks, alterations, and ellipses omitted). Here, Plaintiff's request to continue as a student while he waits indefinitely for an uncertain court-ordered accommodation from the NBME would require Defendants to ignore the School of Medicine's seven-year policy. As the *Brief* court explained, "[u]nder *Powell*, these facts do not present a claim for disability-based discrimination under federal law." *Id.* at 92.

Similarly, in *Lipton*, the court ruled that the ADA and Rehabilitation Act did not require the defendant dental school to "indefinitely extend" the plaintiff's "time to complete [the school's] academic courses." 865 F. Supp. 2d at 405-06. The court explained that the defendant "has a right to impose a time in which its graduation requirements must be completed. Such time periods have the obvious and important purpose of contributing to the discipline and rigor desirable in a professional education." *Id.* at 410. The plaintiff, like Plaintiff herein, had been granted testing accommodations, but the court recognized the line between "the time allowed for an *individual test* [and] the time—in terms of months or years, and number of opportunities—to take and pass the" national exam at issue. *Id.* (emphasis in original). The court held that the extension sought by the plaintiff amounted to a "waiver of graduation requirements, which under the circumstances of the case, the law does not impose on" the defendant. *Id.* (internal quotation marks omitted). In a case resembling the instant matter, *Doe v. St. Louis Univ.*

18

*School of Medicine*, No. 4:12-cv-905, 2013 WL 1305825 (E.D. Mo. Mar. 28, 2013), the court, following *Lipton*, rejected an accommodation similar to that sought by Plaintiff herein, explaining that the "plaintiff's requested accommodations demand that [defendant medical school] waive its standard graduation policies, re-enroll plaintiff in the medical program but put his training on 'hold' for an indeterminate amount of time, and allow plaintiff an unspecified amount of time in months or years to pursue actual test-taking accommodations from a third-party (which has already rejected said requested accommodations)." *Id*. at *12.

The case law, accordingly, establishes that the accommodation sought by Plaintiff is not reasonable. The cases relied on by Plaintiff do not demonstrate otherwise. Plaintiff relies on *Dean*, but *Dean* is distinct because it involved request to accommodate a new disability that arose after the plaintiff twice failed the Step 1 exam. 804 F.3d at 183-84, 188. Plaintiff herein, by contrast, seeks an indefinite suspension of the rules so he can seek the same accommodation from the NBME that has been denied repeatedly since 2017, with Plaintiff herein meanwhile waiting more than five years before seeking judicial relief.

Other cases cited by Plaintiff similarly fail to demonstrate that his claims have merit. *Doe v. Samuel Merritt University*, 921 F. Supp. 2d 958 (N.D. Ca. 2013), involved the specific factual issue of whether the defendant's "three strikes" limit on test taking fit within the school's stated policy goal (of higher academic standards). *Id*. at 969. That

question has no relevance here, where there is no dispute that the School of Medicine's policy requires students to complete their MD degree within seven years.

*J.C. v. Rowan University School of Osteopathic Medicine*, No. 17-2778, 2018 WL 447615 (D.N.J. Jan. 17, 2018), also involved factual disputes that have no relevance here, including that the plaintiff in *J.C.* had, similarly to the plaintiff in *Dean*, received several new diagnoses after having failed an exam for the second time. *Id*. at **4-6. *McCoy v. Eastern Virginia Medical School*, No. 11-cv-494, 2012 WL 662529 (E.D. Va. Feb. 28, 2022), is entirely irrelevant because there the plaintiff alleged that the defendant failed to provide testing accommodations. *Id*. at *2. Here, there is no question that the School of Medicine provided testing accommodations.

*Shaikh v. Texas A and M University College of Medicine*, 739 F. App'x 215 (5th Cir. 2018), is similarly irrelevant: that case involved evolving circumstances where the plaintiff finally received an accurate diagnosis approximately three years after he began showing symptoms, which had resolved his medical problems. *Id*. at 216-17. In *Wong v. Regents of University of California*, 192 F. 3d 807, 818-19 (9th Cir. 1999), the university failed to show that it had investigated the plaintiff's proposed accommodation to determine whether it could feasibly implement it without substantially altering its standards. Here, by contrast, the record is replete with demonstrations of Defendants' efforts to enable Plaintiff to finish his medical degree within seven years. Exs. 3-6, 8-11.

In sum, Plaintiff fails to show that the accommodation he seeks is reasonable: he fails to show that he can complete the requirements for an MD degree, and Defendants have shown conclusively that the indefinite suspension of the rules that Plaintiff seeks would fundamentally alter the School of Medicine's academic requirements.

### C.  Plaintiff Fails to Show that the Balance of the Hardships Tips in His Favor

Even if Plaintiff had shown a "serious question on the merits" of his claims, which he has not done, he is not entitled to a preliminary injunction because he fails to also show, as he must, that the balance of hardships tips in his favor.

Although Plaintiff is not going to receive his medical degree, this hardship is a result of Plaintiff's actions and decisions, tracing all the way back to his initial decision not to seek testing accommodations from the School of Medicine for his Phase I studies. *See* Ex. 3. Plaintiff could have repeated his Phase I studies with testing accommodations to demonstrate his knowledge of the Phase I material, as all students must do, but he refused to do that. *See* Ex. 9. No later than May 2020, Plaintiff was aware that if he wanted to obtain a testing accommodation from the NBME for the Step 1 exam, he would have to seek judicial relief. Pl.'s Ex. G. However, Plaintiff waited until August 29, 2022, more than two years later, to file a lawsuit against the NBME.

