UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SAMPSON,<br><br>*Plaintiff*,<br><br>v.<br><br>STONY BROOK UNIVERSITY; and MAURIE MCINNIS, in her official capacity as President of Stony Brook University,<br><br>*Defendants*. | 2:22-cv-04490<br>(JMA) (AYS)<br><br>**DECLARATION OF ANDREW WACKETT, M.D.** |

**ANDREW WACKETT** declares, under penalty of perjury:

1.  I am a physician, employed at Stony Brook University's Renaissance School of Medicine, where I hold the positions of Vice Dean for Undergraduate Medical Education; Director, Clinical Simulation Center; and Clinical Associate Professor of Emergency Medicine.

2.  I submit this declaration in support of the Defendants' opposition to plaintiff Robert Sampson's motion for a preliminary injunction.

3.  In my capacity as Vice Dean for Undergraduate Medical Education, my responsibilities include: developing, maintaining, and implementing academic performance standards for undergraduate medical students; participating as an ex-officio member of certain committees, including the Committee on Academic & Professional Progress (CAPP); addressing, both on a global level and on an individual level, on a collaborative basis, issues and problems with student performance.

4. I am familiar with the facts and circumstances related to this litigation. In addition, I am familiar with the Renaissance School of Medicine's ("School of Medicine") recordkeeping with respect to medical students. The School of Medicine maintains an electronic record for each student in an electronic database that is referred to as the "CBase." Students' academic records and electronic copies of all communications between the School of Medicine and students are maintained in their CBase files.

5. The School of Medicine has in place a Medical Student Academic Policies and Procedures Manual, which is provided to all students and is publicly available at all times. *See* Medical Student Academic Policies and Procures Manual ("APP Manual") (available at https://renaissance.stonybrookmedicine.edu/ugme/policies), annexed hereto as **Exhibit 1**.

6. Students are expected to be familiar with the APP Manual, which states:

> Any individual who enrolls in the Renaissance School of Medicine at Stony Brook University voluntarily places oneself under the rules and regulations of the University, the School, and affiliated hospitals, and the individual agrees to abide by these rules and regulations. Therefore, students, faculty, and administrative personnel need to be familiar with these policies and procedures, and they are responsible for remaining familiar with these provisions.

APP Manual (Ex. 1) § 1.1.

7. CAPP is charged with interpreting and applying the provisions of the APP Manual. Ex. 1 § 1.1. Decisions made by CAPP are final, with certain exceptions, including

that decisions resulting in dismissal, suspension, or repeat of a year may be appealed to the Dean of the School of Medicine. Ex. 1 § 1.3.2.2.

8. Students enrolled in the School of Medicine and not enrolled in another degree program must complete their studies within seven years. Ex. 1 § 2.5.2.

9. The School of Medicine's curriculum consists of three phases: Phase I, Phase II, and Phase III. Ex 1 § 2.4.1.

10. The School of Medicine uses a Pass/Fail grading system for Phase I courses. Ex. 1 § 5.1. Students are normally permitted to retake exams should they fail to pass on the first attempt. Ex. 1 § 5.5.1. A student may contest a final course grade by submitting a written request within five days of the grade being posted on CBase. Ex. 1 § 5.4.

11. If a student displays a pattern of marginal academic performance, CAPP may require the student to repeat a Phase, or CAPP may dismiss the student from the educational program. Ex. 1 § 5.5.1.

12. All students are also required to take certain national exams not administered by the School of Medicine. For example, all students must take and pass the three-step United States Medical Licensing Examination ("USMLE"), which is administered by the National Board of Medical Examiners ("NBME"). Students must take the first step of this exam, USMLE Step 1 (or "Step 1"), following the completion of Phase II of their academic studies, and prior to beginning any Phase III courses. Ex. 1 § 9.2.1.

This includes all "out of sync" students, *i.e.*, students who require additional time to complete Phase II. *Id*.

13. An out-of-sync student must take the Step 1 exam within eight weeks of finishing the Phase II course work. Ex. 1 § 9.2.1. A student who fails to take the Step 1 exam by this deadline or who requests extended time to prepare for the exam will be placed on a leave of absence for academic remediation. *Id*. A student who fails the first attempt of the Step 1 exam must take a repeat Step 1 exam within six months of the first attempt. Ex.1 § 9.2.1. The student must retake Step 1 before continuing their course work. *Id*.

14. A student may request a leave of absence ("LOA") to participate in an educational program, which should be made in writing to the Associate Dean for Student Affairs. Ex. 1 ¶ 4.7.3. The request must include a written petition specifying the "goals, scope and duration of study, and written verification from the supervisor of such activity." *Id*. Students seeking a leave of absence after completing Phase II must complete the USMLE Step 1 and Step 2 exams as well as the School of Medicine's Clinical Performance Exam prior to starting the leave of absence. Ex. 1 § 4.7.4.

15. Mr. Sampson enrolled at Stony Brook University's Renaissance School of Medicine ("School of Medicine") on August 12, 2015. He was enrolled as a medical student and, as far as the School of Medicine is aware, was not enrolled in any other degree program, at Stony Brook University ("SBU") or otherwise.

