IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 22-cv-04490 JMA |
| v. | : | |
| | : | |
| STONY BROOK UNIVERSITY, *et al.* | : | |
| | : | |
| Defendants. | : | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

I.     **INTRODUCTION**

Stony Brook does not contest that Sampson is an individual with a disability or that he needs extended time on the Step 1 examination.  Under well-established Second Circuit precedent, it was therefore Stony Brook's burden to come forward with evidence that permitting Sampson the accommodations that he needs to take the Step 1 examination is an undue burden or a fundamental alteration.  Stony Brook has instead offered only speculation that permitting Sampson more than seven years to graduate from medical school would somehow harm patient safety.  Stony Brook's claim is absurd when its own policies permit dual-degree students such as Sampson additional time to graduate.  Further, Stony Brook's own faculty members praised Sampson's knowledge of medicine, his clinical skills, and most of all, the conscientiousness and diligence with which he has treated patients during his clinical rotations.  It is in the public interest that an individual like Sampson, who has worked hard to overcome his disabilities, be given the opportunity to take Step 1 with the accommodations that Stony Brook says he needs.

1

### A. Stony Brook Failed To Meaningfully Contest Sampson's Request for Accommodations

Stony Brook does not contest that Sampson needs the testing accommodations that he seeks from the NBME. Stony Brook itself provides those accommodations to Sampson on medical school examinations, and submitted letters to National Board of Medical Examiners (NBME) stating that Sampson's need for these testing accommodations is critical.

Stony Brook advances conclusory arguments that Sampson's requested accommodation—an opportunity to take the NBME examination with accommodations—is not reasonable. In so doing, Stony Brook errs as a matter of law first by impermissibly shifting to Sampson the burden of proving the reasonableness of this accommodation and second by erroneously relying on the wrong part of the ADA. Stony Brook cites 42 U.S.C. § 12112, the portion of the ADA that applies to employment. This provision has no applicability in this case. Likewise, the case law interpreting "reasonable accommodations" in employment cases has no applicability to this non-employment case. *See, e.g.*, *Enyart v. Nat'l Conf. of Bar Examiners*, 630 F.3d 1153, 1162 (9th Cir. 2011). Whereas the "reasonable accommodation" standard found in the employment context requires employees to prove that the requested accommodation is reasonable, a different set of burdens applies in the non-employment context. *See id.*[1] As the Second Circuit explained, in the higher education context, a student has a "light burden" of proving the accommodations requested are necessary, and then the burden shifts to the university

---

[1] Although the term "reasonable accommodation" is of popular usage, and has sometimes found its way into cases involving postsecondary institutions, "reasonable accommodation" as a legal standard is confined to employment cases. Even in higher education cases where the term "reasonable accommodation" is used, courts correctly note that universities must provide necessary accommodations short of undue burden or fundamental alteration. *See, e.g.*, *Featherstone v. Pacific Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 U.S. Dist. LEXIS 102713, at *9 (E.D. Wash. July 22, 2014).

2

to demonstrate that it would be an undue burden or fundamental alteration to provide these accommodations. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015).

Since there is no dispute that Sampson has met his burden of demonstrating he needs the accommodation he seeks, the burden falls on Stony Brook to come forward with evidence that providing these accommodations would result in undue burden or fundamental alteration. *Dean*, 804 F.3d at 190. Stony Brook offered no argument or evidence that permitting Sampson additional time to graduate in order to take Step 1 would somehow result in undue burden, and accordingly has waived this defense.

Stony Brook refers to "fundamental alteration" throughout its brief, but offered no evidence that permitting Sampson to receive the accommodations that he needs would fundamentally alter the medical school's curriculum. Stony Brook may not rest on its seven-year policy (which does not even apply in this case) as proof that any modification would be unreasonable. As described in Sampson's opening brief in support of his motion for preliminary injunction against Stony Brook, Department of Education section 504 regulations specifically provide that universities may be required to make "changes in the length of time permitted for the completion of degree requirements" to accommodate students with disabilities. 34 C.F.R. § 104.44(a); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 820 (9th Cir. 1999) (quoting 34 C.F.R. § 104.44(a)). Even though this regulation is clearly on point, Stony Brook paid no attention to this regulation in its brief.

