# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:22-cv-04490-JMA |
| | : | |
| v. | : | |
| | : | |
| STONY BROOK UNIVERSITY and | : | |
| MAURE MCINNIS, in her official capacity | : | |
| as President of Stony Brook University, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM IN SUPPORT OF SAMPSON'S REQUEST
## FOR REASONABLE ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………………i

TABLE OF AUTHORITIES…………………………………………………………ii

ARGUMENT

  A.  INTRODUCTION……………...…...………………………………………..1

  B.  FACTUAL AND PROCEDURAL HISTORY……………………………………2

  C.  SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE
     ATTORNEYS' FEES AND COSTS…………………….…………………………8

      1.  Congress Enacted Fee-Shifting Provisions To Ensure That Civil Rights
         Plaintiffs Such as Sampson Have Access to Competent Counsel…………………8

      2.  Sampson Is a Prevailing Party…………………………………………………10

  D.  THE LODESTAR DETERMINES SAMPSON'S REASONABLE
     ATTORNEYS' FEES………...……………….…………………………………13

      1.  The Hourly Rates Requested for Sampson's Counsel Are Reasonable…………..14

          i.  Charles Weiner……………………………………...……………16

         ii.  Mary Vargas…………………….…………………………………17

        iii.  Michael Stein………………………………………………………19

      2.  Sampson's Attorneys Seek Fees for Time Reasonably Spent for
         Sampson To Prevail……………………………………………...………20

      3.  Lodestar Calculation…………………………………………….....21

  E.  SAMPSON'S REQUESTED REIMBURSEMENT OF COSTS IS REASONABLE…...22

  F.  CONCLUSION………………………………………………………...22

CERTIFICATE OF SERVICE…………………………………………………24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Agudath Isr. of Am. v. Hochul*, 20-cv-04834(KAM)(RML), 2021 WL 5771841
(E.D.N.Y. Dec. 6, 2021) (Matsumoto, J.)……………………………………....15

*Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 5434178
(E.D.N.Y. July 8, 2022) (Locke, M.J.), *adopted*, 2022 WL 4376618 (E.D.N.Y.
Sept. 20, 2022) (Azrack, J.)……………………………………...……..…………14

*Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 4376618
(E.D.N.Y. Sept. 20, 2022) (Azrack, J.)……...…………………………………14

*Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013)…………………...…………17, 18, 19

*Berger v. Nat'l Bd. of Med. Exam'rs*, 19-cv-00099, 2019 WL 4040576 (S.D. Ohio
Aug. 27, 2019)…………………………………………………………………16

*Blum v. Stenson*, 465 U.S. 886 (1984)……………………………………………………14

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598
(2001)……………………………………………………………………..……...10

*C.A. v. New York City Dep't of Educ.*, 20 Civ. 2101(AMD)(VMS), 2022 WL 673262
(E.D.N.Y. Feb. 16, 2022) (Scanlon, M.J.), *adopted*, 2022 WL 673272 (E.D.N.Y.
Mar. 7, 2022) (Donnelly, J.)…………………………………………...………..15

*Chex v. CCI Contr., Inc.*, 21-CV-3011(ARR)(SIL), 2022 WL 17787542 (E.D.N.Y.
Aug. 5, 2022) (Locke, M.J.)…………………………………………………15

*City of Riverside v. Rivera*, 477 U.S. 561 (1986)…………………………………...………8, 9

*Cotton v. NY Minute Movers, Inc.*, 20-CV-6153-CBA-SJB, 2023 WL 2499132 (E.D.N.Y.
Mar. 14, 2023) (Bulsara, J.)……………………………………………………15

*Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803
(E.D. Wash. July 22, 2014)……………………………………………..…18, 19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………10, 13, 20

*Hines v. City of Albany*, 613 F. App'x 52 (2d Cir. 2015)………………………………10

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)……………………………10

*Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274 (1989)……………………………...…14

*N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*,
    272 F.3d 154 (2d Cir. 2001)……………………………………………………………10

*Noboa v. Quality Homes USA, Inc.*, 22-CV-0513(JMA)(JMW), 2023 WL 35030 (E.D.N.Y.
    Jan. 4, 2023) (Azrack, J.)……………………………………………………………14

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546 (1986)………….13

*Perdue v. Kenny A.*, 559 U.S. 542 (2010)………………………………………………………13

*Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009)………………10, 11, 12, 13

*Pres. Coalition v. Fed. Transit. Admin.*, 356 F.3d 444 (2d Cir. 2004)……………………………..10

*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020)…………………………18, 19

*Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003)…………………………………………....……10

*Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 23-3 (2d Cir. May 1, 2023)…………………………...6

*Thomas v. City of New York*, 14-CV-7513 (ENV) (VMS), 2017 WL 6033532 (E.D.N.Y.
    Dec. 1, 2017) (Scanlon, J.)………………………………………..……………………15

STATUTES

28 U.S.C. § 1920………………………………………………………………………....……22

42 U.S.C. § 12205……………..……………………………………………………....……22

## A.  INTRODUCTION

Robert Sampson is a medical student at Stony Brook University ("Stony Brook").  He has learning disabilities and requires extended time on testing as an accommodation.  Stony Brook refused to permit Sampson the necessary time for him to obtain testing accommodations on Step 1 of the United States Medical Licensing Examination, and told Sampson that it would dismiss him from the program in August 2022.  Even after Sampson retained counsel who corresponded with Stony Brook, Stony Brook held fast to its position that it would not allow Sampson the time necessary to obtain testing accommodations for the Step 1 examination.

