# EXHIBIT 5

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

-------------------------------X  Docket#
ROBERT SAMPSON,                :  22-cv-04490-JMA-AYS
                               :
           Plaintiff,          :
                               :
   - versus -                  :  U.S. Courthouse
                               :  Central Islip, New York
STONY BROOK UNIVERSITY, ET AL,:
                               :  August 4, 2022
           Defendants          :
-------------------------------X

     TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE JOAN M. AZRACK
            UNITED STATES DISTRICT JUDGE
```

**A P P E A R A N C E S:**
(**VIA VIDEO/AUDIO**)

<u>**For the Plaintiffs**</u>:   **Mary C. Vargas, Esq.**
Stein & Vargas LLP
10 G Street NE, Suite 600
Washington, DC 20002

**Charles Weiner, Esq.**
Law Office of Charles Weiner
99 Lantern Drive, Suite 202
Doylestown, PA 18901

<u>**For the Defendants**</u>:   **Valerie Singleton, Esq.**
NYS Office of The Attorney
 General
Nassau Regional Office
200 Old Country Road, Ste. 240
Mineola, NY 11501

<u>**Transcription Service**</u>:   **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1 THE CLERK: Calling *Sampson v. Stony Brook*
2 *University*, 22-4490.
3 Who's on the call, please, for plaintiff?
4 MS. VARGAS: Good afternoon. This is Mary
5 Vargas for plaintiff Robert Sampson. And I believe if
6 the Court gives permission, we also have Charles Weiner
7 who has not yet filed a notice of appearance in this
8 case. He is going to be submitting an application for
9 admission to (indiscernible) and then will submit a
10 notice of appearance. As well as Robert Sampson.
11 THE CLERK: Thank you. Okay. Is anyone on the
12 call for defendant?
13 MS. SINGLETON: Yes. Valerie Singleton from
14 the Attorney General's Office appearing on behalf of --
15 THE CLERK: Okay. Please spell your last name
16 for me, please?
17 MS. SINGLETON: S-I-N-G-L-E-T-O-N.
18 THE CLERK: Okay. All right. If that's
19 everyone, I'll let the judge know you're on the phone and
20 she'll call in in a moment.
21 MS. VARGAS: Thank you.
22 (Pause in proceedings)
23 THE COURT: Good afternoon. It's Judge Azrack.
24 We have Ms. Vargas and Mr. Weiner?
25 MR. WEINER: Yes, your Honor.

3

Proceedings

1         MS. VARGAS:  Yes.  Good afternoon.
2         THE COURT:  And Ms. Singleton for defendant?
3         MS. SINGLETON:  Yes.  Good afternoon, your
4  Honor.
5         THE COURT:  Hi.  Okay.  So start off, since I
6  haven't heard the defendant's side of this, I'm
7  interested in hearing from Ms. Singleton.
8         MS. SINGLETON:  Your Honor, as I understand
9  from Stony Brook from counsel's office, they have worked
10 with Mr. Sampson since 2016.  In 2016 he met with the
11 Committee on Academic Professional Progress and they
12 informed him then that he would have to repeat phase 1 of
13 his work or take step one, take the test.  They
14 recommended him repeating phase 1 of his work because of
15 his chronic marginality.
16        He had a grade point average of 69.25.  He had
17 failed the body course's numerous exams he had failed on
18 his first attempt, but he was allowed to retake them and
19 he passed them.
20        They again met with him in 2017 and informed
21 him, gave him an opportunity to retake his courses or the
22 step one exam and reminded him of the seven year limit.
23        Again, they met with him again in 2018 and had
24 the same conversation with him.  At that time they were
25 informed that he had retained an attorney who attempted

4

Proceedings

1  to obtain accommodations for him from the USMLE.  And
2  from our understanding, twice he was denied the
3  accommodations or his appeal was denied.
4          In June of 2020, he did take the exam.  He
5  failed the exam, step one.  And at that time his
6  dismissal was recommended.  On appeal it was reversed and
7  he was allowed to proceed to phase 2 of his studies and
8  told that he would have to take step one.  To our
9  knowledge, to this day, he has not taken step one and now
10 he's run out of time.
11         Mr. Sampson did enter an MBA program.  He did
12 so, however, in June of 2021 when he was well aware that
13 he would be timed out with respect to the medical school.
