# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| | : | CIVIL ACTION NO. 2:22-cv-04490-JMA-AYS |
| v. | : | |
| | : | |
| STONY BROOK UNIVERSITY, *et al.*, | : | |
| | : | |

# DECLARATION OF ROBERT J. DWYER

Robert J. Dwyer, being duly sworn, declares under penalty of perjury:

1. I graduated *magna cum laude* from Amherst College in 1969, where I was elected to *Phi Beta Kappa*, and *cum laude* from Harvard Law School in 1972. I was admitted to the bar of this Court in 1973.

2. I have been a Partner at the law firm of Boies Schiller Flexner LLP since 2001 and served for two years as the Administrative Partner of the New York City office.

3. I was a Partner at the New York City office of Bryan Cave LLP from 1986 to 2001 and served for six years as a member of the firm's Executive Committee.

4. I co-founded and was a Partner at the New York City office of Davis, Markel, Dwyer & Edwards from 1980 to 1986.

5. I was an Associate at the New York City office of Cravath, Swaine & Moore from 1972 to 1980.

6. In all my positions at those law firms, I have been in the Litigation Department. My litigation experience (including in the Eastern District of New York) is diverse, including the representation of:

    a. plaintiffs in copyright, trade secret, securities fraud, illegal taking, and employment termination litigation;

1

    b.  defendants in securities, Martin Act, antitrust, accountants liability, product liability, breach of contract, and airplane incident litigation;

    c.  the corporate subject of an environmental grand jury in the District of Columbia;

    d.  a prisoner in a *habeas corpus* action;

    e.  the State of Kuwait in a United Nations tribunal that awarded compensation for damages resulting from the first Gulf War; and

    f.  a New York City charitable body in multiple litigations over a dozen years.

7.    In many of the representations identified in the prior paragraph, and continuing through the present, my duties have included reviewing the invoices sent to clients for reasonableness, addressing client questions and concerns regarding those invoices, and negotiating adjustments in invoices to reflect a variety of factors. As a result, I am regarded as experienced in the subject of the reasonableness of the amount of work required to litigate claims and the reasonableness of the fees associated with that work, including in the Eastern District of New York.

8.    My law firm and I are not being compensated for my work in connection with this action.

9.    I have reviewed:

    a.  the billing records and briefing submitted by Plaintiff's counsel in connection with their application for fees as the prevailing party;

    b.  the Complaint in this action, including the allegations relating to inconsistencies and changes of position of Defendants in this action and their agents;

    c.  the *Curriculum Vitae* of all three lawyers who represented Plaintiff; and

    d.   the opinions on injunctive relief that were issued by this Court and the Second Circuit in Mr. Sampson's action against the National Board of Medical Examiners ("NBME"), Civil Action No. 2:22-cv-05129-JMA-AYS (the "NBME action").

10.     I am aware that Defendants in both this action and in the NBME action have agreed to grant Plaintiff the relief he sought.

11.     Based on my experience assessing the reasonableness of the amount of work required to litigate claims and the corresponding fees, the fact that Defendants in this action, after opposing Plaintiff's claims, have agreed to the relief sought demonstrates, in my opinion, at least the following points:

    a.   Plaintiff's claims were 100% meritorious.

    b.   The relief sought would not have been agreed to without the work of Plaintiff's counsel in pursuing those claims.

    c.   The relief sought by Plaintiff had to be granted in a timely fashion in order to do him any good, since Stony Brook University took the position that his medical studies had to be completed within a finite time period.

    d.   Defendants' refusal to grant the relief sought when the issue first arose, inconsistent positions taken by Defendants (including positions inconsistent with their own internal analyses and rules), and Defendants' insistence on litigating the action rather than resolving the dispute on the term they ultimately agreed to, were the direct cause of the attorney's fees incurred by Plaintiff.

    e.   Plaintiff's counsel took the risk that they would not be fully compensated unless they prevailed in this action.

12. It is also my opinion that Defendants' refusal to resolve this dispute short of litigation necessitated the filing of this action and the costs and fees related thereto.

   a. Prior to the commencement of this action, Plaintiff's counsel attempted to persuade Defendants' in-house counsel to forbear from suspending Plaintiff from the medical school pending the resolution of Plaintiff's claims against NBME. Defendants initially refused to agree, even though that is the relief that Defendants ultimately agreed to.  Thus, the necessity of commencing this action is directly linked to Defendants' unwillingness to agree to interim relief that would have obviated the need to bring the action.  (It should be noted that Plaintiff's counsel *only* seek fees and costs related to their efforts in connection with their representation of Plaintiff directly related to litigation, and not for their activities relating to their pre-June of 2022 representation of Plaintiff.)

   b. Plaintiff's counsel are attorneys experienced in the field of claims involving other claimants with disabilities in medical education, including specifically in the area of testing accommodations.  The complexity of the matter and knowledge unique to medical education necessitated Plaintiff's retention of attorneys with that type of experience.  In my opinion, the need for that specialized expertise more than justifies the retention of Plaintiff's counsel rather than the retention of attorneys in this District with lower hourly billing rates who would have had to learn the underlying legal and factual principles that Plaintiff's counsel came equipped with.  In my opinion, the alternative would have resulted in higher fees, more delay, and—potentially—a worse result.

