UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SAMPSON,<br><br>      *Plaintiff,*<br><br>   v.<br><br>STONY BROOK UNIVERSITY; and MAURIE MCINNIS, in her official capacity as President of Stony Brook University,<br><br>      *Defendants.* | 2:22-cv-04490<br>(JMA) (AYS) |

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR ATTORNEYS' FEES AND COSTS**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

Helena Lynch
Assistant Attorney General,
 *of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................1

STATEMENT OF RELEVANT FACTS AND PROCECURAL HISTORY ...........................4

     A.     Relevant background facts .................................................................................4

     B.     Procedural history.............................................................................................6

STANDARDS FOR AWARD OF ATTORNEYS' FEES ...........................................................9

ARGUMENT..............................................................................................................................12

POINT I
PLAINTIFF IS NOT THE PREVAILAING PARTY IN THIS LITIGATION, IN WHICH
DEFENDANTS, INDEPENDENT OF ANY ACTION BY THE COURT, VOLUNTARILY
OFFERED PLAINTIFF THE AUGUST 12, 2024, DEADLINE TO COMPLETE HIS
STUDIES...................................................................................................................................12

POINT II
A FEE AWARD IS INAPPROPRIATE HERE WHERE THERE IS NO MERIT TO
PLAINTIFF'S DISCRIMINATION CLAIMS AND PLAINTIFF CREATED, OR AT LEAST
COULD HAVE AVERTED, THE CIRCUMSTANCES LEADING TO THIS LITIGATION
...................................................................................................................................................17

POINT III
IF THE COURT WERE TO AWARD FEES, THE AWARD SHOULD BE A FRACTION
OF WHAT PLAINTIFF SEEKS ..............................................................................................20

CONCLUSION .........................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                            **Page**

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
    532 U.S. 598 (2001).................................................................................................9, 11

*Choudhury v. Barnhart,*
    No. 04-cv-142, 2005 WL 2592048 (S.D.N.Y. Oct.2, 2005)................................................11

*Christopher P. by Norma P. v. Marcus,*
    915 F.2d 794 (2d Cir. 1990). ........................................................................................10, 16

*Garcia v. SUNY Health Scis. Ctr. of Brooklyn,*
    280 F.3d 98 (2d Cir. 2001) ...............................................................................................1

*Garcia v. Yonkers Sch. Dist.,*
    561 F.3d 97 (2d Cir. 2009) ...............................................................................................11

*Hess v. Astrue,*
    No. 09-cv-2516, 2010 WL 2723221 (E.D.N.Y. Apr. 2, 2010)...........................................11

*Indep. Project, Inc. v. Ventresca Bros. Constr. Co.,*
    397 F. Supp. 3d 482 (S.D.N.Y. 2019)..............................................................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994).........................................................................................................16

*LaRouche v. Kezer,*
    20 F.3d 68 (2d Cir. 1994) ......................................................................................11, 17, 19

*Perez v. Westchester County Dep't of Corrections,*
    587 F.3d 143 (2d Cir. 2009) .........................................................................................13, 14

*Perros v. County of Nassau,*
    238 F. Supp. 3d 395 (E.D.N.Y. 2017) ..............................................................................1

*Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.,*
    356 F.3d 444 (2d Cir. 2004) .........................................................................................10, 16

*Roberson v. Giuliani*,
    346 F.3d 75 (2d Cir. 2003) ...................................................................................................10

*Torres v. Walker*,
    356 F.3d 238 (2d Cir. 2004) ..........................................................................................10, 15

**Federal Statutes**                                                                         **Page**

42 U.S.C. § 12205 .................................................................................................................9

**State Statutes**                                                                         **Page**

N.Y. Educ. Law § 351 ..........................................................................................................1

N.Y. Educ. Law § 352 ..........................................................................................................1

**PRELIMINARY STATEMENT**

Defendants, State University of New York[1] and Maurie McInnis, by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in opposition to Plaintiff's motion for attorneys' fees and costs.

Plaintiff seeks more than $82,000 in fees and costs for a case that was dormant from the outset and was resolved pursuant to Defendants' independent, voluntary actions. Plaintiff is not entitled to any fees because he cannot show, as he must do, that he was the prevailing party in this matter, which resulted in no judicially sanctioned relief and otherwise lacks the necessary judicial imprimatur that could confer prevailing party status on Plaintiff.