In any event, Plaintiff's alleged hardship, whether self-imposed or not, is juxtaposed against the wide-ranging and grave consequences of requiring Defendants to compromise their academic standards. The School of Medicine must be able to represent

that *all* of its graduates meet its rigorous standards. It hardly needs explaining that medical patients are entitled to be secure in the knowledge that their medical providers fulfill their educational institution's requirements.

It is not accidental that the ADA and Rehabilitation Act do not require accommodations that would fundamentally alter an academic program. This is based on the understanding that a medical school must be able to represent that all of its graduates have satisfied its requirements. Professional academic institutions such as medical schools have an "interest in the preservation of certain standards to make sure that people trained as physicians are competent and capable when attending to the public's serious health needs." *White v. Creighton Univ.*, No. 06-cv-536, 2006 WL 2871830, at *4 (D. Neb. Aug. 11, 2006). Forcing the School of Medicine to dilute its standards would create unacceptable and immeasurable hardships to Defendants, as well as to other learning institutions, the medical community, and the public at large.

**POINT II:   PLAINTIFF FAILS TO SHOW IRREPARABLE HARM CAUSED BY DEFENDANTS, OR THAT THE INJUNCTION HE SEEKS IS IN THE PUBLIC INTEREST**

Plaintiff's motion should be denied for the additional, independent reason that he fails to show irreparable harm. In the context of a motion by a plaintiff seeking emergency relief, the definition of irreparable harm is limited to a harm "caused by Defendants' actions." *Stewart*, 566 F. Supp. 3d at 215. It is plain that the harm Plaintiff alleges does not

meet this definition because it is caused by his own actions and by the NBME, not by Defendants.

Accordingly, where, as here, alleged emergency circumstances are created by a plaintiff's own actions, courts will deny a motion for emergency relief. *See Wright v. Nat'l Bd. of Med. Examiners*, No. 21-cv-02319, 2021 WL 5028463, at *9 (D. Colo. Oct. 15, 2021), appeal dismissed, No. 21-1360, 2021 WL 8086740 (10th Cir. Nov. 19, 2021) ("Another problem is that the emergency nature of this litigation is at least in part due to [the plaintiff's] own choices.").

Plaintiff and the NBME have created the current situation. Plaintiff created the precipitating event of his academic marginality by choosing not to seek testing accommodations from the School of Medicine during Phase I of his studies. Ex. 3; Sampson Decl. ¶¶ 30-32. Then, Plaintiff refused the opportunity to repeat any of the Phase I course work with the benefit of testing accommodations, instead opting to take the Step 1 exam before advancing. *See, e.g.*, Ex. 9. Defendants have no control over the NBME's decision to deny his requests for accommodations. Indeed, the School of Medicine supported Plaintiff's requests to the NBME. *See* Pl.'s Ex. G at 3. Plaintiff has known since 2017 that the NBME was rejecting his requested testing accommodation. *See, e.g.*, Sampson Decl. ¶ 41. And Plaintiff has known since no later than May 2020 that he would have to seek a court order if wanted any chance of receiving a testing accommodation from the NBME. *See* Pl.'s Ex. G (ECF 3-8). In July 2020 Plaintiff was

permitted to begin Phase II of his studies even though he had not demonstrated his foundational knowledge of the Phase I materials, as all students are required to do. Ex. 10. And in July 2020 Plaintiff was told, again, that he must complete the requirements for the MD degree within seven years of his August 12, 2015 enrollment date. *Id*. This included taking the Step 1 exam at the conclusion of his Phase II studies. *Id*. Plaintiff was told that this July 2020 decision was final. *Id*. Yet, Plaintiff waited until August 29, 2022, two weeks *after* the date by which he was required to finish his studies, to file a lawsuit against the NBME.

Accordingly, because Defendants did not create the harm that Plaintiff alleges, Plaintiff cannot show irreparable harm, and his motion for a preliminary injunction should be denied.

In addition to the lack of merit and lack of irreparable harm, a third basis exists for denying Plaintiff's motion. The equities and public interest weigh against Plaintiff because forcing the School of Medicine to keep him enrolled would dilute its standards and impair its ability to dismiss other students who cannot fulfill the requirements for the MD degree. *See Yousaf v. Curators of Univ. of Missouri*, No. 4:18-cv-00321, 2018 WL 5839395, at *3 (W.D. Mo. Nov. 7, 2018). The court in *White* explained:

> The public has an interest in the education and training of physicians—an interest in the preservation of certain standards to make sure that people trained as physicians are competent and capable when attending to the public's serious health needs. This public interest is best served when a medical school is allowed to maintain its academic criteria according to its own judgment. It would go against that interest for a court

24

> to substitute its judgment for that of medical professionals serving as medical school administrators in matters such as admission and advancement criteria for medical students, absent compelling evidence that those standards are a pretext for discrimination.

2006 WL 2871830, at *4. Time-limits for completion of the requirements for an MD degree "have the obvious and important purpose of contributing to the discipline and rigor desirable in a professional education." *Lipton*, 865 F. Supp. 2d at 410. The School of Medicine's ability to require all of its graduates to meet its requirements serves the "obvious and important" public interest of ensuring confidence that all medical providers have been held to the same standards. This public interest far outweighs Plaintiff's desire for an unreasonable accommodation allowing him an open-ended number of years and unlimited attempts to complete his MD degree.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's motion for a preliminary injunction, and grant such other and further relief that the Court deems just and equitable.

Dated: Mineola, New York
   September 9, 2022

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for Defendants*
By: /s/ *Helena Lynch*
Helena Lynch
Assistant Attorney General, *of Counsel*
200 Old Country Road, Suite 240
Mineola, New York
(516) 248-3312 | Helena.Lynch@ag.ny.gov