4

16. On November 28, 2016, CAPP notified Mr. Sampson that his academic record from Phase I of his studies, in particular his record of academic marginality, would be discussed at the upcoming CAPP meeting on December 5, 2016. Letter to Robert Sampson (Nov. 28, 2016), copy from Cbase annexed hereto as **Exhibit 2**.

17. By letter dated December 12, 2016, I notified Mr. Sampson of the results of the CAPP meeting of December 5, 2016. I reminded Mr. Sampson that a student displaying a pattern of academic marginality may be required to repeat a phase or may be dismissed from the School of Medicine. Letter from Andrew Wackett to Robert Sampson (Dec. 12, 2016), copy from CBase annexed hereto as **Exhibit 3**.

18. I informed Mr. Sampson that CAPP determined that he was required to: (1) repeat and pass the Endocrine/Reproductive and GI/Nutrition pathology courses; (2) upon completion of Phase I, stop and begin reviewing for the USMLE Step 1 exam, (3) pass the Step 1 exam by May 31, 2017; and (4) repeat Phase I in its entirety should he fail the Step 1 exam. *Id*.

19. Mr. Sampson shared at the December 5, 2017 CAPP meeting that he had a diagnosed learning disability but that he had not previously sought an accommodation from the School of Medicine to allow him additional test-taking time. *Id*.

20. On December 28, 2016, Mr. Sampson appealed CAPP's decision to the Dean of the School of Medicine. Because the determinations by CAPP were not appealable to the Dean, the Dean referred the determination back to CAPP for reconsideration.

21. CAPP invited Mr. Sampson to a meeting held on January 9, 2017, to discuss Plaintiff's appeal and to reconsider its determination. Letter from Andrew Wackett to Robert Sampson (Jan. 10, 2017), copy from CBase annexed hereto as **Exhibit 4**. CAPP further determined that: (1) Mr. Sampson would have the option of repeating Phase I; (2) if he chose not to repeat Phase I, he must pass the Endocrine/Reproductive course; (3) upon completion of Phase I, he would be required to stop and prepare for the Step 1 exam; (4) he must take and pass the Step 1 exam by May 31, 2017, before proceeding with the start of Phase II clerkships; (5) if he failed the Step 1 exam, he would be required to repeat Phase I in its entirety. Ex. 4. Mr. Sampson was also advised that he should use all available resources to develop better time management strategies and test-taking skills. Ex. 4.

22. On or about April 20, 2017, Mr. Sampson informed me that he had submitted paperwork to the NBME for approval of an accommodation for the Step 1 exam which would allow him extra time to complete the exam.

23. On or about July 10, 2017, Mr. Sampson informed me that NBME had denied his request for a testing accommodation.

24. CAPP invited Mr. Sampson to a meeting held on August 7, 2017, to discuss the delay in his taking of the Step 1 exam. Letter to Robert Sampson (Aug. 11, 2017) copy from CBase annexed hereto as **Exhibit 5**. CAPP invited Mr. Sampson to re-take Phase I with the class of 2021 beginning August 21, 2017 and informed Mr. Sampson he would

not be required to re-take any courses for which he scored above the class mean. Ex. 5. Mr. Sampson was informed that if he declined the invitation to retake Phase I, all requirements for the MD degree must be met within seven years of the initial date of enrollment in the School of Medicine. Ex. 5. He was also notified that if he chose to further delay taking his Step 1 exam, he would need to take his Step 1 exam no later than July 2018. Ex.5.

25. Mr. Sampson declined to re-take Phase I beginning in August 2017.

26. On or about January 16, 2018, Mr. Sampson notified me that he had appeal NBME's denial of his request for an accommodation, and in early January 2018 NBME denied the appeal.

27. On or about February 12, 2018, I informed Mr. Sampson that the School of Medicine's Director of Disability Support Services and I would be willing to write to the NBME informing them that he receives accommodations through the Disability Support Services Office and that we believe he should also receive a testing accommodation from NBME.

28. By email dated July 11, 2018, I asked Mr. Sampson to draft a letter to CAPP explaining the reason for the delay in his taking the Step 1 exam and stating his understanding of the seven-year requirement for graduation and how it could be impacted by the delay in taking the Step 1 exam. Email chain between Robert Sampson and Andrew Wackett (Apr. 11, 2017-Apr. 17, 2017), annexed hereto as **Exhibit 6**.

7

29. By email dated July 17, 2018, Mr. Sampson informed me that he had retained legal counsel, and his counsel had been in contact with the NBME. Id. He also informed me and that the NBME's policy is that students who have applied for accommodations may not sign up for a test date until a decision is made on the request. *Id*. Mr. Sampson stated that the policy is clear that all requirements for the MD degree must be met within seven years of initial enrollment in the School of Medicine. *Id*.

30. On or about August 7, 2018, Mr. Sampson was notified that, given the clear policy requiring completion of all MD degree requirements within seven years of initial enrollment, CAPP saw only two viable paths forward: (1) restart Phase I in August 2018 (which CAPP recommended); or (2) pass the Step 1 exam in a timeframe that would allow him to complete the requirements for an MD degree within seven years. Letter to Robert Sampson (Aug. 7, 2018), copy from CBase annexed hereto as **Exhibit 7**.