Stony Brook also did not dispute that it permitted Sampson to return to medical school in 2020 even though it knew by then that Sampson could not finish medical school in seven years.[2] Stony Brook also did not dispute that it permits dual-degree students more than seven years to complete a medical degree; while Stony Brook contests whether Sampson is in fact a dual-degree student, the fact that the medical school *does* permit such students more than seven years is a strong indication that Stony Brook's curriculum will neither be altered nor will the academic standards be reduced if Sampson is able to take the NBME examination with the accommodations that Stony Brook itself has said he needs. *See, e.g.*, *Wong*, 192 F.3d at 820-21 (holding that a university's history of providing the same accommodation in the past is "persuasive evidence from which a jury could conclude the accommodation was reasonable").

Further, Stony Brook has offered no concrete evidence beyond speculation that allowing additional time for Sampson to take the USMLE Step 1 and fulfill his graduation requirements fundamentally alters the essential functions of the school curriculum or lowers the school's academic standards. *See, e.g.*, *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 971-72 (N.D. Cal. 2013) (holding that permitting a student to maintain inactive enrolled status in order to take

---

[2] The *June 2020 letter* dismissing Sampson from medical school stated "*…it is no longer possible for you to complete medical school in 7 years*." Dckt. 14-9 (Defendants' Ex. 9) (emphasis added). The former dean of the medical school then revoked that decision which was both based on an erroneous calculation and discriminatory and permitted Sampson to proceed with his medical education and take his tuition dollars despite the fact it was not possible to complete medical school in 7 years. Dckt. 14-10 (Defendants' Ex. 10), Letter from Dean Kaushansky dated July 13, 2020. Although mention was made of the 7 years, it was reasonable for Sampson to presume the Dean's revocation of the CAPP Committee decision granting him permission to continue with his medical degree meant that the time he was wrongfully on forced leave of absence was not being counted against him. Ex. 1, Sampson Decl. ¶¶ 19-20. Stony Brook thereafter made contradictory statements about graduation dates, prompting Sampson repeatedly to seek clarification. At times Dr. Cohen indicated that Sampson was graduating in December 2022, more than 7 years after he started medical school. Ex. 1, Sampson Decl. at ¶¶ 21-22. The medical school registrar was aware of this confusion when she certified his graduation date as May 2023. Id. at ¶ 23.

4

board examination requires only "minimal participation" on the school's part). As the case law has made clear, defendants may not use imagined threats of harm as a guise for discrimination, and to guard against this, defendants must come forward with objective medical evidence of any asserted harm, *Bragdon v. Abbott*, 524 U.S. 624, 649-50 (1998).

Stony Brook cannot meet its burden of establishing that it is unreasonable for Sampson to have an opportunity to take the Step 1 examination with accommodations.

**B. Stony Brook May Not Use Academic Deference To Shield Its Discriminatory Conduct from Judicial Review**

Stony Brook asserts that it is entitled to academic deference in refusing to provide Sampson an opportunity to take the Step 1 with the testing accommodations that Stony Brook concedes he needs, but left out a key element of the Second Circuit's standard. As the Second Circuit has explained:

> it was incumbent upon [the medical school] to submit a factual record establishing that in rejecting [the medical student's] requested scheduling modification they diligently assessed whether the alteration would allow [the medical student] the opportunity to continue in the M.D. program without imposing undue financial and administrative burdens on [the medical school] or requiring a fundamental alteration to the academic caliber of its offerings. *See Powell*, 364 F.3d at 88. Where, as here, the record is devoid of evidence indicating whether [the medical school] evaluated these considerations in determining the reasonableness of the accommodation sought, we decline to extend the deference we ordinarily accord to the professional, academic judgments of educational institutions. *See id.* (noting that in evaluating "the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference" (citing *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)). To do otherwise might "allow academic decisions to disguise truly discriminatory requirements." *Zukle*, 166 F.3d at 1048.