After Sampson filed this lawsuit, this Court held a status conference in which it expressed its view that Sampson should be allowed to remain an enrolled student while seeking testing accommodations.  This Court also requested and obtained from Stony Brook promises not to dismiss Sampson from medical school while the litigation was pending.  This Court also proposed the terms for the parties to stipulate to providing that Sampson would have until August 2024 to graduate. After the parties drafted terms for this Court's review, this Court modified the terms, had the parties read the terms into the record, and instructed the parties to file the stipulation as a proposed order which it then adopted.

As a result of this Court's judicial imprimatur materially altering the legal relationship between the parties, Sampson achieved his goals in this lawsuit of ensuring that he remained an enrolled student able to take and pass Step 1 with the necessary accommodations.  Sampson is therefore a prevailing party who should be awarded the reasonable attorneys' fees and costs that he was forced to incur to obtain this relief.

### B.  FACTUAL AND PROCEDURAL HISTORY

Stony Brook required Sampson to take and pass Step 1 of the United States Medical Licensing Examination in order to progress to the next step of his medical studies.  The National Board of Medical Examiners ("NBME"), however, refused to provide necessary testing accommodations.  Stony Brook refused to allow Sampson the time to obtain the accommodations that he needed, and informed Sampson that it would dismiss him from medical school in August 2022.[1]  Since NBME permits only enrolled medical students to request testing accommodations, dismissal from Stony Brook would have precluded Sampson from seeking accommodations or taking Step 1, irrevocably terminating his dream of becoming a doctor.[2]

Sampson was forced to retain counsel to intervene on his behalf with Stony Brook. Sampson's counsel repeatedly requested that Stony Brook permit Sampson the time necessary to obtain the Step 1 accommodations that Stony Brook acknowledged that he needed in order to demonstrate his knowledge of medicine.[3]  Stony Brook again refused to permit Sampson additional time, claiming that permitting Sampson the time to obtain necessary accommodations would be a "fundamental alteration."  In its denial, Stony Brook cited the NBME's denials of his requests for accommodation in support of its stated intent to dismiss.[4]

In June 2022, NBME denied Sampson's final request for testing accommodations. Sampson retained counsel to intervene with NBME and litigate absent any alternative.

---

[1] Ex. 1, Letter from Stony Brook General Counsel, dated April 1, 2022.

[2] *See* United States Medical Licensing Examination, USMLE Eligibility Criteria, *at* https://www.usmle.org/bulletin-information/eligibility#:~:text=Eligibility,-In%20This%20Section (last visited August 22, 2023).

[3] Ex. 2, Letter from Mary Vargas to Dean Wackett, dated October 27, 2021; Ex. 3, Letter from Counsel dated March 21, 2022.

[4] Ex. 1, Letter from Stony Brook General Counsel to Mary Vargas, dated April 1, 2022.

By that point, Sampson was out of options.  Stony Brook would not allow Sampson to complete his last 40 weeks of medical school until he took and passed Step 1.  He could not take and pass Step 1 without accommodations.  NBME would not allow him to register for the test or even seek accommodations if he were not an enrolled student.  Stony Brook refused to even allow him to remain enrolled so he could assert his rights against NBME.  It was the ultimate, terrible catch-22 and Sampson was left with no choice but to litigate if he wanted to keep alive his dream of becoming a physician.

Sampson filed suit against Stony Brook on July 29, 2022, and filed an extensively documented preliminary injunction brief on the same day seeking to have his status as an enrolled medical student stayed until he could take Step 1 with the necessary testing accommodations in place.  Sampson's counsel asked Stony Brook's counsel to agree to a stay. Stony Brook refused the request, stating that it would move forward with dismissing Sampson from the program. Ex. 4, Declaration of Mary Vargas ("Vargas Decl."), at ¶¶ 24-25.

This Court promptly scheduled a status conference for August 4, 2022.  During that conference, this Court stated: "I would just ask counsel for Stony Brook to think about, you know, it sounds like this is a promising young doctor that -- I mean, why is it such a big deal to give him" an extension until he could graduate.  Ex. 5, Transcript of Status Conference, August, 4, 2022 ("Aug. 4, 2022 Tr."), at 12:6-10.  This Court then requested and obtained from Stony Brook a promise not take any action on Sampson's status until after the Court had had an opportunity to rule on the motion for preliminary injunction.  *Id.* at 6:9-21*; see also id.* at 16:1-5, 17:22-24.

In subsequent briefing opposing Sampson's motion for preliminary injunction, Stony Brook argued that Sampson could not stay in medical school any longer because he could not

3

graduate in seven years.  Stony Brook argued that it would be a fundamental alteration to permit

Sampson more than seven years to graduate.  Dkt. No. 13 at 6, 16-17.  Stony Brook twice

declared in its brief, "Plaintiff is not going to get his medical degree".  Dkt. No. 13 at 2, 21.

Stony Brook stated that this was because granting Sampson a degree would "dilute" the

university's academic standards and "create unacceptable and immeasurable hardships" to the

university "as well as to other learning institutions, the medical community, and the public at

large."  Dkt. No. 13 at 21-22.