14 And he entered the MBA program without permission from
15 the medical school.  So the policy that deals with
16 students who are dual enrolled does not apply to Mr.
17 Sampson.
18         THE COURT:  Why not?
19         MS. SINGLETON:  Because, your Honor, he
20 enrolled in the program after the medical school had
21 already told him he was running up against the time clock
22 with the seven year policy.
23         THE COURT:  Yes.
24         MS. SINGLETON:  And he was also told, your
25 Honor, that he had to receive approval from the medical

5

Proceedings

1  school in order to enroll in the dual MBA program which
2  the approval would not have been granted because he's
3  struggling in the medical school.
4            THE COURT:  Well, what about this situation
5  where he's got something from the registrar's office that
6  says he has until May of 2023?
7            MS. SINGLETON:  Your Honor, from my
8  understanding, I'm not aware that he has from the
9  registrar's office till May of 2023.  I was told from --
10           THE COURT:  I'm looking at the document.  It
11 says this letter verifies that Robert Sampson is
12 currently enrolled as a medical student, is in good
13 standing, expected graduation date May 2023.  Signed by
14 the registrar.
15           MS. SINGLETON:  Your Honor, from my
16 understanding, his date --
17           THE COURT:  That's news to you?  Wait, is that
18 something that's new that you were not aware of?  Because
19 it's in the complaint.
20           MS. SINGLETON:  Your Honor, I've been going
21 over the chrono notes.  I was in court yesterday.  And as
22 I explained to Ms. Vargas, I have been pouring over the
23 documents.
24           THE COURT:  Okay.
25           MS. SINGLETON:  So I have not had a chance, and

6

Proceedings

1  I have to be honest, your Honor, I have not had a chance
2  to review all of the documents.  I've been going over the
3  chrono notes to get up to speed --
4          THE COURT:  Okay.
5          MS. SINGLETON:  -- as to what occurred when he
6  was before the committee.
7          THE COURT:  Okay.  I'm not going to ask you to
8  comment on something that you haven't seen.
9          Well look, his situation changes on August
10 12th.  Is there some way you can come to some temporary
11 arrangement to keep him enrolled past August 12th?  I
12 can't do a preliminary junction hearing before August
13 12th.
14         MS. SINGLETON:  Well, I did speak with the
15  client, your Honor about that too because realizing that
16 we have to get our papers in and that the Court will also
17 have to conduct a hearing and also be given time to
18 render a decision, that we would be willing to maintain
19 the status quo until the return date, to the next return
20 day, once we have our papers in and the Court has had an
21 opportunity to conduct a hearing.
22         THE COURT:  Well, all right, good because
23 that's going to probably be at least 30 days out.
24         Ms. Vargas, have you had conversations with
25 people at Stony Brook?

7

Proceedings

1 MS. VARGAS: Yes, your Honor we've had multiple
2 conversations with Suzanne Shane, the general counsel at
3 Stony Brook, for a period of months. The last
4 communication, we've repeatedly asked in detailed letters
5 for accommodations for disability. Unfortunately, the
6 NBME is notorious for denying requests for accommodations
7 for students with disabilities. We've repeatedly cited
8 this. We've referenced cases showing that it is a
9 reasonable accommodation to request additional time to
10 seek accommodations from the NBME. And unfortunately,
11 Ms. Shane denied that request.
12 THE COURT: Well, I mean I know he's had a
13 recent exam, maybe a new psychiatrist or something. I
14 mean one of your issues really is with the NBME. Now,
15 why haven't you sued them all these years?
16 MS. VARGAS: Well, we do intend to sue them.
17 We've issued a final demand letter to them. We gave them
18 until August 1st. Unfortunately, the attorney for the
19 NBME, Robert Burgoyne is overseas. So he has responded
20 and said that he will get back to counsel as soon as he
21 returns. I don't know exactly what date that is, but
22 we've reached out to ask.
23 THE COURT: But I mean do you have -- are you
24 hoping that based on the most recent testing, Mr. Samson
25 is going to be granted an accommodation by NBME?

8

Proceedings

1  MS. VARGAS: Yes. His most recent testing, as
2  does his past testing in my opinion, but most recent
3  testing does support the need for accommodations and
4  Stony Brook, to its credit, agrees that he needs
5  accommodations.