4

c. Because Defendants were represented by the New York State Office of The Attorney General ("OAG"), it is not possible to compare the hourly rates of the attorneys for the parties.  However, I would observe that OAG employs highly experienced and qualified attorneys, who have specialized expertise in dealing with the subjects being addressed.  For example, Defendants' Lead Attorney in this action (Helena Ann Lynch) describes herself on her LinkedIn page as a "Client-focused, results-oriented advocate with experience advising on and litigating high-stakes matters from commercial disputes to constitutional questions".  Attorney Lynch ranked first in her class and graduated *summa cum laude* from New York Law School in 2005, where she was Executive Articles Editor of the Law Review.  Attorney Lynch then clerked for Hon. Roger J. Miner on the Second Circuit Court of Appeals.  After her admission to the First Department in 2006, Attorney Lynch worked for nearly seven years at White & Case and Wolf Halderstein, where she represented plaintiffs and defendants in "complex litigation and international arbitration" and "securities and consumer class actions."

d. So it is hardly surprising that Plaintiff was represented in this action by counsel chosen for their expertise and experience in the field, creating efficiency due to having representation by attorneys experienced in the subject matter.

e. The time requirements of this representation required Plaintiff to engage three attorneys.  Because each of Plaintiff's counsel had obligations for other clients, and in this case were simultaneously on a very tight briefing schedule in *Sampson v. NBME*, none of the attorneys for Plaintiff were able to devote 100% of their

5

    time to this action.  Yet the quick pace of this action and the need for expedition (obtaining the relief sought in order to meet Stony Brook University's time requirements for completing medical school) required that multiple attorneys devote substantial time to the representation.  Plaintiff's counsel represented him in both the action against NBME and in this action, thus further increasing efficiency.  In my review of the billing records for the representation of Plaintiff, I did not observe any duplication of effort among Plaintiff's three attorneys.  I note that the action was pursued expeditiously, lasting less than a year from the filing of the Complaint until Defendants' concession that the relief sought would be granted.  I conclude that the work identified in those billing records was necessary to the representation of Plaintiff in this action.

    f. Another advantage to the retention of experienced and highly qualified counsel by both sides in this action was the efficient manner in which they pursued this action.  After filing the Complaint and a motion for a preliminary injunction on July 29, 2022, as the docket reflects, counsel for the parties conducted this action with the recognition that its outcome would largely be determined by the outcome of the related action pending in this Court against NBME, and thus minimized work in these proceedings pending the outcome of the NBME action.

    g. The fees sought by the three attorneys for Plaintiff ($425 to $450) are reasonable and justified by their specialized expertise and are less than they could command in their home districts as compared to attorneys of similar background and experience.

13.     To summarize my opinions:

6

    a. Plaintiff was the prevailing party insofar as he obtained the relief sought through litigation that was denied him prior to litigation and the merits of his claims received judicial imprimatur, and thus his attorneys should be compensated for their efforts in representing him.

    b. Defendants had the ability to grant that relief *ab initio*, but instead took positions that necessitated that this matter be litigated, forcing Plaintiff to incur attorneys' fees.

    c. The work done by Plaintiff's counsel in connection with this action was necessary, particularly in light of the deadlines that Plaintiff faced in connection with completing medical school and taking NBME examinations and Defendants' refusal to avoid prejudicing Plaintiff during the pendency of the NBME action.

    d. The work done by Plaintiff's counsel was as efficient as possible, without any undue overlap or duplication of effort. In particular, the use of the same counsel in both this action and the NBME action resulted in cost efficiencies.

    e. The hourly rates sought by Plaintiff's counsel are justified by their experience in this specialized field. Plaintiff's retention of counsel resulted in the achievement of a more timely and potentially better result.

    f. The fees $82,092.50 and costs of $598.94 sought in this action are minimal and reflect the efficiency with which Plaintiff's counsel worked in this case in achieving a successful result for their client.

14. I declare under the penalties of perjury that the foregoing is true and correct.

Dated: August 23, 2023            s/*Robert J. Dwyer*
                                              Robert J. Dwyer