This matter was commenced only because Defendants[2] were caught in the middle of a dispute between Plaintiff and the National Board of Medical Examiners ("NBME"). To wit, Plaintiff needed to take Step 1 of the three-step United States Medical Licensing Examination ("USMLE"), which is administered by NBME, in order to continue his

---

[1] As a subdivision of SUNY, Stony Brook University is not a legally cognizable entity separate from SUNY. *See* N.Y. Educ. Law §§ 351 and 352. Therefore, SUNY Stony Brook is not a proper defendant in this action.

[2] This memorandum refers to "Defendants" merely for ease of reference. Plaintiff's claims against Defendant McInnis were never viable because no individual liability is recognized under the ADA Title II or the Rehabilitation Act. *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017) ("[I]t is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity.").

1

studies at Stony Brook University's ("SBU") Renaissance School of Medicine (the "School of Medicine"). And Plaintiff needed to be an enrolled student in order to take the Step 1 exam. But Plaintiff had been battling with NBME since 2017 over testing accommodations he sought for the Step 1 exam. And between 2017 and 2022 the NBME denied Plaintiff's requests for testing accommodations seven times. Plaintiff failed his attempt at the Step 1 exam in 2020, and as of 2022, he had not re-taken the exam. As a result, in 2022, Plaintiff, who began his studies in August 2015, had to be notified that he would be dismissed from the School of Medicine as of August 12, 2022, because he would necessarily be unable to complete his studies within the mandatory seven-year limit.

The Court has not issued a single substantive ruling in this matter. Instead, the case has been effectively dormant from the beginning. Defendants independently and voluntarily decided, before the first conference held by the Court within days of the matter's commencement, to maintain Plaintiff's status as a student at the School of Medicine. Then, in December 2022 Defendants independently and voluntarily offered to keep Plaintiff enrolled in the School of Medicine until August 12, 2024, effectively resolving the litigation. Defendants' decisions—their voluntary decision to keep Plaintiff enrolled in the School of Medicine from the outset of the litigation and then their case-resolving voluntary offer to keep Plaintiff enrolled until August 12, 2024—were taken with no prompting by the Court or any other involvement of the Court.

2

In addition, Plaintiff's counsel, engaged no later than May of 2020 (*see* ECF No. 3-8), and possibly as early as July 2018 (*see* ECF No. 14, ¶ 14), has known all along that Plaintiff would need to sue NBME to have any chance of receiving his requested accommodations for the Step 1 exam, *id*., but Plaintiff took no legal action against NBME until *after* the filing of this matter. In short, this litigation was brought about because of circumstances that Plaintiff and his counsel created, or at least could have averted, and not because of any discriminatory action by Defendants.

Accordingly, Plaintiff is not entitled to attorneys' fees. If the Court disagrees and determines a fee should be awarded, the fees should be cut off after December 9, 2022, the date the parties informed the Court that they had worked out a resolution. The only reason the matter was not concluded forthwith was that Plaintiff's counsel thereafter attempted to alter agreed-upon terms and began raising ancillary issues that were never discussed prior to December 9, 2022, including academic-policy questions which should never have involved the time of attorneys or the Court.

However, the Court should determine that no fee award is appropriate because, as set forth below, under the governing law, Plaintiff cannot show that he is a prevailing party in this litigation. Instead, this matter has the hallmarks of the types of matters where courts within the Second Circuit have found that a fee award is not appropriate.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  Relevant background facts

Plaintiff's academic record with SBU is somewhat complex, but the relevant facts are less so. It is not disputed that Plaintiff was required to take and pass Step 1 of the USMLE prior to being permitted to commence Phase III of his studies at the School of Medicine.[3] *See, e.g.*, ECF No. 25 (Order). It is also not disputed that, as of August 2022, seven years after he commenced his medical studies, Plaintiff had not passed the Step 1 exam. *See, e.g., id*; Compl. at 1. It is also not disputed that, beginning in 2017, and continuing to June 2022, NBME had *seven times* denied Plaintiff's requests for accommodations, including additional testing time, for the Step 1 exam. Compl. ¶¶ 60, 99.