31. I inquired of Mr. Sampson several times about his progress toward taking the Step 1 exam. On or about November 20, 2019, Mr. Sampson notified me that he understood the timeline required by CAP and that he was registered and planned to take the Step 1 exam before the end of December 2019. Email chain Nov. 18, 2019-Nov. 20, 2019, annexed hereto as **Exhibit 8**.

32. In early February 2020, the School of Medicine learned that Mr. Sampson had taken the Step 1 examination in January 2020 and had failed.

33. CAPP held a virtual meeting on June 1, 2020, which had been postponed from March 2020 due the COVID crisis. Mr. Sampson was invited due to his failure of the Step 1 exam and the expiration of available time to complete his MD degree within seven years of his enrollment. Email from Andrew Wackett to Robert Sampson (June 3, 2020), copy from CBase annexed hereto as **Exhibit 9**. CAPP determined that: (1) it had, since December 2016, been recommending that Mr. Sampson repeat Phase I of his studies, but that he had chosen to instead take the Step 1 exam as an alternative way to demonstrate the adequacy of his basic medical knowledge so that he may proceed to Phase II; (2) the School of Medicine has been sympathetic to his pursuit of testing accommodations from the NBME, but all students need to complete their MD degree within seven years; (3) Mr. Sampson had failed the Step 1 exam, and it was no longer possible for him to finish his studies within seven years of his initial enrollment; and (4) it was recommending to the Dean that Mr. Sampson be dismissed from the School of Medicine. Email from Andrew Wackett to Robert Sampson (June 3, 2020), copy from CBase annexed hereto as **Exhibit 9**.

34. Mr. Sampson appealed this determination, and upon appeal, Dr. Kenneth Kaushansky, then the Dean of the Medical School, permitted Mr. Sampson to proceed to Phase II of his medical studies without repeating any of his Phase I course work and without taking the Step 1 exam, on the condition that he take the Step 1 exam upon the completion of Phase II. Letter from Kenneth Kaushansky to Robert Sampson (July 13, 2020), copy from CBase annexed hereto as **Exhibit 10**. In his letter notifying Mr. Sampson

9

of his determination, Dean Kaushansky referred to the policy that requires students to complete their medical education within seven years of the date of first enrollment. Ex. 10. Dean Kaushansky stated that his decision was final and not subject to further appeals. Ex. 10.

35. Mr. Sampson completed his Phase II studies the week ending July 9, 2021. Mr. Sampson, like all students of the School of Medicine, was required to take his Step 1 exam within eight weeks of completing his Phase II studies. APP Manual (Ex. 1) §§ 9.2.1.

36. On or about August 17, 2021, Dean William Wertheim responded to a request by Mr. Sampson to further delay the taking of his Step 1 exam. Letter from William Wertheim to Robert Sampson (Aug. 17, 2021), copy from CBase annexed hereto as **Exhibit 11**. Dean Wertheim reminded Mr. Sampson of Section 9.2.1 of the Academic Policy and Procedures, which requires that the Step 1 exam be taken within eight weeks of completion of Phase II. Ex. 11. Dean Wertheim also reminded Mr. Sampson of the letter sent to him by the previous Dean, Kaushansky, in which then-Dean Kaushansky allowed Mr. Sampson to continue his studies but required that he take the Step 1 exam at completion of Phase II. Dean Wertheim reminded Mr. Sampson that he was required to take the Step 1 exam by September 12, 2021. Ex. 11.

37. Mr. Sampson, like all students, is required to take his Step 1 exam before he may begin Phase III of his studies. APP Manual (Ex. 1) § 9.2.1. There are no exceptions to that policy.

38. I understand that Mr. Sampson has enrolled in an MBA program. While students enrolled in the School of Medicine who are also enrolled in another degree program may take longer than seven years to complete their medical studies, the exception to the seven-year rule applies only in certain circumstances and does not apply to Mr. Sampson's circumstances.

39. All leaves of absence must be requested in writing and approved by the Associate Dean for Student Affairs. APP Manual (Ex. 1) § 4.7. The request must also specify the goals, scope, and duration of study, and must include written verification from the supervisor of the activity. Ex. 1 § 4.7.3.

40. To my knowledge, Mr. Sampson did not fulfill the requirements for a request for a leave of absence and Mr. Sampson was not approved for a leave of absence from the School of Medicine to enroll in the MBA program.

41. Moreover, students, such as Mr. Sampson, who have completed Phase II of the School of Medicine curriculum, must take the Step 1 exam and the Step 2 exam, as well as the School of Medicine's Clinical Performance Exam, prior to beginning a leave of absence. APP Manual (Ex. 1) § 4.7.4. Mr. Sampson has not taken any of those exams.

42. Mr. Sampson was required to complete all requirements for his MD degree no later than August 12, 2022.

WHEREFORE, I respectfully request that the Court deny Mr. Sampson's motion for a preliminary injunction.

Dated: Stony Brook, New York
September 8, 2022

Andrew Wackett, M.D.