*Dean*, 804 F.3d at 191.

The academic deference cases that Stony Brook relies on all accorded academic deference *only* after first determining that the university in question had conducted the requisite diligent review. In *Brief v. Albert Einstein College of Med.*, 423 F. App'x 88 (2d. Cir. 2011), the

5

medical school solicited testimony from the medical student and other witnesses and reviewed multiple reports detailing the extent of the student's purported disability. *Id.* at 92. It was only after considering this evidence about the student's disability that the medical school determined that allowing him to continue as a student despite numerous failures on medical school examinations would be contrary to its academic standards. *Id.* at 92. As this case demonstrates, universities must come forward with evidence showing that they carefully considered the student's disability and the nature of the accommodations requested. *See also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88 (2d Cir. 2004) (according academic deference only after "diligent review" of the student's accommodations request)[3]; *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 436-37 (6th Cir. 1998) (placing great weight on the numerous accommodations that the university provided the student).

Here, the record is completely devoid of any evidence that Stony Brook "diligently assessed" whether permitting Sampson the time he needs to take the NBME examination with accommodations would somehow result in undue burden or fundamental alteration. Rather, the evidence shows that the CAPP Committee was openly hostile to Sampson, telling him that it did not believe NBME would grant him the accommodations that he needed, stating that Sampson was not the only person in the world with disabilities and that he should learn how to take and pass the NBME examination without accommodations. Decl. of Sampson at ¶¶ 51-55 [Docket 3-2]. Such hostility is facially discriminatory and is unworthy of deference. *See Shaik v. Tex.*

---

[3] In *Powell*, the Second Circuit noted that the medical student had sought to be exempt from the requirement to pass Step 1 even though students without disabilities had to pass Step 1 in order to continue on in medical school. *Id.* at 88. Sampson seeks no such exemption; rather, he seeks only the opportunity to demonstrate his knowledge on the Step 1 examination with the accommodations that Stony Brook has stated he needs.

6

*A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 (5th Cir. 2018) (holding that a medical school's disparaging statements about a student's disability was evidence of discrimination).[4]

Stony Brook's subsequent inconsistent approach to Sampson is further evidence that it did not give Sampson's disability and need for accommodations the diligent review required by Second Circuit precedent. *Dean*, 804 F.3d at 191. The medical school dean permitted Sampson to resume classes in 2020 even though by then Sampson could not finish medical school in 7 years. Dckt. 14-9 (Defendants' Ex. 9), Capp Meeting Results; Dckt. 14-10 (Defendants' Ex. 10), Kaushansky Letter. The subsequent decision to reimpose the seven-year requirement came only after there was a new medical school dean; there is no evidence whatsoever in the record that the new dean considered Sampson's disability, much less gave it diligent review.

Instead, Stony Brook simply asserts in its brief that "Plaintiff is not going to receive his medical degree." Stony Brook Br. [Dckt. No. 13] at 2, 21. This blunt statement is an indication that Stony Brook has already decided that it does not want Sampson as a student no matter how reasonable the accommodations are that he seeks, without regard for whether Sampson is able to obtain injunctive relief requiring NBME to provide the testing accommodations that Stony Brook has itself said that he needs. Such attitude towards Sampson is unworthy of deference.