      Meanwhile, Sampson filed suit against NBME seeking a preliminary injunction requiring

NBME to provide necessary testing accommodations. This Court set that motion for a

preliminary injunction for an evidentiary hearing starting on October 11, 2022.

      The Court held another status conference in the Stony Brook case on October 6, 2022,

and this Court again requested that Stony Brook stay action on Sampson's status as an enrolled

student pending the preliminary injunction hearing in the NBME case.  This Court stated a strong

preference that the stay be extended at least another 60 days, rejecting Stony Brook's suggestion

to extend the stay by only 30 days.  Ex. 6, Transcript of Status Conference, October 6, 2022

("Oct. 6, 2022 Tr."), at 3:4-4:4.  Following the status conference, counsel for Stony Brook stated

that her client had agreed to 60 days in deference to this Court's strongly stated preference,

stating that it was agreeing to the extension at this Court's "instruction".  Dkt. No. 17.

      On December 2, 2022, this Court entered an order in the NBME case granting in full

Sampson's motion for preliminary injunction against NBME, requiring the testing entity to

provide Sampson with double time on the Step 1 examination.  *Sampson v. Nat'l Bd. of Med.*

*Exam'rs*, No. 2:22-cv-05120-JMA, slip op., Dkt. No. 46 (Dec. 2, 2022).  Since only enrolled

students can take Step 1, a necessary predicate to the enforcement of the preliminary injunction

was that Sampson remain enrolled as a medical student at Stony Brook.  As this Court found, it was in the public interest for Sampson to have that opportunity to take Step 1 with accommodations because otherwise he risks "losing the opportunity to progress in his medical training."  *Id.* at 41.[5]

In light of this Court's Order, the parties in this case reported to the Court on December 9, 2022, that they requested until February 1, 2023, to reach an agreement and that if an agreement could not be reached by then, that the stay on Sampson's status as enrolled student would remain for as long as the Court retained jurisdiction.  Ex. 7, Transcript of Status Conference, December 9, 2022 ("Dec. 9, 2022 Tr."), at 4:4-12.  However, in January 2023, NBME filed an emergent appeal seeking to prevent Sampson from taking Step 1 with the accommodations this Court had ordered.

On January 31, 2023, Stony Brook informed the Court that the parties had not been able to reach settlement but that it would permit Sampson to remain as an enrolled student pending the outcome of NBME's appeal of this Court's preliminary injunction order.  Dkt. No. 21.  The following day, on February 1, 2023, this Court entered an electronic order terminating "for administrative purposes only" Sampson's motion for preliminary injunction against Stony Brook.

On May 1, 2023, the Second Circuit vacated the NBME preliminary injunction order on technical grounds, stating that it could not consider this Court's April 20, 2023 order regarding Sampson's status as an enrolled student because that order came after the NBME preliminary

---

[5] Notably, the heightened standard for issuing a mandatory preliminary injunction against NBME did not apply to Sampson's motion for preliminary injunction against Stony Brook seeking only a preservation of the status quo.  *See, e.g.*, *Libertarian Party v. Lamont*, 977 F.3d 173, 176-77 (2d Cir. 2020).

injection issued. *Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 23-3, slip op. at 4 n.1 (2d Cir. May 1, 2023). The Second Circuit stated that on remand, the District Court "may reevaluate the motion for preliminary injunction" and consider developments in the *Stony Brook* case. *Id.* at 5.

Later that same day, Stony Brook filed a letter with this Court stating that it would permit Sampson to remain enrolled only up until he took the Step 1 examination. Dkt. No. 23. The letter also noted that Sampson requested a status conference.

On May 3, 2023, this Court held a status conference in this case. This Court stated at the outset of the hearing

> Okay, good morning. Obviously, I'm sure you've all read the Circuit's decision in the NBME case. And as I'm sure you're aware, the Circuit's decision turned largely on the status of this case. I wanted this conference because I was hoping that we could reach a goal of the irreparable harm issue that was identified by the Circuit in the opinion.
>
> First, I want to go back to the status conference when we spoke on December 9th. At that time, Ms. Vargas represented that you had reached a provisional agreement that would, among other things, have permitted Mr. Sampson to take the step one exam on May 15th and assuming he passed it, giving him until August, '24, 2024 to graduate. But the in your letter yesterday, Stony Brook says it's only agreeing to maintain the status quo and keep Mr. Sampson enrolled pending the results of the step one exam should he proceed with the exam. So with that backdrop, I wanted to discuss two issues with regard to this new position.
>
> First, I don't think that this is sufficient to address the Circuit's irreparable harm analysis. I'm not going to repeat the decision. You've read it, I'm sure you've studied it. I'm not going to belabor this point. But it seems to me the Circuit concluded that Sampson hadn't demonstrated irreparable harm because regardless of the outcome of the NBME case, he couldn't continue with medical school unless he prevailed in the Stony Brook case. So I don't see any reason for Stony Brook's sudden reversal.
>
> Subject to your agreement to the proposal I'm going to make, which I'm going to outline in a minute, I plan to reissue the preliminary injunction in the NBME case once NBME and Sampson have had an opportunity to be heard. I think this path will both serve Stony Brook's interest in finality and also address the irreparable harm issue, allowing the Sampson case against NBME to proceed to a merits determination.