6  THE COURT: No, I realize that, but do you
7  think that -- I mean I haven't studied the test results
8  but are the test results different in kind that it's
9  likely to change NBME's view of it?
10  MS. VARGAS: Well, Mr. Weiner and I have both
11  represented plaintiffs in litigation against the NBME and
12  successfully obtained preliminary injunctions for
13  students with learning disabilities and ADHD who are
14  denied accommodations. Based on that record, we have a
15  relationship with Mr. Burgoyne. That is why we went back
16  to him as a courtesy in hopes that he would have his
17  folks look back at the testing, which is from a very,
18  very highly respected neuropsychiatrist at Mount Sinai in
19  hopes that this very thorough testing and the
20  understanding that we are intending to file suit
21  imminently in federal court would get his focus and cause
22  his people to reevaluate the quality of the testing
23  submitted.
24  THE COURT: Okay. How long does that typically
25  take for them to reevaluate?

9

Proceedings

1 MS. VARGAS: They can do it very quickly.
2 THE COURT: Okay.
3 MS. VARGAS: They can do it very quickly. It
4 can be a matter of a week or two weeks assuming that we
5 don't have to litigate.
6 THE COURT: Yes.
7 MS. VARGAS: If we have to litigate, that
8 obviously takes longer.
9 THE COURT: I would think you at least give
10 them a chance to review that and see if they come to a
11 conclusion before you would file suit.
12 Let me ask you another question. Your
13 conversations with counsel for Stony Brook, what's their
14 position about this registrar letter?
15 MS. VARGAS: My understanding of their position
16 is that Ms. Shane says that they repeatedly told Mr.
17 Sampson, that he had to finish in seven years. Mr.
18 Sampson has been repeatedly told many different
19 graduation dates, everything from August 12, 2022 to
20 December 2022, to May 2023 to his understanding that he
21 was a joint MD/MBA student. And I would respectfully
22 disagree with my opposing counsel on how that happened.
23 He went to the medical school and requested that they
24 submit his materials to the MBA program for admission and
25 they did that and he was admitted. There is no other

10

Proceedings

1  process to formalize being an MD/MBA student other than
2  what he did. And he's quite a successful one judging by a
3  4.0 average in the MBA school.
4           THE COURT: Yes, I see that. All right. I
5  mean also I mean I'm happy that the defendants have
6  agreed to at least some cushion in terms of time just in
7  terms of when, you know, they can respond and when the
8  Court can possibly get to it. But, you know, why did you
9  wait so long to even sue Stony Brook when August 12th was
10 the drop dead date?
11          MS. VARGAS: We had hoped that Stony Brook
12 would grant the accommodation once counsel put it in a
13 letter and we did that. We had repeated delays. When I
14 first contacted counsel in October of 2021, we had
15 repeated delays and in their response. I kept reaching
16 out again and asking for a response. They gave an abrupt
17 response in January 2022. So I again sent them a
18 detailed letter citing precedent, citing statute, and
19 that was when they responded and said they would not make
20 the accommodation. In the meantime, it wasn't until just
21 this last month, June 2022, that the NBME denied the
22 request for accommodations. So we had really hoped that
23 they would grant that accommodation and that might be,
24 you know, sufficient reason for a change of position to
25 avoid coming to federal court which is obviously not only

11

Proceedings

a use of the court's resources, but a heavy burden for a medical student to bear.

THE COURT: So and then it was after the June denial that you did the additional testing?

MS. VARGAS: No, the additional testing was done prior to that. We submitted that testing. The student submitted that testing to the NBME and he just received that denial in June of 2022.

THE COURT: But you still have hope that you can change the NBME's mind on this?

MS. VARGAS: We have successfully done that in the past. The testing was done, as I said, by Dr. Wasserstein who is someone that the NBME respects in our past experience. It's someone who's very well respected, it's very detailed testing. And so we still have, you know, expectations that the NBME will follow their legal obligations pursuant to Section 504 in the ADA to provide the accommodations that are needed.

THE COURT: All right. Well, let me just throw out a thought since we're going to have to schedule this because Ms. Singleton's going to need time to put in a response, and at the same time on a parallel track, you could be doing your appeal to the NBME.