And, critically, as is also not disputed, as of August 2022, Plaintiff had not sought judicial relief against NBME, despite Plaintiff's counsel's repeated demonstrations of their knowledge that without judicial action NBME would continue indefinitely to deny the testing accommodations Plaintiff sought. *See, e.g.*, ECF No. 3-15 (letter from Mary Vargas to Suzanne Shane (Mar. 31, 2022), citing examples where students obtained

---

[3] Due to his academic marginality during Phase I of his studies, Plaintiff was given the choice in 2017 to either (1) repeat his Phase I courses (with the exception of those courses in which his scores were above the class mean, *see* ECF No. 14-5) *or* (2) take and pass the Step exam. *See* Compl. ¶ 46. It was Plaintiff's choice all along to take the Step 1 exam rather than repeating any courses prior to being permitted to begin Phase II. *See, e.g.*, Compl. ¶ 51. Eventually, in July 2020, Plaintiff was permitted to begin Phase II even though he had not passed Step 1. *See* ECF No. 14-10.

accommodations only after seeking judicial relief); ECF No. 3 (Pl.'s Mem PI Mot.) at 5 ("The NBME . . . has a long history of denying medical students' well-documented requests for accommodation."); *id*. at 5-6 (citing examples where judicial relief was necessary to secure accommodations from NBME). Plaintiff's counsel was also well aware that obtaining such judicial relief against NBME could involve a lengthy process. *See* ECF No. 3-15 at 2 (referring to one of the matters in which a party obtained testing accommodations only through judicial relief, "it took time to enforce our client's federally protected rights.").

It was only after a full month had passed after the commencement of this action, on August 29, 2022, that Plaintiff commenced an action against NBME. *See Sampson v. Nat'l Bd. of Med. Examiners*, No. 22-cv-5120 (E.D.N.Y.) (the "NBME Action"), Compl. ECF No. 1 (Aug. 29, 2022). Plaintiff then waited almost an additional month, until September 20, 2022, to seek a preliminary injunction in the NBME Action to mandate NBME to provide testing accommodations. *See Sampson v. Nat'l Bd. of Med. Examiners*, No. 22-cv-5120 (E.D.N.Y.) ECF No. 16.

As for his studies at the School of Medicine, Defendants never denied Plaintiff accommodations for his claimed disability. Upon his enrollment in the School of Medicine, Plaintiff did not seek accommodations from the School of Medicine for any disability. Sampson Decl. ¶ 14; Compl. ¶ 29; Ex 3. It was only after Plaintiff was notified that his performance in Phase I of his studies was academically marginal that he informed

5

the School of Medicine of his claimed disability. Compl. ¶ 44. Immediately upon being informed of Plaintiff's claimed disability, the School of Medicine provided Plaintiff with several accommodations, including extended time to complete examinations. Compl. ¶ 45. In addition, the School of Medicine supported Plaintiff in his efforts to obtain accommodations from NBME. *See, e.g.*, ECF No. 3-8 at 3 ("To its credit, the Medical School has supported Mr. Sampson's requests for accommodation to the NBME.").

As of August 2022, Plaintiff was not in compliance with the policies that would allow him to be considered a dual degree student entitled to more than seven years to complete his medical degree. *See* ECF No. 14 (Declaration of Andrew Wackett) ¶¶ 40, 41; ECF No. 14-1 (Academic Policies and Procedures Manual) §§ 4.7.3, 4.7.4.

## B.  Procedural history

Plaintiff filed the Complaint in this matter on July 29, 2022. ECF No. 1. Plaintiff sought to enjoin Defendants from "withdrawing him from medical school and denying him modification to the seven[-]year policy." Compl. at 22 (prayer for relief at ¶ A). On that same date, July 29, 2022, Plaintiff also filed a motion for a preliminary injunction seeking to maintain his status as an enrolled student. *See* ECF Nos. 2, 3. In his memorandum of law in support of that motion, Plaintiff indicated that he intended to pursue legal action against NBME. Pl.'s Mem. PI Mot. (ECF No. 3) at 10, 16, 20-22.

The Court held a telephonic status conference on August 4, 2022. *See* Ex. 1 to Declaration of Helena Lynch ("Lynch Decl.") (Tr., Aug. 4, 2022). At the August 4, 2022,

6

conference, counsel for Defendants notified the court that a conversation had already occurred with counsel for SBU, and that Defendants had already decided to keep Plaintiff enrolled as a student. Ex. 1 at 6. The only question was the exact length of time the status quo would be maintained—the Court and the parties agreed on an extension of the status quo until October 14, 2022. Ex. 1 at 16, 17.

The Court held a second status conference on October 6, 2022. Ex. 2 to Lynch Decl. (Tr. Oct. 6, 2022). Again, as counsel notified the Court, Defendants had already discussed the matter and decided to extend the status quo and keep Plaintiff enrolled as a student, and the only question was as to the exact length of the additional extension. Ex. 2 at 3, 4. This time the Court and the parties settled on sixty additional days. Ex. 2 at 4; ECF No. 17 (letter confirming Defendants' agreement to sixty-day extension of stay).