Stony Brook also ignored a plethora of additional evidence demonstrating that it failed to give Sampson's disability and need for accommodations the requisite diligent review:

---

[4] Stony Brook acknowledges the case law Sampson described in his opening brief [Dckt. No. 3] that makes clear that universities must make accommodations for students seeking to take board examinations, but improperly attempts to distinguish these cases on the ground that they involved "new" disabilities that were discovered after the medical student failed the Step 1 test without accommodations. Stony Brook's Br. [Dckt. No. 13] at 19-20. This is a distinction without a difference, as Stony Brook has acknowledged that Sampson needs the testing accommodations, and mocked his efforts to obtain these accommodations on the Step 1 exam.

7

- Stony Brook required Sampson to take the Step 1 examination after just three semesters, when none of his classmates were required to take the examination until after three years of medical school.

- Stony Brook has offered no explanation how Sampson was a "marginal" student during his first year of medical school when all classes were pass/fail and he passed all his classes. Stony Brook also failed to meaningfully contest the evidence that its determination that Sampson was a "marginal" student was based on simple arithmetic mistakes that it refused to correct.

- Stony Brook also required Sampson to take the Step 1 examination shortly after learning that Sampson had learning disabilities, calling into question whether it treated him differently based on his disability.

- Stony Brook does not acknowledge that the reason why Sampson is now up against the seven-year limit is because Stony Brook forced him to take a three-year leave of absence before changing its mind and letting him re-enroll to finish his second year of medical school and complete his third year of medical school with an excellent academic track record. These developments call into question whether Stony Brook acted arbitrarily and capriciously in telling Sampson he had to take Step 1 earlier than his classmates and causing him to lose more than three years.

In addition to ignoring these large portions of the record, Stony Brook argues the following:

- Stony Brook asserted that Sampson is not a dual-degree student even though he is jointly enrolled in both the M.D. and M.B.A. programs as the result of the medical school submitting his medical school application to the College of Business. Before applying to be a joint degree student, Sampson consulted with Dr. Cohen in an email with the subject

8

line "Combined Degree MD/MBA Question" and at Dr. Cohen's request, the medical school submitted Sampson's application materials for the joint degree. Ex. 1 ¶¶ 9 - 13 At no time did Dr. Cohen, or anyone else, inform Sampson of any additional step to become a joint degree student or any requirement that he take (another) leave of absence. Ex. 1, Sampson Decl. ¶ 15. Similarly, when Sampson mentioned in an email to Dr. Cohen that he had started his business school classes, Dr. Cohen raised no concern about Sampson needing to take a leave of absence. Ex. 1-C. Stony Brook, having blessed and facilitated Sampson's admission to the business school as a medical student, and having taken Sampson's tuition knowing that he was enrolled in both programs at the same time, cannot now claim that he never had permission to pursue joint degrees.[5]

- Stony Brook also erred factually in describing the ultimatum that it gave Sampson in 2016. In December 2016, Stony Brook told Sampson in unequivocal terms that he needed to take the Step 1 examination three semesters before everyone else. Dckt. 14-3 (Defendant's Ex. 3)  Stony Brook now claims alternately that he could have retaken just endocrinology, or that he only needed to retake all classes in which he had passed but was not in the top half of the class (with no evidence or explanation how this wasn't treating Sampson differently from other students who passed all their classes even if not

---

[5] Stony Brook, while arguing Sampson did not finish his medical degree fast enough inexplicably argues that Sampson should have taken additional leave to complete a joint degree program. Stony Brook's own published materials state no such requirement and when Sampson approached Dr. Cohen to ask what was necessary for him to become a joint degree student, Dr. Cohen told him of no such requirement. Ex. 1, Decl. of Sampson at ¶¶ 4-8; Ex. 1-A, Email Chain between Dr. Cohen and Sampson dated April 29, 2021. Further, Sampson paid tuition, enrolled in courses and was permitted to take courses in both programs at the same time and earned straight As while doing so. The only leaves of absences Sampson has ever taken were those Stony Brook imposed on him related to Step 1 and the lack of accommodations for the Step 1 examination, an issue at the heart of this lawsuit.