So my proposal is that you agree to the same provisional terms that you outlined in December, namely that Mr. Sampson will remain a student in good standing through August, 2024 and that he'll be permitted to proceed with his clinical studies once he passes step one. If he's unable to complete his medical requirements within that time, he'll be subject to dismissal. So that's my proposal, so I'm listening.

Ex. 8, Transcript of Status Conference, May 3, 2023 ("May 3, 2023 Tr."), at 2:15-4:10.

In response, Stony Brook backtracked from the statement made in its letter two days earlier when it had stated that it would give Sampson just another two weeks to remain enrolled as a student.  Stony Brook stated that it would consent to this Court's proposal that Sampson have until August 2024 to graduate.  *Id.* at 4:15-5:3.  After Sampson's counsel agreed with this proposal, this Court stated, "Then that's it, that's the agreement, so let's put it on the record right now" and instructed the parties to draft the stipulation within "the next hour".  *Id.* at 6:16-24, 9:4-5.

After giving the parties an hour to draft the stipulation, this Court revised the wording of the proposed stipulation, read it into the record, and had the parties agree on the record to the stipulation.  *Id.* at 16:3-23.  The stipulation provided, "Stony Brook will permit Mr. Sampson until August 12, 2024, to complete his medical education."  Dkt. No. 24.  This Court then granted the order in full.  Dkt. Nos. 25.

Per this Court's order, the stipulation left open the issue of fees.  *Id.*  This Court subsequently ordered the parties to set forth a briefing schedule for a fee petition, Dkt. No. 30, and this fee petition follows.  Dkt. No. 31.

### C.  SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

#### 1.  Congress Enacted Fee-Shifting Provisions To Ensure That Civil Rights Plaintiffs Such as Sampson Have Access to Competent Counsel

As the Supreme Court has explained, "[fee] awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."  *City of Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986). Congress accordingly "expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance."  *Id.* at 575 (citations and quotation marks omitted).  For civil rights plaintiffs to be able to vindicate these rights, they must have "competent counsel" willing "to expend the amount of time . . . necessary to litigate the case properly" and "obtain redress for their grievances."  *Id.* at 579-80.

In order to assert Sampson's federally protected rights in the face of Stony Brook's refusal to allow him additional time to complete his medical degree, Sampson needed highly skilled counsel willing to litigate on behalf of a student against a national testing entity defended by a large, private firm and a university defended by the Office of the Attorney General.

There are very few attorneys in the United States qualified to litigate medical school cases on behalf of students with disabilities and even fewer willing to do so under great time pressure, with high stakes.  Ex. 9, Declaration of Lisa Meeks ("Meeks Decl."), at ¶¶ 12-15; Ex. 10, Declaration of Lawrence Berger ("Berger Decl."), at ¶¶ 9, 10, 12.  Litigating on behalf of Sampson – saving his career – meant not one but two federal lawsuits had to be filed and successfully litigated under enormous time pressure. Stein & Vargas, LLP and the Law Offices of Charles Weiner are both small firms that have earned national reputations for being qualified

and willing to litigate such cases, but doing so meant both firms spent virtually all of their

billable hours between July and November of 2022 on the preliminary injunctions against Stony

Brook and NBME, both of which were necessary to assert Sampson's rights.

Sampson's attorneys took on his cases at substantial risk, necessarily devoting a

substantial number of hours to this case in the compressed time frame necessary to ensure that

Sampson remained enrolled so he could take—and pass—Step 1 before it was too late.  Ex. 4,

Vargas Decl., at ¶¶ 19, 20, 29; Ex. 10, Berger Decl., at ¶ 12; Ex. 11, Declaration of Robert

Dwyer ("Dwyer Decl."), at ¶ 11.  As this Court found, it was in the public interest for Sampson

to have that opportunity to take Step 1 with accommodations because otherwise he risks "losing

the opportunity to progress in his medical training."  *Sampson v. Nat'l Bd. of Med. Exam'rs*, No.

2:22-cv-05120-JMA, slip op., Dkt. No. 46, at 41.

Absent this litigation against Stony Brook, the litigation against NBME could not have

been filed as Stony Brook refused Sampson's overtures to allow him to remain enrolled while he

litigated against NBME.  Stony Brook, in choosing to deny Sampson's requests to remain

enrolled so he could seek accommodations through litigation against NBME, knew it was forcing

Sampson to either litigate against it or walk away from both his dreams of becoming a doctor

and his right to have accommodations for his disability.  In this manner, the fee-shifting

provision is critical to ensuring that Sampson's counsel is compensated for the enormous risks

taken in order to assert Sampson's federally protected rights and to likewise ensuring that the

next student denied accommodations can find counsel to represent them.  *See Rivera*, 477 U.S. at

575 (fee-shifting provision serves Congress' goal in recruiting counsel as "private attorneys

general" to bring meritorious civil rights claims).

9

## 2.   Sampson Is a Prevailing Party

The Second Circuit has distilled the Supreme Court's test for "prevailing party" status into two requirements.  First, there must be a "material alteration of the legal relationship of the parties."  *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).  The Supreme Court, in what it has termed a "generous formulation," has explained that "plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphases added) (citation omitted); *see also, e.g.*, *Hines v. City of Albany*, 613 F. App'x 52, 53 (2d Cir. 2015) ("It is sufficient that the plaintiff succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained.") (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998)).