Let's put this on say a two-month track so that you can deal with the appeal and Ms. Singleton can get

```
                                                              12
                         Proceedings
```

1   her papers in and I can schedule a hearing.  But in the
2   meantime, you know, maybe you'll get a different decision
3   from them.  Maybe you can have some conversations about
4   resolving this.  I mean, you know, Ms. Singleton, I don't
5   want to put you in a bad position because I know you're
6   very new to this, but I would just ask counsel for Stony
7   Brook to think about, you know, it sounds like this is a
8   promising young doctor that -- I mean, why is it such a
9   big deal to give him until May 2023 under these
10  circumstances?
11              MS. SINGLETON:  I think --
12              THE COURT:  He can graduate by then.  I mean I
13  don't want to put you in position where you have to
14  answer and you can't answer because you're not familiar
15  enough with the facts but I just throw that out.
16              MS. SINGLETON:  Well, I did have, you know,
17  conversations with counsel's office with looking towards
18  a view is this something that is potentially workable
19  here?  The concern is, and the problem here is we have no
20  control over the NBME.  They've already denied this young
21  man the accommodations twice.  On a local level, my
22  client has already given him accommodations on a local
23  exam.
24              THE COURT:  I know that.
25              MS. SINGLETON:  But for his national exam, you

                                                                  13
                              Proceedings

1  know, the NBME has to give him the accommodations and
2  they've already denied him twice.  So we have no
3  assurances and it seems unlikely that they are going to
4  award him any accommodations.  Best case scenario, we're
5  looking at another year before he completes his medical
6  studies.  Worst case scenario, he's looking at two years
7  before he completes his medical studies if the
8  accommodations are granted.  I mean, we would be holding
9  his status in abeyance.  We don't know how long this is
10 going to go back and forth because he has appealed
11 several times.  So we don't know, you know, this can take
12 a year, two years, or three years.  We don't know.  He
13 hasn't been in an academic environment to my knowledge
14 since June of 2016 and that's a lot of time.
15            THE COURT:  No, I think he's --
16            MS. VARGAS:  May I respond?
17            THE COURT:  Yes, please, yes.
18            MS. VARGAS:  Yes, that's not correct.
19            THE COURT:  Right.
20            MS. VARGAS:  After the CAP committee reversed
21 its decision that had kept him on leave of absence for a
22 period of years, he was able to return.  He successfully
23 completed his second year, he successfully completed his
24 third year.  In fact he had outstanding performance
25 reviews, clinical reviews, and all he has left is 40

```
                                                              14
                         Proceedings
 1   weeks of clinical programs.
 2              He also, as I mentioned before, was in the
 3   classroom for his MBA program where he excelled.
 4              THE COURT:  So you said all he has left is 40
 5   weeks of clinical?
 6              MS. VARGAS:  Correct.
 7              MS. SINGLETON:  I mean so --
 8              THE COURT:  Let me just ask Ms. Vargas a
 9   question.  Ms. Vargas, if you don't accept in the appeal
10   to the NBME, then what happens?
11              MS. VARGAS:  We anticipate filing suit in
12   federal court in the next 30 days and we would seek a
13   preliminary injunction against the NBME.
14              THE COURT:  And in the meantime --
15              MS. VARGAS:  Mr. Sampson wants to finish school
16   as soon as he possibly can.
17              THE COURT:  And in the meantime, you'd still be
18   seeking the PI against Stony Brook to hold that so that
19   you could do the latter suit against the testing agency,
20   correct?
21              MS. VARGAS:  Correct.  He's in a Catch-22
22   because the NBME has a rule that requires you to be
23   enrolled as a student in good standing.  You don't have
24   to be an active student but if he's kicked out of medical
25   school, he can no longer proceed against the NBME.
```

```
                                                                15
                             Proceedings
 1            THE COURT:  Right, I see.  Okay.  All right.
 2   And so now going all the way back to the fellow who's in
 3   Europe, when do you think you're going to be able to
 4   finish this appeal with the testing agency?
 5            MS. VARGAS:  I would anticipate within two
 6   weeks.
 7            THE COURT:  Okay, all right.
 8            MS. VARGAS:  We went back to Mr. Burgoyne
 9   yesterday and asked him again to, you know, to give us a
10   date certain that he could respond.