The Court then held a status conference on December 9, 2022, shortly after its decision granting injunctive relief in the NBME Action requiring NBME to provide testing accommodations. Ex. 3 to Lynch Decl. (Tr. Dec. 9, 2022). The parties notified the Court that they had reached an agreement with respect to resolution of the case, the primary term of which was that Defendants would allow Plaintiff until August 12, 2024, to complete his studies at the School of Medicine. Ex. 3 at 3. The parties requested a deadline of February 1, 2023, to complete the process of resolving the case. Ex. 3 at 3-4.

By letter dated January 31, 2023, defense counsel notified the Court that the parties were unable to reach full agreement on a resolution of the case, but that Defendants again

voluntarily decided to keep Plaintiff enrolled as a student. *See* ECF No. 21 (Letter, Jan. 31, 2023). As defense counsel later explained to the Court, when, after the December 9, 2022, conference, defense counsel circulated a stipulation with the agreed-upon settlement terms, Plaintiff's counsel responded with a different proposal that, among other things, did not lock in the agreed-upon August 12, 2024, date. Ex. 4 to Lynch Decl. (Tr. May 3, 2023), at 4.

The Court held a status conference on May 3, 2023, in the wake of the Second Circuit's vacatur of the preliminary injunction in the NBME Action. Ex. 4 The primary purpose of the May 3, 2023, conference was to place on the record a stipulation that Plaintiff would remain enrolled as a student at the School of Medicine until August 12, 2024. Ex. 4 at 2-4. The purpose of this stipulation was to resolve the Second Circuit's irreparable harm concern in the NBME Action, so that the Court could reissue the preliminary injunction in *that* action. Ex. 4 at 3. Counsel for Defendants clarified that Defendants had never withdrawn their offer to keep Plaintiff enrolled in the School of Medicine and allow him until August 12, 2024, to complete his studies. Ex. 4 at 5. To resolve the outstanding irreparable harm question in the NBME Action, the parties stipulated on the record that: (1) Plaintiff would have until August 12, 2024, to complete his studies; (2) Plaintiff will not be permitted to proceed to Phase III of his studies until he takes and passes the Step 1 exam; and (3) the stipulation does not include fees. Ex. 4 at 10-11, 16. The Court agreed with Defendants that an addition condition, proposed by

8

Plaintiff, regarding the deadline for his Step 2 exam, was outside the scope of the litigation. Ex. 4 at 13-14. The Court acknowledged that Defendants were not agreeing that Plaintiff is the prevailing party. Ex. 4 at 15. The Court also suggested that this matter "should just be no fees." Ex. 4 at 14.

The Court then held a status conference on June 13, 2023. Ex. 5 to Lynch Decl. (Tr., June 13, 2023). Plaintiff's counsel raised several academic policy issues of which the Court had no notice, Ex. 5 at 6, and none of which, except the deadline for the Step 2 exam, had been discussed with defense counsel, Ex. 5 at 8. Although the Court encouraged the parties to discuss and try to work through the academic policy issues, the Court also made clear that it was not in a position to decide any of those issues. Ex. 5 at 9-10.

The Court held an additional, very brief, status conference July 11, 2023, *see* Ex. 6 to Lynch Decl. (Tr., July 11, 2023), at which the parties informed the Court that they had worked out a settlement agreement that merely needed some "wordsmithing" with respect to certain ancillary issues, and that the settlement agreement would be held in abeyance pending the outcome of Plaintiff's then-anticipated fee motion. Ex. 6 at 3.

### STANDARDS FOR AWARD OF ATTORNEYS' FEES

A party seeking attorneys' fees under 42 U.S.C. § 12205 must first establish that it was the prevailing party in the litigation. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001). To be considered a prevailing party, "a plaintiff must not only achieve some material alteration of the legal relationship of the

parties, but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (internal quotation marks omitted).

The Second Circuit has consistently held that preliminary relief that merely maintains the status quo is not sufficient to confer prevailing party status: "[T]he procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status." *Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990).