9

always in the top half of the class).  These new assertions are wholly unsupported by the record, and Stony Brook's shifting facts further undermines its claim to academic deference.

- Stony Brook downplays its registrar's certification that Sampson was scheduled to graduate in May 2023, outside the seven-year time period.  When Stony Brook permitted Sampson to return to medical school in 2020, it already knew that he could not complete medical school in seven years. Dckt. 14-9 (Defendant's Ex. 9). Multiple graduation dates were thereafter discussed and Sampson repeatedly sought clarification as to his graduation date. Ex. 1 ¶¶ 21-24. The registrar verbally expressed confusion about whether Sampson was graduating in December 2022 or May 2023. Ex 1 ¶ 23. Sampson and Dr. Cohen specifically discussed whether Sampson would graduate in December 2022 or May 2023 both of which were after the expiration of 7 years in August of 2022. Ex. 1 ¶ 22. Thereafter, the medical school registrar certified that Sampson was graduating in May 2023, and this certification means what it says—that the registrar's office had verified that this information was correct.  Stony Brook's claim this was an administrative error is not entitled to deference.

Stony Brook also quotes Sampson as saying he understood that the medical school has a seven-year policy.  This policy does not apply to Sampson because he is a dual-degree student.  In any event, this case is not, however, about whether Stony Brook has a seven-year policy, but whether Stony Brook is required to make reasonable modifications to accommodate Sampson's documented disabilities.  As described *supra,* Stony Brook does not dispute that Sampson needs the accommodations that he is requesting, and Stony Brook has not made any meaningful effort to carry its burden of proving undue burden or fundamental alteration.

Further even if the seven-year policy applied, Stony Brook has made no effort to explain how it considered the interplay between Sampson's disability and the purpose of its seven-year policy or how allowing additional time for Sampson to take the USMLE Step 1 and fulfill his graduation requirements fundamentally alters the essential functions of the school curriculum or lowers the school's academic standards.  In particular, Stony Brook has offered no support for the proposition that permitting Sampson the opportunity to finally take the NBME examination with accommodations would "dilute" the medical school's academic standards and somehow harm public health.[6]  Stony Brook's arguments are belied by the fact that the medical school itself has numerous exceptions to its seven-year policy.  Moreover, Stony Brook's purported concerns do not apply in this case.  Stony Brook's own faculty members have praised Sampson as conscientious and diligent in his clinical rotations, noting Sampson wan an "excellent student" who is highly motivated and compassionate", "looked for ways to help" and was "an asset to our inpatient team."  Ex. A, Sampson Decl. ¶ 61 [Doc. No. 3-2].  Of Sampson's readiness to move into his fourth and final year of medical school, his preceptors reported that Sampson's "medical knowledge and ability to assimilate this knowledge was impressive for his level of training" and "above expected for the level of training".  *Id.*  It is in the public interest for Sampson to have the opportunity to demonstrate on Step 1 what Stony Brook's faculty members already know—that Sampson is a gifted student who will make an excellent doctor if given the chance.

Stony Brook's shifting rationales, factual assertions raised years after the fact, and flimsy rationales for preventing Sampson from ever taking Step 1 with accommodations are unworthy

---

[6] Stony Brook's cited cases for this proposition all concerned students who failed classes or clinicals, a fact pattern not present here.  *Yousaf v. Curators of Univ. of Mo.*, No. 4:18-cv-00321-DGK, 2018 U.S. Dist. LEXIS 190187, at *2-3 (W.D. Mo. Nov. 7, 2018); *White v. Creighton Univ.*, Case No. 06CV536, 2006 U.S. Dist. LEXIS 56500, at *2-3 (D. Neb. Aug. 11, 2006).

11

of deference. Stony Brook has not asserted undue burden, and it has offered no evidence in support of its assertion of fundamental alteration. For these reasons, he is substantially likely to prevail on the merits.