Second, that material alteration must have judicial imprimatur.  *N.Y. State Fed'n of Taxi Drivers*, 272 F.3d at 158 (quoting *Buckhannon*, 532 U.S. at 605).  This second prong is also not a demanding test.  The Second Circuit has explained that "judicial action other than a judgment on the merits or a consent decree can support an award of attorneys' fees, so long as such action carries with it sufficient judicial imprimatur."  *Roberson v. Giuliani*, 346 F.3d 75, 81 (2d Cir. 2003).  The Second Circuit has held that sufficient judicial imprimatur is also present when a defendant relents "under threat" of injunctive relief.  *Pres. Coalition v. Fed. Transit. Admin.*, 356 F.3d 444, 452 (2d Cir. 2004).

The case of *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009) is directly on point.  In that case, there was a dispute whether a jail should serve the same number

of Halal meals as Kosher meals.  The judge dismissed a motion for preliminary injunction

without prejudice pending further developments in the case.  *Id.* at 146-47.  The judge then urged

the parties to settle key terms, proposing terms that he thought were reasonable.  The judge noted

that it seemed reasonable enough that Jewish and Muslim detainees should receive the same

number of religiously appropriate meals.  *Id.* at 147.  The defendant then relented and stated that

it would make Halal meals as equally available as Kosher meals.  *Id.* at 148.  The parties then

discussed settlement terms, and the Court made several changes to the document that the parties

had presented to the court, including amending the caption of the document to reflect that it was

an "Order" of the court.  *Id.* at 148.  The Second Circuit affirmed the subsequent award of

attorneys' fees, holding:

> The record demonstrates beyond peradventure Judge Berman's extensive
> involvement and close management of the case.  He played an integral role in the
> resolution of the suit, he advised the parties on how they should expect the law to
> come out, he suggested appropriate settlement terms, and he directed counsel to
> conduct settlement negotiations and to bring settlement offers back to their
> respective parties.  When the parties brought the outlines of the ultimate
> settlement proposal to the Court, Judge Berman pressed Defendants' counsel on
> the need to make the agreement part of an enforceable stipulation. Here again, we
> find strong evidence that Judge Berman judicially sanctioned the settlement.

*Id.* at 152-153.

Just like Judge Berman with the defendants in the *Perez* case, this Court played an

essential role in urging Stony Brook to agree to the relief that Sampson sought.  This Court had

to directly ask Stony Brook to maintain Sampson's status as an enrolled student during the

pendency of the lawsuit, and Stony Brook stated in a filing that it would consent to a stay at this

Court's "instruction".  Dkt. No. 17.  Stony Brook's about-face in response to this Court's

requests was notable given that even after Sampson filed the lawsuit, Stony Brook had filed a

brief in which it twice declared in no uncertain terms that Sampson would *not* graduate with a

medical degree, claiming that this result was necessary to prevent dilution of its academic standards and guard against threats to the public at large.  Dkt. No. 13 at 2, 21-22.

This Court also tipped its hand on the merits of this case, stating during status conferences her view that it was reasonable to give Sampson a chance to finish medical school. This Court also, in the course of granting a preliminary injunction in the NBME case, stated that it was in the public interest for Sampson to be able to take Step 1 with accommodations in order to have "the opportunity to progress in his medical training."  *Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 2:22-cv-05120-JMA, slip op., Dkt. No. 46, at 41.

Further, like Judge Berman, this Court suggested the terms for resolution of the key issues in this case.  Stony Brook had filed a letter with this Court stating that it might permit Sampson only another two weeks as an enrolled student.  This Court took issue with this position in a status conference and proposed the terms for a stipulation providing that Sampson could have until August 2024 to graduate.  This Court gave the parties an hour to work out the written terms for the stipulation, and then when the parties were back on the record, this Court revised those terms, asked the parties to agree to the terms on the record, and then instructed the parties to file the stipulated terms as a proposed order following the conclusion of the conference.  This Court then, like Judge Berman, adopted the stipulated terms as an "Order".  Just like the plaintiffs in the *Perez* case who achieved all that they sought as a result of the district court's "extensive involvement and close management of the case", Sampson achieved all of the aims of his lawsuit as a result of this Court's close supervision of this case and judicial imprimatur in ordering the stipulated terms.

The resulting stipulation in this case also materially altered the legal relations between the parties: Stony Brook is now legally bound to permit Sampson until August 2024 to graduate

from medical school.  Stony Brook "can no longer freely reverse" course and resume its prior course of action, an example of material alteration of the legal relationship between the parties that the Second Circuit has recognized.  *See, e.g.*, *Perez*, 587 F.3d at 150.  With the stipulation securely in place, Sampson is assured that if he continues to work hard, he will have a fair opportunity to graduate in August 2024.

Since Sampson obtained all of the relief that he sought in this case as a result of judicial imprimatur causing Stony Brook to reverse course and enter into a binding stipulation to permit Sampson until August 2024 to graduate, Sampson is a prevailing party who has met the threshold for reasonable attorneys' fees and costs.