11            THE COURT:  So let me just -- so Ms. Singleton,
12   you're going to need time to put in a response, correct?
13            MS. SINGLETON:   Yes, your Honor.
14            THE COURT:  Okay.  And how much time would you
15   like to put in a response?
16            MS. SINGLETON:  Your Honor, I would like till I
17   would say the end of August.
18            THE COURT:  How about September 9th?
19            MS. SINGLETON:  September 9th is fine, your
20   Honor.
21            THE COURT:  Okay.  And then I'll give the
22   plaintiff a chance to put in a reply till let's say
23   September 23rd.  I will then look to schedule a hearing
24   by -- within the next few weeks after that.  So, can we
25   all agree because of both the appeal to the testing
```

```
                                                                  16
                              Proceedings
 1   agency as well as the briefing schedule, can we at least
 2   hold everything, you know, in abeyance, basically have  a
 3   sit still agreement through October 14th so that we can
 4   brief and have a hearing on this?
 5              MS. SINGLETON:  That's fine, your Honor.
 6              MS. VARGAS:  Plaintiff would welcome that.
 7              MS. SINGLETON:  I spoke with the client agency
 8   to the end of September, but I think October 14th is
 9   fine.
10              THE COURT:  Yes.  I'm in a criminal trial till
11   the end of September so I can't even schedule you until
12   sometime in October and I'll know better as we go
13   forward.  But let's do a stand still until October 14th.
14              MS. VARGAS:  Your Honor, this is Ms. Vargas.
15   We've reviewed your individual rules after the case was
16   assigned to you and we understand that you would like
17   papers to be served on you when they're of the length
18   that the PI is and also that you would like briefing
19   bundled.  Should we hold off on filing, you know, Ms.
20   Singleton on filing the opposition and plaintiff on
21   filing the reply and then file it as a bundle?
22              THE COURT:  Yes.  You know, in this situation
23   you can file it as it's ready.  You don't need to bundle.
24              MS. SINGLETON:  Okay.  Thank you.
25              THE COURT:  Bundling has to do with the clocks
```

17
Proceedings

1 running on our motion so you don't need to bundle in this
2 case.
3             MS. VARGAS:  Okay, thank you.
4             MS. SINGLETON:  And Judge --
5             THE COURT:  All right.  Yes, Ms. Singleton?
6             MS. SINGLETON:  I'm sorry, your Honor.  Your
7 Honor, on the return day on 10/14 for the hearing, would
8 you like live witnesses?  Would you like us to present
9 witnesses?
10            THE COURT:  I will let you know before then and
11 I can't say for sure it's going to be October 14th
12 because it's going to be when my criminal trial is over.
13 I have an in custody defendant going to trial in early
14 September and it's going to be -- I will schedule it for
15 very shortly thereafter but yes, I will want live
16 witnesses but I'll give you plenty of notice.  So as we
17 get through September, I may know, you know, is it going
18 to be October 14th or is it going to be maybe the next
19 week?  It's just depends on when my jury comes back in
20 the criminal trial.
21            MS. SINGLETON:  Okay, thank you, your Honor.
22            THE COURT:  But for now I want you all to
23 basically agree to this standstill through October 14th.
24            MS. SINGLETON:  Yes, your Honor.
25            MS. VARGAS:  Yes, your Honor.

```
                                                              18
                         Proceedings
1            THE COURT:  All right, thank you everyone.
2            MS. VARGAS:  I do have one additional question,
3    your Honor.
4            THE COURT:  Yes.
5            MS. VARGAS:  In the event that the NBME denies
6    our request to provide the accommodations imminently, we
7    would then file in federal court against the NBME and
8    seek a preliminary injunction.  When we do that filing,
9    should we advise the clerk that it's a related case or --
10           THE COURT:  Yes, yes.
11           MS. VARGAS:  Okay.  Thank you.
12           THE COURT:  All right, good luck everybody. And
13   thank you.
14           MS. SINGLETON:  Thank you, your Honor.
15           MS. VARGAS:  Thank you.
16           MR. WEINER:  Thank you, your Honor.
17                       (Matter concluded)
18                            -oOo-
19
20
21
22
23
24
25
```

19

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6th** day of **August**, 2023.

_____
Transcriptions Plus II, Inc.