Under certain circumstances, a party to a settlement agreement may be considered a prevailing party, but only where the resolution of the case had a sufficient "judicial imprimatur." *Roberson*, 346 F.3d at 80-81. A sufficient judicial imprimatur may be found where: (i) the court's order of dismissal expressly states that the court retains jurisdiction to enforce the settlement agreement, *see, e.g.*, *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 491 (S.D.N.Y. 2019) (citing *Roberson*, 346 F.3d at 77-78); or (2) the court's order of dismissal expressly incorporates the terms of the settlement agreement, *id*. (citing *Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143, 150 (2d Cir. 2009)). A court's mere "so-ordering" of a settlement agreement and stipulation of dismissal, without more, is insufficient to demonstrate the necessary judicial imprimatur. *Torres v. Walker*, 356 F.3d 238, 244 (2d Cir. 2004); *Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 356 F.3d 444, 451 (2d Cir. 2004) ("successful results obtained through private settlement agreements" is an

"example[] of the types of actions that would not convey the necessary imprimatur"); *Hess v. Astrue*, No. 09-cv-2516, 2010 WL 2723221, at *2 (E.D.N.Y. Apr. 2, 2010), *report and recommendation adopted*, No. 09-cv-2516, 2010 WL 2710447 (E.D.N.Y. July 6, 2010) ("In spite of the court's "so ordered" on the stipulation, it is clear that substantively, the court had virtually nothing to do with the plaintiffs having obtained the relief they sought and with the case being dismissed.").

Particularly relevant here, "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 598–99; *see Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 103 (2d Cir. 2009) (voluntary change in defendant's conduct not sufficient to confer prevailing-party status to the plaintiff."); *Choudhury v. Barnhart*, No. 04-cv-142, 2005 WL 2592048, at *2 (S.D.N.Y. Oct.2, 2005) ("voluntary change in behavior by a defendant—unprompted by judicial intervention—cannot ipso facto confer prevailing party status on the plaintiff"). "A party prevails when he establishes a legal entitlement to what he seeks, not when what he seeks is actually delivered." *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994) (internal quotation marks omitted).

11

**ARGUMENT**

**POINT I:      PLAINTIFF IS NOT THE PREVAILAING PARTY IN THIS LITIGATION, IN WHICH DEFENDANTS, INDEPENDENT OF ANY ACTION BY THE COURT, VOLUNTARILY OFFERED PLAINTIFF THE AUGUST 12, 2024, DEADLINE TO COMPLETE HIS STUDIES**

Plaintiff is not the prevailing party in this litigation. There has been no substantive judicial action, and there is not even a so-ordered settlement agreement, even though the litigation is resolved in substance pursuant to the independent, voluntary actions of Defendants.

From the outset, Defendants' decision to keep Plaintiff enrolled as a student at the School of Medicine was entirely voluntary and without Court involvement. *See* Ex. 1 at 6 (defense counsel notifying Court, at first conference, six days after commencement of the action, Defendants had already decided to keep Plaintiff enrolled). And on December 9, 2022, the parties notified the Court that they had reached a resolution of the litigation, pursuant to Defendants' voluntary offer to allow Plaintiff until August 12, 2024, to complete his studies. Ex. 3 at 3. At no point in the litigation did the Court become involved in the negotiations of the settlement terms. The Court merely encouraged the parties to continue to work on a resolution. *See, e.g.*, Ex. 5 at 9. Accordingly, the required judicial imprimatur on the outcome of this case is absent.

Plaintiff wrongly attempts to show that at the first conference, on August 4, 2022, the Court extracted the promise from Defendants to keep Plaintiff enrolled in the School of Medicine, *see* Pl.'s Mem. at 3, but the transcript plainly demonstrates that prior to the

conference Defendants had already independently and voluntarily decided to keep Plaintiff enrolled. Ex. 1 at 6. The only question was precisely how long the status quo would remain. Ex. 1 at 15-16. The same is true for the conference that occurred on October 6, 2022. As is clear from the transcript of that conference, Defendants had already independently and voluntarily decided to extend the status quo, and the only question was for how long. Ex. 2 at 3 (notifying Court that Defendants had already agreed to allow more time); ECF No. 17 (letter from H. Lynch to Court (Oct. 6, 2022) confirming Defendants' agreement to sixty-day extension). During the conference, defense counsel could represent that Defendants had voluntarily offered an extension up to thirty days, and just needed to check with Defendants to verify their agreement to a sixty-day extension instead, Ex. 2 at 3-4, which she immediately did, ECF No. 17.