### C. The Relief that Sampson Seeks Is Narrowly Tailored To Ensure That He Has the Same Opportunity as His Classmates To Demonstrate His Knowledge of Medicine

Stony Brook mischaracterizes the relief sought. Sampson does not seek an indefinite period of time to take Step 1. Sampson also seeks preliminary injunction against the National Board of Medical Examiners, and if he is granted that preliminary injunction, he will be able to take the Step 1 examination with accommodations by a date certain. This Court has set a date for a preliminary injunction hearing for October 11, 2022. *Sampson v. Nat'l Bd. of Med. Exam'rs,* No. 2:22-cv-05120, Dkt. 12.

Stony Brook's cited cases are distinguishable because the plaintiffs in those cases, unlike Sampson, sought an indefinite period of time to take a board examination an unlimited number of times. In *Lipton v. N.Y. Univ. College of Dentistry*, 865 F. Supp. 2d 403 (S.D.N.Y. 2012), for instance, the student did not seek additional testing accommodations beyond that already provided; rather, the student sought unlimited chances to pass with the testing accommodations already in place. *Id.* at 409-10; *see also Doe v. St. Louis Univ. Sch. of Med.*, Case No. 4:12CV905SNLJ, 2013 U.S. Dist. LEXIS 44492, at *33-34 (E.D. Mo. Mar. 28, 2013) (student sought an "indeterminate amount of time" to retake NBME examination). In contrast to those medical students, Sampson merely seeks to take the NBME examination with accommodations by a date certain, and for his resulting test score with accommodations to be treated in the same manner as that of any other medical student at Stony Brook.

### D. President McInnis Is a Proper Defendant To Ensure the Availability of Declaratory and Injunctive Relief

Stony Brook also errs in seeking to dismiss President McInnis from the lawsuit. Contrary to Stony Brook's assertion, President McInnis has been sued in her official capacity only. *See* Compl. [Doc. No. 1] ¶ 5 (stating that President McInnis was being sued in her official capacity).

President McInnis was sued in her official capacity to ensure the availability of declaratory and injunctive relief. Sampson does not believe that Stony Brook is entitled to sovereign immunity, but in the event that Stony Brook asserts sovereign immunity, *Ex parte Young* permits plaintiffs to seek declaratory and injunctive relief for violations of Title II and section 504. *See, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003).

When Stony Brook's counsel approached Sampson's counsel about dismissing President McInnis from the lawsuit, Sampson's counsel indicated that Sampson would agree to dismiss President McInnis provided that Stony Brook did not assert sovereign immunity as a bar to declaratory or injunctive relief. Ex. 2, Decl. of Weiner, at ¶¶ 13-14. Stony Brook declined to so stipulate. *Id.* at ¶ 14. Given that Stony Brook has refused to concede the availability of declaratory and injunctive relief notwithstanding any possible assertion of sovereign immunity, President McInnis is a necessary defendant to ensure the availability of the prospective relief sought in this case. *See, e.g.*, *Yelapi v. DeSantis*, 525 F. Supp. 3d 1371, 1380-81 (N.D. Fla. 2021) (declining to dismiss a university president at the motion to dismiss stage when defendant asserted sovereign immunity).

### E. Sampson Exhausted All Options Prior to Filing This Lawsuit

Stony Brook devotes a considerable portion of its brief to blaming Sampson for being unable to graduate in seven years, when much of this delay was due to Stony Brook's own discriminatory conduct. Stony Brook required Sampson to take the Step 1 examination much

13

earlier than his classmates, and to do so whether or not he had testing accommodations. Stony Brook later changed its mind, letting him resume his medical school education after it explicitly stated in writing that Sampson could not complete his medical degree within 7 years, proof that the three-year leave of absence was wholly unnecessary. When Stony Brook permitted Sampson to resume classes, he still had three semesters of medical school before arriving at the point where his classmates were required to take Step 1. Consequently, Stony Brook bears responsibility for much of this delay, and may not use these three years – years that should not count against Sampson - in arguing that Sampson is now out of time.