### D.  THE LODESTAR DETERMINES SAMPSON'S REASONABLE ATTORNEYS' FEES

The Supreme Court has established the framework and methodology for calculating the reasonable attorneys' fees to award a prevailing party in civil rights cases.  *Hensley*, 461 U.S.  at 433-37.  This calculation, termed the "lodestar," is based upon "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate" for the attorney's services.  *Id*. at 433.  As the Supreme Court has explained, "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis omitted).  Accordingly, there is a "strong presumption" that the lodestar is reasonable.  *Id.* at 546, 554; *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986).

Sampson's request for reasonable attorneys' fees is therefore based on the lodestar method.  The two parts of the lodestar calculation—(1) hourly rates; and (2) hours reasonably

expended on the matter—are taken up in turn below.

### 1.   The Hourly Rates Requested for Sampson's Counsel Are Reasonable

Sampson seeks reasonable attorneys' fees based on the market rates that are "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The lodestar is calculated using current rates, in order to offset the effects of inflation and lost interest resulting from delay in payment of fees.  *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989).

This Court has described reasonable rates in the Eastern District of New York as follows:

> In recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates. . . . Some judges have recognized slightly higher ranges in this district of $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *15 (E.D.N.Y. Dec. 9, 2019) (internal citations and quotation marks omitted).

*Noboa v. Quality Homes USA, Inc.*, 22-CV-0513(JMA)(JMW), 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023) (Azrack, J.).  Further, "there is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and the complexity of the matter,"[6] and this Court has specifically noted factors in awarding such higher rates, including but not limited to "the complexity of the case, the attorneys' experience litigating similar matters, zealous litigation of this matter from both sides," and the rates within Eastern District of New York.  *Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 4376618, at *3 (E.D.N.Y. Sept. 20, 2022) (Azrack, J.).

---

[6] *See Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 5434178, at *6-7 (E.D.N.Y. July 8, 2022) (Locke, M.J.) (collecting cases), *adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 20, 2022) (Azrack, J.).

With respect to partners with twenty or more years of experience, "[a]n hourly rate of $450 remains within the range of rates found reasonable" in the Eastern District of New York. *Thomas v. City of New York*, 14-CV-7513 (ENV) (VMS), 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017) (Scanlon, J.).  This decision relies on case law several years old in determining reasonable rates, further lending credence to the reasonableness of these rates in 2023.  *See also, e.g.*, *Cotton v. NY Minute Movers, Inc.*, 20-CV-6153-CBA-SJB, 2023 WL 2499132, at *2 (E.D.N.Y. Mar. 14, 2023) (Bulsara, J.) (awarding $400/hour to an attorney serving as of counsel who graduated from law school in 2009); *Chex v. CCI Contr., Inc.*, 21-CV-3011(ARR)(SIL), 2022 WL 17787542, at *9 (Aug. 5, 2022) (Locke, M.J.) (recommending $500/hour for attorney admitted to bar in 1996); *C.A. v. New York City Dep't of Educ.*, 20 Civ. 2101(AMD)(VMS), 2022 WL 673262, at *5 (E.D.N.Y. Feb. 16, 2022) (Scanlon, M.J.) (recommending $425/hour for an attorney with 14 years of relevant litigation experience), *adopted*, 2022 WL 673272 (E.D.N.Y. Mar. 7, 2022) (Donnelly, J.); *Agudath Isr. of Am. v. Hochul*, 20-cv-04834(KAM)(RML), 2021 WL 5771841, at *7 (E.D.N.Y. Dec. 6, 2021) (Matsumoto, J.) (awarding $550/hour for a 1994 law school graduate and $500/hour for an attorney with 15 years' experience).

Based on these fee decisions, Sampson's counsel seek rates in the range of $425 to $450 per hour.  As described below, all three of Sampson's attorneys are partners with extensive experience litigating disability discrimination cases, including testing accommodations cases. They have each been recognized as leading disability advocates and even more specifically as leading litigators in the field of representation of medical students with disabilities.  Ex. 10, Berger Decl., at ¶¶ 5-10.  Their familiarity with the ADA statutory and regulatory provisions applicable to testing entities, the neuropsychological evaluations typical for individuals seeking

15

accommodations, and familiarity with the Step examinations allowed them to work efficiently in this matter compared to attorneys with no familiarity with any of these areas.  Ex. 9, Meeks Decl., at ¶ 13; Ex. 11, Dwyer Decl., at ¶ 12(b). The requested rates for Sampson's attorneys are therefore well within the range of reasonable rates in this District.  Ex. 11, Dwyer Decl., at ¶¶ 12(b), 12(g), 13(e); Ex. 12, Declaration of Maia Goodell, at ¶¶ 12-15.

### i.  Charles Weiner

Weiner was co-lead counsel in this case.  The requested rate for Weiner, who graduated from law school in 1988 and has 35 years of experience in litigation, is $450/hour.  Ex. 13, Declaration of Charles Weiner ("Weiner Decl."), at ¶¶ 6, 19.

Weiner specializes in representing students with disabilities, with a particular focus on cases involving accommodations in post-secondary entrance exams and professional licensing and certification examinations.  *Id.* ¶¶ 11-14.  Weiner also counsels individuals on the applications process for testing accommodations, appeals from denials of accommodations and has litigated cases against testing entities including the NBME and its osteopathic counterpart, the National Board of Osteopathic Medicine (NBOME).  *Id.*  For instance, in *Berger v. Nat'l Bd. of Med. Exam'rs*, 19-cv-00099, 2019 WL 4040576 (S.D. Ohio, Aug. 27, 2019), Weiner successfully obtained a preliminary injunction requiring NBME to provide testing accommodations.