Defendants' decision to keep Plaintiff enrolled in the School of Medicine remained entirely voluntary throughout the litigation. Critically, on December 9, 2022, the parties notified the Court that Defendants had voluntarily offered to keep Plaintiff enrolled at the School of Medicine and allow him until August 12, 2024, to complete his studies, effectively ending the litigation. Ex. 3 at 3-4. The Court's only involvement at that time was to set a date for a status report so as to be kept apprised of the progress. Ex. 3 at 5.

Plaintiff mistakenly relies on *Perez v. Westchester County Dep't of Corrections*, 587 F.3d 143 (2d Cir. 2009), to show the required judicial imprimatur on the resolution of this matter. *See* Pl.'s Mem. at 10-11. But there is a key distinction between this matter and

13

*Perez*: in *Perez*, but not here, the judge's actions included proposing the settlement terms, advising the parties on how they should expect the law to come out, and pressing defendants to make the agreement part of an enforceable stipulation. *Id*. at 147, 152. As the Second Circuit explained, the judge "played an integral role in the resolution of the suit." *Id*. at 152. No such circumstances occurred here. While the Court was plainly generous with its time and encouraging toward the parties in their efforts to resolve the matter, the Court did not "play an integral role in the resolution" of this matter. In an Order dated April 20, 2023, clarifying the posture of the litigation, the Court set forth Defendants' voluntary decisions throughout the litigation to keep Plaintiff enrolled as a student and explained that it "never ordered any interim relief" in this matter "because Stony Brook repeatedly consented to maintaining Sampson's enrollment as set forth above." ECF No. 22 (Order) at 3.

Plaintiff also relies on misrepresentations of the record in an attempt to show that the Court played an integral role in the resolution of the matter. Plaintiff incorrectly asserts that, at the May 3, 2023, conference, it was the Court's proposal that Plaintiff be given until August 12, 2024, to complete his studies. Pl.'s Mem. at 7, 12. There is no truth to Plaintiff's assertion. As the Court is aware, it was Defendants who voluntarily offered, in December 2022, to allow Plaintiff until August 12, 2024, to complete his studies, and defense counsel confirmed at the May 3, 2023, conference that that offer remained on the

table at all times. Ex. 4 at 4.[4] In addition, the Court's proposal—to put on the record Defendants' offer to keep Plaintiff enrolled until August 12, 2024—was to resolve the NBME Action. Ex. 4 at 3, 6. Specifically, the Court's proposal that the parties stipulate on the record to the previously discussed terms—*i.e.*, Defendants' voluntary offer in December 2022 to keep Plaintiff enrolled in the School of Medicine until August 12, 2024—was so that the Court could re-issue its preliminary injunction in the NBME Action. Ex. 4 at 6. As for this matter, the Court merely so-ordered the stipulation, which is unquestionably insufficient to demonstrate judicial imprimatur. *See, e.g., Torres*, 356 F.3d at 451.

The subsequent conference held on June 13, 2023, further demonstrates the lack of the Court's integral involvement in the matter's resolution. Plaintiff's counsel attempted to involve the Court in resolving Plaintiffs' questions relating to the School of Medicine's academic policies that never should have involved the time of the Court or counsel, but the Court rejected any such involvement and merely directed the parties themselves to work on resolving the ancillary academic policy issues. Ex. 5 at 8-9. The parties kept the Court apprised of the negotiations, but the Court was never involved in the negotiations.

---

[4] Defendants' letter dated May 1, 2023, mentioned maintaining the status quo "pending the results of Mr. Sampson's May 15, 2023, Step 1 exam, should he proceed with the exam." ECF No. 23. At that point, the Second Circuit had vacated the mandate to NBME to provide accommodations, and it was not clear whether Plaintiff would receive the accommodations he sought from NBME or whether and when he would take the Step 1 exam. *Id*. In any event, that statement had no bearing on Defendants' continued willingness to allow Plaintiff until August 2024 to complete his studies.

Judicial imprimatur cannot be based on "[t]he judge's mere awareness and approval of the terms of the settlement agreement." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

Plaintiff also misrepresents *Preservation Coalition of Erie County v. Fed. Transit Admin.*, 356 F.3d 444 (2d Cir. 2004), to suggest that Defendants voluntarily offered to keep Plaintiff enrolled "under threat" of injunctive relief, and that this resulted in a judicial imprimatur. *See* Pl.'s Mem. at 10. What actually occurred in *Preservation Coalition* is that the court ordered defendants to prepare an environmental report, and threatened injunctive relief if the defendants failed to prepare the report in accordance with the court's order. *Id.* at 448 ("[W]e conclude that appellee attained prevailing party status under *Buckhannon* when it obtained the court order requiring appellants to prepare a SEIS under threat of further injunctive relief."). Nothing of the like occurred here. In any event, even if the Court had issued an injunction maintaining the status quo pending the outcome of the NBME Action, such an order would not convey prevailing party status on Plaintiff. *See Christopher P.*, 915 F.2d at 805.