     Stony Brook erroneously claims that Sampson knew by May 2020 that litigation was necessary. This is demonstrably false. During this time, he had again requested testing accommodations, and underwent another neuropsychological evaluation. This evaluation was not finalized until December 2020, and he thereafter prepared the application for accommodations for submission with this new evaluation for the NBME's consideration. The NBME denied his request for accommodations in June 2022, after which time, Sampson's counsel contacted NBME's counsel to request accommodations short of litigation. NBME, through counsel, indicated that it needed additional time to review its denial of accommodations. When the promised response was not forthcoming, Sampson's counsel provided the NBME's counsel with a draft complaint indicating it would file imminently absent response. When no response was forthcoming, Sampson's counsel filed that complaint just days later.

     Stony Brook also faults Sampson for filing suit against Stony Brook before filing litigation against the NBME. Albeit of no legal consequence relative to this matter, the sequence of the filing of this litigation was made necessary because Stony Brook planned to expel Sampson from the program on or before August 12, 2022. Filing suit against Stony Brook first

14

was necessary to preserve his status as an enrolled student while the litigation against NBME proceeded, and as described *supra*, NBME had requested additional time to review its denial of Sampson's most recent request for accommodations.[7]  Charles Weiner's letter to Robert Burgoyne and Caroline Mew (July 18, 2022) Exhibit 2-A, Email Chain between Weiner and Burgoyne (August 4, 2022 and August 26, 2022**)** Ex. 2-B and 2-C.

This is a case where, if Stony Brook had not imposed greater requirements on Sampson than his classmates and required him to take Step 1 earlier, he would have not needed to take a three-year leave of absence.  This is also a case in which if the NBME had timely agreed to provide the testing accommodations that Stony Brook says he needs, he would have had his fair opportunity at the same time as his classmates to take Step 1.  Neither Stony Brook nor NBME complied with their obligations under federal law, despite Sampson's repeated requests for accommodations.  It was only after Sampson exhausted all other avenues that he filed this litigation, and Stony Brook does not contest otherwise.

## CONCLUSION

For the reasons described in support of his motion for preliminary injunction, Sampson requests that this Court enjoin Stony Brook and require Stony Brook to maintain his status as an enrolled student so that he has an opportunity to take the Step 1 examination by a date certain with the testing accommodations that Stony Brook admits he needs.

---

[7] Stony Brook errs in relying on *Wright v. Nat'l Bd. of Med. Exam'rs*, Case No. 21-cv-02319-DDD-NYW, 2021 U.S. Dist. LEXIS 211275 (D. Colo. Oct. 15, 2021), *appeal dismissed*, 2021 U.S. App. LEXIS 39962 (10th Cir. Nov. 19, 2021), for the proposition that Sampson somehow waited too long to seek injunctive relief.  *Wright* merely held that there was no urgency in taking the NBME examination by a specific date.  *Id.* at *24-26.

15

        Respectfully submitted,
        s/Charles Weiner
        Charles Weiner
        LAW OFFICE OF CHARLES WEINER
        Cambria Corporate Center
        501 Cambria Avenue
        Bensalem, PA 19020
        Tel. (267) 685-6311
        Fax (215) 604-1507
        charles@charlesweinerlaw.com

        Mary C. Vargas
        mary.vargas@steinvargas.com
        STEIN & VARGAS LLP
        10 G Street NE, Suite 600
        Washington, DC  20002
        Tel. (240) 793-3185
        Fax (888) 778-4620

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On September 23, 2022, the undersigned served a true and correct copy of the foregoing on the following counsel of record via the Court's CM/ECF system:

Helena Lynch
Assistant Attorney General
200 Old Country Road, Suite 240
Mineola, NY
Helena.lynch@ag.ny.gov

        s/Mary C. Vargas
        Mary C. Vargas