Weiner has spoken extensively at the national, state and local level on the rights of individuals with disabilities and have been invited to speak at several national conferences by the Association for Higher Education and Disability (AHEAD), Coalition for Disability Access in Health Science Education, American Bar Association, American Speech-Language-Hearing Association (ASHA) and the National Stuttering Association.  Ex. 13, Weiner Decl., at ¶ 15.

Weiner served as a Commissioner on the American Bar Association's Commission on Disability Rights from 2014 to 2017.  *Id.* ¶ 16.

### ii.  Mary Vargas

Vargas was co-lead counsel in this case.  The requested rate for Vargas, who graduated from law school in 1998 and has 25 years of experience litigating disability discrimination cases, is $450/hour.  Ex. 4, Vargas Decl., at ¶¶ 7, 10, 24.

Vargas graduated with honors from the University of Connecticut School of Law. *Id.* ¶ 7.  Throughout the majority of her legal education Vargas advocated on issues relating to disability rights as part of her work for the Advocacy for Persons with Disabilities Clinic at Yale Law School, ultimately serving as a Student Director of that clinic.  *Id.*

After completing law school, Vargas received a fellowship from the Skadden Foundation to engage in nationwide impact litigation at the National Association of the Deaf on behalf of individuals with disabilities in health care.  *Id.* ¶ 8.  Subsequently, she co-founded the law firm Stein & Vargas, LLP with the goal of continuing to do impact litigation on behalf of individuals with disabilities.  *Id.* ¶ 9.

During Vargas' 25 years of experience litigating civil rights matters throughout the United States, she has been at the leading edge of challenging and important disability rights cases with a particular focus access to health care education for students with disabilities.  *Id.* ¶ 11 (representative list of cases).  Vargas has represented medical students with disabilities in leading cases against their medical schools including *Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013) (successfully argued appeal and was lead trial counsel on remand in verdict for deaf client whose medical school had refused to provide necessary accommodations) and *Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803, at *8 (E.D.

17

Wash. July 22, 2014) (co-counsel in case obtaining preliminary injunction requiring a medical

school to accept a deaf student whose admission it had withdrawn on the basis of disability).

Vargas' experience in medical school litigation and the unique culture and requirements of

medical education renders her uniquely qualified to advocate on behalf of medical students.

Vargas' background in special education is likewise critical in articulating her clients' disability-

related needs and in understanding the comprehensive neuropsychological testing that underpins

litigation on behalf of students with disabilities.  Ex. 4, Vargas Decl., at ¶ 20.

Vargas has litigated extensively in the area of accommodations for medical students

related to testing accommodations, representing clients against medical schools and testing

entities.  *Id.* ¶¶ 11, 19.  Vargas' accomplishments include litigating the leading case in the field

of testing accommodations for medical students—*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968

F.3d 251 (3d Cir. 2020) (served as lead counsel at the preliminary injunction hearing and

successfully argued the case before the Third Circuit).  In Sampson's case against NBME,

*Ramsay* was cited repeatedly by this Court and also by the Second Circuit.

In 2016, Vargas, along with her law partner Michael Stein, was part of the legal team that

received the Eagle Award for groundbreaking disability rights litigation for work in *Argenyi*.  Ex.

4, Vargas Decl., at ¶ 14.  She also received the 2017 FARE Vision Award for Advocacy on

behalf of individuals with food allergies from Food Allergy Research and Education, and the

2010 Advocate of the Year Award for advocacy on behalf of people living with chronic pain

from the American Academy of Pain Management.  *Id.*

### iii.  Michael Stein

Michael Stein was the lead author on briefs, researching and drafting the briefs in support of the motion for preliminary injunction and the fee petition.  Ex. 14, Declaration of Michael Stein ("Stein Decl."), at ¶ 22.  The requested rate for Stein, who graduated from law school in 2006 and has 16 years of experience in disability discrimination litigation, is $425/hour.  *Id.* ¶¶ 4, 6-10.

Stein graduated from Princeton University and from Harvard Law School where he was Notes Editor for the *Harvard Law Review*.  *Id.* ¶¶ 3-4.  He clerked for the Honorable William G. Young in the United States District Court for District of Massachusetts in 2006-2007.  *Id.* ¶ 5. He was a Skadden Fellow with the National Association of the Deaf from 2007 through 2009. *Id.* ¶¶ 6-8.  Since 2009, he has been a partner with the firm Stein & Vargas, LLP litigating disability discrimination cases throughout the United States.  *Id.* ¶¶ 9-10.

Stein has represented individuals in landmark cases involving individuals with disabilities.  *Id.* ¶ 13 (list of representative cases).  In particular, Stein has served as counsel in cases of national importance involving medical students with disabilities, including cases against medical schools and testing entities.  *Id.* ¶¶ 13, 14.  Representative cases include *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020) (leading case on accommodations for medical students with disabilities); *Argenyi*, 703 F.3d 441 (holding that medical schools must provide deaf students with an opportunity equal to that of hearing students); *Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803, at *21-22 (E.D. Wash. July 22, 2014) (entering a preliminary injunction requiring a medical school to accept a deaf student whose admission it had withdrawn on the basis of disability).