In sum, the governing law directs that Plaintiff is not entitled to a fee award. There is no judicial imprimatur on the resolution of this case, which involved no substantive judicial rulings and was resolved pursuant to Defendants' independent, voluntary actions. Therefore, there is no basis to confer prevailing party status on Plaintiff.

16

**POINT II:    A FEE AWARD IS INAPPROPRIATE HERE WHERE THERE IS NO MERIT TO PLAINTIFF'S DISCRIMINATION CLAIMS AND PLAINTIFF CREATED, OR AT LEAST COULD HAVE AVERTED, THE CIRCUMSTANCES LEADING TO THIS LITIGATION**

In addition to the fact that Plaintiff is not a prevailing party under the governing law, it would be detrimental to the administration of justice for Plaintiff to be considered a prevailing party. There was never any merit to Plaintiff's claims against Defendants in this unusual litigation. Instead, Defendants are simply caught in the middle of a dispute between Plaintiff and NBME. Under these circumstances, a fee award is not justified. *See LaRouche*, 20 F.3d at 74 (reversing fee award where "there is no viable argument here that appellees' constitutional claims would have succeeded under the law").

Plaintiff wrongly asserts that the commencement of this matter was necessary in order to allow him time to sue NBME. Pl.'s Mem. at 9. Plaintiff is wrong because the only reason this matter ever needed to be commenced was Plaintiff's failure to take legal action against NBME in a timely manner. Plaintiff has known since 2017 that NBME did not intend to provide his requested accommodations. *See, e.g.*, Compl. ¶ 66. And, Plaintiff's counsel understood all along that legal action against NBME would be required. *See* Compl. ¶ 53 ("The NBME . . . has a long history of denying medical students' well-documented requests for accommodation."); Pl.'s Mem in Support of PI Mot. (ECF No. 3) at 5; Ex. 1 at 7 ("NBME is notorious for denying requests for accommodations for students with disabilities."). Indeed, counsel for Plaintiff has sued NBME in the past

17

based on its denial of requested accommodations. *See, e.g.*, Ex. 1 at 8. Yet, Plaintiff still had not sued NBME at the time he commenced this action. *See, e.g.*, Ex. 1 at 7.

In addition, Plaintiff makes no showing of any discriminatory action against him by Defendants. Plaintiff did not inform the School of Medicine of his claimed disability until 2017. *See, e.g.*, Compl. ¶¶ 29, 44. The School of Medicine responded by immediately providing Plaintiff accommodations, including extra time to complete exams. Compl. ¶ 45. Plaintiff was otherwise treated equally to all other students. Plaintiff was required to take actions in 2017 to address his academic marginality, but this had nothing to do with discrimination. The School of Medicine may require any student who demonstrates academic marginality during the Phase I studies to re-take courses. *See* ECF No. 14-1 (Academic Policies and Procedures Manual), § 5.5.1. Indeed, the School of Medicine is authorized to dismiss a student who displays a pattern of marginal academic performance. *Id*. And, notably, the School of Medicine supported Plaintiff in his efforts to obtain accommodations from NBME. *See, e.g.*, ECF No. 3-8 at 3 ("To its credit, the Medical School has supported Mr. Sampson's requests for accommodation to the NBME.").

There was nothing discriminatory about requiring Plaintiff to comply with the seven-year limit for completing studies. The seven-year limit applied to Plaintiff because he did not meet the criteria for a leave of absence to pursue a dual degree. *See* ECF No. 14-1, §§ 4.7.3, 4.7.4. As of August 12, 2022, when there was no relief on the horizon from NBME, Plaintiff was seeking an open-ended suspension of his deadline for completing

18

his studies. *See* ECF No. 3-15 (letter from M. Vargas to S. Shane (Mar. 21, 2022)). There is nothing discriminatory about not allowing a student to indefinitely suspend the deadlines that apply equally to all students.

The complete lack of merit of Plaintiff's claims of discrimination by Defendants also disqualifies Plaintiff from a fee award. *LaRouche*, 20 F.3d at 74.