### 2. Sampson's Attorneys Seek Fees for Time Reasonably Spent for Sampson To Prevail

The second part of the lodestar calculation is based on the hours "reasonably expended" on the case. *Hensley*, 461 U.S. at 433-34. Counsel for the prevailing party should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. Counsel "should submit evidence supporting the hours worked." *Id.* at 433.

Sampson's attorneys have kept and provided meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. Sampson's attorneys also took care to remove any time not spent efficiently. Sampson's attorneys have also exercised billing discretion in not seeking fees for paralegal assistance. Fee expert Robert Dwyer, who has fifty years of litigation experience and reviews for reasonableness the billing records of the large law firms where he has served as partner, reviewed the time records in this case and opined that Sampson's attorneys have reasonably exercised billing discretion in seeking fees for a reasonable number of hours. Ex. 11, Dwyer Decl., at ¶¶ 1-7, 9, 12(d), 12(e), 13(d), 13(f). For instance, Sampson had a team of three attorneys with clearly defined roles which was made necessary by the fact that this case required intensive litigation against the state Attorney General's Office in a short period of time even as the attorneys also had other cases to litigate. *Id.* ¶¶ 12(c)-(f), 13(d)-(f).

Sampson's attorneys' fee request is based primarily on time spent on the following issues essential to the outcome in this case:

- Client counseling;
- Factual investigation;

- Correspondence with Stony Brook;
- Drafting the complaint;
- Briefing on the motion for preliminary injunction;
- Conference calls with the court;
- Settlement negotiations;
- Fee petition

Each of these categories of work was necessary to achieve the outcome in this case.

Sampson's counsel has exercised billing discretion not only in eliminating all time not efficiently spent but also in not seeking fees for time spent on this matter prior to June 30, 2022. Sampson retained Stein & Vargas for a two-year period prior to the litigation, during which time he incurred significant legal fees in persuading Stony Brook to reverse its discriminatory decision to require him to take Step 1 earlier than the rest of his classmates, and then additional legal fees in attempting to avoid litigation and persuade Stony Brook to permit him a reasonable amount of time to graduate once he resumed his studies.  Sampson seeks only the fees that were necessarily incurred after Stony Brook persisted in its desire to expel him from medical school even though he was a joint degree student in good standing with excellent marks who was only 40 weeks away from graduation with two degrees.

### 3.  Lodestar Calculation

After exercising billing discretion, the fees for each attorney calculated using the lodestar method are as follows:

| Attorney | Reasonable hours (excluding travel) | Requested Rate | Fee |
|---|---|---|---|
| Charles Weiner | 57.8 | $450 | $26,010.00 |
| Mary Vargas | 86.0 | $450 | $38,700.00 |
| Michael Stein | 40.9 | $425 | $17,382.50 |
| **Total** | | | $82,092.50 |

Application of the lodestar yields $82,092.50 in reasonable attorneys' fees.

### E.  SAMPSON'S REQUESTED REIMBURSEMENT OF COSTS IS REASONABLE

As the prevailing party, Sampson is entitled to an award of costs incurred in bringing this claim.  Taxable costs are defined by 28 U.S.C. § 1920, which provides for recovery of costs including court reporter fees transcripts necessarily obtained for use in the case.  Additionally, the ADA provides that courts may award "litigation expenses, and costs" to the prevailing party. 42 U.S.C. § 12205.

These taxable and nontaxable costs have been fully itemized as set forth with supporting documentation.  *See* Ex. 4, Vargas Decl., at ¶ 30.  These expenses, which were necessary to ensure that Sampson prevailed, fall into the following categories:

- Federal court complaint filing fees.  Sampson incurred $402.00 in costs in filing the federal court complaint.  *Id.*

- Transcript fees.  Sampson's attorneys ordered the transcripts from the court conferences in this case, in support of this fee petition.  The transcript fees that Sampson incurred totaled $196.94.  *Id.*

Sampson's litigation expenses for which he seeks reimbursement total $598.94.  *Id.*

### F.  CONCLUSION

Awarding reasonable fees and costs that Sampson incurred just to be able to remain in medical school in order to take Step 1 on a level playing field ensures that civil rights plaintiffs and their attorneys are adequately reimbursed for the work necessary to obtain successful results. Otherwise, Sampson will be left with the significant attorneys' fees and costs that he was forced to incur just to have the opportunity to take Step 1 with accommodations and graduate from medical school.  For these reasons, Sampson should be awarded reasonable attorneys' fees and

costs.  Straightforward application of the lodestar yields $82,092.50 in reasonable attorneys' fees and $598.94 in reasonable costs.

Respectfully submitted,

*s/Mary C. Vargas*
Mary C. Vargas
Michael S. Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel.:   (240)793-3185
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

Charles Weiner
LAW OFFICES OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Tel:   (267)685-6311
charles@charlesweinerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on August 23, 2023, via electronic mail consistent with the Court's bundling instructions and agreement of counsel on the following:

> Helena Lynch
> Assistant Attorney General
> Office of the New York State Attorney General
> helena.lynch@ag.ny.gov

The foregoing will be filed via the Court's CM/ECF system when the matter is fully briefed.


> _Mary C. Vargas_
> Stein & Vargas, LLP

24