Plaintiff points out the policy reasons for fee awards in cases involving alleged disability discrimination, *see* Pl.'s Mem. at 8-9, and devotes much of his supporting papers to explaining those policy reasons, *see* Decl. of Lisa Meeks; Decl. of Lawrence Berger. But the policy reasons for fee awards in disability discrimination cases have no relevance here, where Defendants acted in anything but a discriminatory manner toward Plaintiff, and this litigation would never have come into being had Plaintiff and his counsel timely taken the knowingly necessary action against NBME, Plaintiff's only true adversary in these circumstances. Plaintiff's counsel devotes many pages to demonstrating their expertise in the area of disability discrimination, particularly in the education context. *See* Decl. of Mary Vargas; Decl. of Charles Weiner; and Decl. of Michael Stein. But demonstrations of Plaintiff's counsel's expertise only reinforce this point. Plaintiff's counsel should have known, and indeed did know, what they should have done to avoid litigation against Defendants.

In sum, a fee award would be detrimental to the administration of justice here, where there is no merit to any allegations of wrongdoing by Defendants, who were sued

because they were caught in the middle of a dispute between Plaintiff and NBME, under circumstances that Plaintiff and his counsel created, or at least could have readily averted.

**POINT III:   IF THE COURT WERE TO AWARD FEES, THE AWARD SHOULD BE A FRACTION OF WHAT PLAINTIFF SEEKS**

As set forth above, Plaintiff is not a prevailing party, and he is not entitled to any fees. But, should the Court disagree, fees should be cut off as of December 9, 2022, when the parties represented on the record that Defendants had voluntarily offered to allow Plaintiff until August 12, 2024, to complete his studies, effectively resolving the case. Plaintiff should not be rewarded for insisting on keeping the case open unnecessarily.

Plaintiff sought to enjoin Defendants from "withdrawing him from medical school and denying him modification to the seven[-]year policy." Comp. at 22 (prayer for relief at A). In early December 2022, Defendants made the voluntary decision to offer to keep Plaintiff enrolled and allow him until August 12, 2024, to complete his studies. That offer became the basis for resolving this matter. *See, e.g.*, Ex. 4 at 6. Accordingly, Plaintiff could have resolved this litigation in December 2022 or shortly thereafter. Indeed, Plaintiff agreed and represented on the record that the parties had reached agreement to resolve the matter. Ex. 3 at 3-4. The litigation was over at that point, and the only reason the litigation was not resolved according to the terms of December 2022 offer is that Plaintiff's counsel thereafter introduced a proposal that differed from the agreed-upon terms discussed with the Court on December 9, 2022, *see* Ex. 4 at 4, and then compounded their

actions by seeking to involve defense counsel and the Court in the resolution of academic policy questions, *see generally* Ex. 5.

Accordingly, if the Court disagrees with Defendants and concludes that Plaintiff should receive a fee award, any such fees should be cut off as of December 9, 2022, the date that the parties jointly represented that they had reached agreement to resolve the litigation. According to the records submitted by Plaintiff, three attorneys billed time for this matter: Mary Vargas billed a total of $38,700, *see* Pl.'s Ex. 4 (Ex. B thereto); Charles Weiner billed a total of $26,010, *see* Pl.'s Ex. 13 (Ex. A thereto); and Michael Stein billed a total of $17,382.50. *See* Pl.'s Ex. 14 (Ex. B thereto).

After deducting all entries after December 9, 2022, the total for Mary Vargas adjusts to $21,060; the total for Charles Weiner adjusts to $15,390; and the total for Michael Stein adjusts to $11,007.50, resulting in an adjusted award of $47,457.00. *See* Ex. 7 to Lynch Decl. (PDF version of spreadsheet with post-December 9, 2022, entries).

In addition, Plaintiff seeks $598.94 in costs, but he should not be entitled to recover the $196.94 in costs for transcripts for this motion. Accordingly, the costs should be limited to the $402.00 filing fee, resulting in an award, should the Court disagree with Defendants' showing that Plaintiff is not entitled to fees under the governing law, of $47,857.00 ($47,457 + $402.00) at most.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's motion for attorneys' fees and costs, and grant such other and further relief that the Court deems just and equitable.

Dated: Mineola, New York
September 22, 2023

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for Defendants*
By: _/s/ Helena Lynch_
Helena Lynch
Assistant Attorney General, *of Counsel*
200 Old Country Road, Suite 240
Mineola, New York
(516) 248-3312 | Helena.Lynch@ag.ny.gov