IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:22-cv-04490-JMA |
| | : | |
| STONY BROOK UNIVERSITY, *et al.* | : | |
| | : | |

**REPLY BRIEF IN SUPPORT OF SAMPSON'S FEE PETITION**

This Court's active involvement in this case was necessary to ensure that Sampson was able to remain in medical school, take and pass Step 1 with accommodations, and resume his medical school studies. This Court expressed its views of the case to Stony Brook at the very first status conference, repeatedly made known its preference that Stony Brook not take any adverse action against Sampson, issued a preliminary injunction order against NBME that could not have issued if this Court was going to deny the motion for preliminary injunction against Stony Brook, and proposed stipulated terms resolving the substantive claims that it then entered as an order.

These developments belie Stony Brook's repeated claims that this Court had no involvement whatsoever in ensuring that Sampson remained enrolled in medical school so he could take the Step 1 examination with accommodations and resume his progression in medical school. This Court's extensive involvement in this case was judicial imprimatur that materially altered the legal relationship between the parties, for as a result of this Court's stipulated terms that the parties accepted, Stony Brook must permit Sampson until August 2024 to graduate – the relief Sampson sought and was denied by counsel for Stony Brook both before and after litigation was filed.

1

### A. Stony Brook Sought To Dismiss Sampson From Medical School Before He Could Take Step 1 With Accommodations

Stony Brook incorrectly portrays itself as some "innocent bystander" caught in the middle of a case between Sampson and NBME. In reality, Stony Brook affirmatively sought to dismiss Sampson from medical school in August 2022, knowing that once Sampson was dismissed from the program, he would no longer be eligible to take Step 1. Had Stony Brook had its way, Sampson would no longer be in medical school and would not have been able to take Step 1 in May 2023 with accommodations. Sampson was able to take and pass the Step 1 examination and enter his final year of medical school because of this Court's involvement to ensure that Sampson remained an enrolled student eligible to take the examination.

### B. This Court's Involvement Was Necessary To Ensure Sampson's Continued Enrollment in Medical School

Stony Brook distorts the record in repeatedly claiming that this Court played no role in ensuring that Sampson remained enrolled and has until August 2024 to graduate.

<u>August 4, 2022 Status Conference and Subsequent Preliminary Injunction Briefing</u>

Stony Brook claims that it had already decided to extend Sampson's student status prior to the August 4, 2022 status conference. Stony Brook does not dispute, however, that the day prior to the status conference on August 4, 2022, Stony Brook had refused a request by Sampson's counsel that the university stay action on Sampson's status pending the NBME litigation. Fee Petition, Ex. 4, Decl. of Mary Vargas, at ¶ 25. Stony Brook not only declined the request by Sampson's counsel but also reaffirmed its intent to dismiss Sampson. *Id*. It was only at the status conference the next day, after this Court stated its view that Sampson should remain enrolled and asked Stony Brook to stay action on Sampson's student status until the completion

2

of preliminary injunction briefing that Stony Brook granted the concession that Sampson's counsel had directly sought from Stony Brook.[1]

Moreover, Stony Brook's concession was limited to the need for time for this Court to review the pending motion for preliminary injunction, and Stony Brook thereafter filed briefing asserting that Sampson should *not* be permitted to remain in medical school despite the pending litigation against NBME. In this manner, Stony Brook continued to stake out the position that Sampson should not be permitted to stay in medical school in order to take Step 1 with accommodations, forcing Sampson's counsel to incur fees in briefing this issue.

### October 6, 2022 Status Conference

Stony Brook again distorts the record when it states that it voluntarily agreed in October 2022 to an additional stay of 60 days. The transcript shows that this Court requested 60 days and that Stony Brook's counsel pushed back against this request. Fee Petition, Ex. 6, Oct. 6, 2022 Tr., at 3:18-4:4. Further, subsequent to the hearing, Stony Brook filed a letter with this Court stating that it was consenting to the 60-day extension only at the "instruction" of the Court. Dkt. No. 17. Stony Brook cannot now claim that it voluntarily consented to a 60-day stay when it made clear at the time that the additional stay was at this Court's "instruction".

### December 9, 2022 Status Conference and NBME's Subsequent Appeal

Stony Brook again erroneously claims that no court involvement was necessary for it to tentatively permit Sampson until August 2024 to graduate. Rather, Stony Brook had vigorously sought to dismiss Sampson from medical school, and this changed only after this Court issued

---

[1] Stony Brook's counsel claims that her client had authorized her to consent to an extension at this Court's request. What Stony Brook's counsel did not say, however, was that this Court had to ask in order for Stony Brook to consent to a stay, as Stony Brook had refused the same request by Sampson's counsel the previous day. Ex. 4, Decl. of Mary Vargas, at ¶ 25.

3

the preliminary injunction against NBME making clear this Court's view that Sampson should have the opportunity to take Step 1 with accommodations and "progress in his medical training." *Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 2:22-cv-05120-JMA-AYS, slip op. at 40 (E.D.N.Y. Dec. 2, 2022). When confronted with this Court's view of the merits, Stony Brook finally began discussing permitting Sampson to remain enrolled through August 2024 (as opposed to merely extending his enrolled status by several weeks at a time pending litigation). This timing shows the force that this Court's active involvement had in prompting Stony Brook to reconsider its refusal to permit Sampson to remain enrolled so that he could take Step 1 with accommodations.

In December 2022, with this Court's preliminary injunction order against NBME in place, Sampson and Stony Brook hoped to be able to reach settlement and requested additional time to negotiate a resolution. NBME, however, filed an interlocutory appeal shortly thereafter that sought to undo the preliminary injunction that would have permitted Sampson to take Step 1 with accommodations, depriving Sampson and Stony Brook of the certainty that they needed to reach settlement. As Stony Brook acknowledged in a letter to this Court stating that the parties had been unable to reach settlement, "The Second Circuit's ruling will inform the parties' respective positions in this matter, and the feasibility of resolving this matter, going forward." Dkt. No. 21.[2]

## Events Subsequent to the Second Circuit Decision

Further belying Stony Brook's claim that no court involvement was required to ensure that Sampson remains an enrolled student until August 2024, Stony Brook tried to reverse course

---

[2] Sampson disputes Stony Brook's self-serving characterization of settlement talks. Moreover, the details of the settlement negotiations are protected by Fed. R. Evid. 408, and in any event are irrelevant given NBME's subsequent appeal that forced the parties to await the outcome of the Second Circuit decision and this Court's subsequently urging the parties to enter into the proposed stipulated terms that this Court proposed.

4

after the Second Circuit's ruling. Stony Brook stated in a letter immediately following the Second Circuit's ruling that it would permit Sampson to remain enrolled another two weeks, and notably dropped any mention of an August 2024 graduation date. Dkt. No. 23. This Court took note of that omission, calling out Stony Brook on its "sudden reversal". Fee Petition, Ex. 8, May 3, 2023 Tr., at 3:3-7; 3:17-18. This Court then proposed terms for the parties to stipulate to and gave the parties an hour to work out the wording of the stipulation. Stony Brook also does not dispute that this Court subsequently revised the wording of the parties' proposed stipulation and then entered the revised stipulation as an order.

These events belie Stony Brook's claims through its brief that this Court "did not play an integral role in the resolution of this matter," and that there was "no prompting by the Court or any other involvement of the Court." *See, e.g.*, Defs.' Br. at 2, 14. This Court was instrumental in resolving this dispute on the terms that it itself proposed and then entered as an order. Stony Brook's attempts to distinguish *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009), on this ground therefore fail. As discussed in Sampson's opening brief, the Second Circuit held in the *Perez* case that there is judicial imprimatur when the district court expresses its view of the merits and presses the parties to enter into an enforceable stipulation based on terms that the court proposed. *Id.* at 152-53. *Perez* is directly on point, and for the reasons the Second Circuit stated in that case, Sampson is a prevailing party.

### C. Stony Brook Does Not Dispute that the Stipulated Order Resulted in Material Alteration of the Legal Relationship Between the Parties

Stony Brook does not contest that the stipulated order resulted in a material alteration of the legal relationship between the parties. As a result of the stipulated order that this Court

5

prompted the parties to enter into, Stony Brook "can no longer freely reverse" course and must permit Sampson until August 2024 to graduate. *Perez*, 587 F.3d at 150.

The Second Circuit explained, in a case that Stony Brook relied on in its brief, that "[s]tatus as a prevailing party is conferred whenever there is a *court ordered* change in the legal relationship between the plaintiff and the defendant or a material alteration of the legal relationship of the parties." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 108 (2d Cir. 2009) (emphasis in original) (citation omitted). Since in Sampson's case, there was a stipulated court order entered at this Court's prompting that materially altered the parties' legal relationship, Sampson is a prevailing party.

Notably, this material alteration of the legal relationship between the parties was a direct result of this Court's proposed stipulated terms that the parties accepted and which this Court entered as an order. Stony Brook has not and could not have explained how else the legal relations between the parties was materially altered. It was this Court's order that materially altered relations between the parties.

This Court's involvement in entering the stipulated order was not "mere awareness" of the terms, as Stony Brook argues, but rather the result of this Court directly prompting the parties to enter into such a stipulation. Consequently, Stony Brook misplaces reliance on cases such as *Hess v. Astrue*, in which the "stipulation" at issue was merely a stipulation of dismissal. No. 09-cv-2516, 2010 WL 2723221, at *2 (E.D.N.Y. Apr. 2, 2010), *report and recommendation adopted*, 2010 WL 2710447 (E.D.N.Y. July 6, 2010) (noting that the parties settled three days after the suit was filed).³ The stipulated terms in this case were the direct result of this Court's

---

³ Moreover, *Hess* itself noted that, in contrast to a case when a court merely grants a stipulated dismissal, there is judicial imprimatur when a court has "extensive involvement",

6

active involvement, and contained significant material terms (as opposed to a mere dismissal of the case).[4] *Perez* is, again, directly on point with respect to this Court's significant involvement in prompting the parties to enter into a stipulated order. 587 F.3d at 152-53.

Since the legal alteration in the material relations between the parties was a direct result of this Court's extensive involvement and entry of a stipulated order with terms that it itself had proposed, this case is a clear example of judicial imprimatur materially altering the legal relations between the parties.

### D. Sampson's Claims Were Meritorious and He Obtained the Relief Sought

Stony Brook devotes a significant portion of its brief to relitigating the merits, *i.e.*, that Sampson should not be permitted to remain enrolled in medical school. The parties briefed the merits at length during preliminary injunction briefing, and this Court subsequently declared that

---

"close management" and plays an "integral role" in resolving the case. 2010 WL 2723221, at *2 (quoting *Perez*, 587 F.3d at 150-52).

Stony Brook also cited *Torres v. Walker*, 356 F.3d 238 (2d Cir. 2004), a case that addressed the inapposite issue whether there should be a cap on fees when an inmate accepted a Rule 68 offer that provided for reasonable attorneys' fees. *Id.* at 240-41. *Torres* is also distinguishable because that case dealt with a private agreement reached by the parties that required no court involvement. *Id.* at 244-45 (noting that there was nothing in the record showing that the court had reviewed the terms of stipulation).

[4] Stony Brook's reliance on voluntary cessation cases which had no court order substantially altering the material relations between the parties are therefore legally and factually inapposite. *See Garcia*, 561 F.3d at 101, 103-06 (court took so long to rule on a motion for preliminary injunction that the plaintiff students had graduated in the meantime, and then the court had improperly tried to retroactively issue the injunction); *Choudhury v. Barnhart*, No. 04-cv-142, 2005 WL 2592048, at *2 (S.D.N.Y. Oct. 2, 2005) (plaintiff had argued prevailing party status based on the court granting a motion to voluntarily dismiss the case).

*Christopher P. v. Marcus*, 915 F.2d 794 (2d Cir. 1990), is distinguishable because in that case, the plaintiff *lost* on the merits of the case. *Id.* at 805. The court had declined to award declaratory relief because the plaintiff was no longer a student at the defendant school and the case was moot. *Id.* at 802-03. In Sampson's case, however, a live dispute remained regarding Sampson's student status until this Court intervened by proposing stipulated terms and entered the Order that altered the legal relations between the parties.

7

Sampson should have the opportunity to take Step 1 with accommodations and "progress in his medical training." *Sampson v. Nat'l Bd. of Med. Exam'rs*, Dkt. No. 46, at 40.  This Court's ruling in the NBME case was a rejection of Stony Brook's arguments that Sampson should not be permitted to remain enrolled in medical school in order to take Step 1 with accommodations.  The subsequent stipulation that the parties entered into at this Court's direction ensured that Sampson had that opportunity to take and pass Step 1 with accommodations.  Since Sampson obtained the relief sought—continued enrollment in medical school and a fair opportunity to take Step 1 and progress in his medical studies—as a result of this Court's involvement, his claims were clearly meritorious.

### E. Straightforward Application of the Lodestar Is Reasonable

Stony Brook does not contest the hourly rates requested for Sampson's counsel.  Stony Brook also does not argue that any of Sampson's counsel's time was duplicative or inefficiently spent.  Therefore, the straightforward application of the lodestar should apply in this case.  *See, e.g.*, *Perdue v. Kenny A.*, 559 U.S. 542, 546, 554 (2010) (there is a "strong presumption" that the lodestar is reasonable).

Stony Brook's only argument with respect to the amount of the fees is to claim that all time after December 9, 2022 should be excised, a proposition for which it provided no legal authority.  Stony Brook's argument also rests on the faulty premise that Stony Brook had agreed by then to permit Sampson until August 2024 to graduate when in fact, as noted *supra*, Stony Brook noted in a letter to this Court that the parties needed to wait until after the Second Circuit ruled on NBME's appeal in order to determine the "feasibility of resolving this matter" and then after the Second Circuit had ruled, Stony Brook tried to walk back from August 2024 timeline.  These events made necessary the May 3, 2023 conference in which this Court prompted the

8

parties to accept its proposed terms in resolving the case. This status conference and the order that entered subsequently were key judicial imprimatur that rendered Sampson a prevailing party, and Sampson necessarily incurred fees for this to occur.

Stony Brook's artificial December 9, 2022 cutoff also overlooks that courts award "a reasonable fee for preparing and defending a fee application." *E.g.*, *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017).

Since Stony Brook's argument that no fees should be awarded for work after December 9, 2022 overlooks significant compensable work that took place after that date, this Court should instead follow the straightforward lodestar approach that Stony Brook has not otherwise challenged.

### F. Sampson's Costs Are Reasonable

Stony Brook does not dispute the reasonableness of reimbursing Sampson for the cost of filing the complaint in this case. Stony Brook offers no argument why Sampson should not be reimbursed transcript costs necessarily incurred in preparing the fee petition. Transcript costs are a taxable cost pursuant to 28 U.S.C. § 1920(2), and may also be awarded under the ADA which provides for reimbursement of "litigation expenses, and costs." 42 U.S.C. § 12205.

### G. Sampson Incurred Additional Fees in Opposing Stony Brook's Opposition to Fee Petition

Sampson incurred additional legal fees in responding to Stony Brook's opposing to the fee petition. Courts have awarded such fees as part of a fee award. *See, e.g.*, *Hines*, 862 F.3d at 223; *Garcia v. SBKU Servs.*, 17-CV-03130(JMA)(ARL), 2021 WL 1186321, at *2 (E.D.N.Y. Mar. 30, 2021) (Azrack, J.).

After exercising billing discretion, including waiving all time spent on the reply brief by Charles Weiner, Sampson seeks fees only for the time Michael Stein and Mary Vargas spent in preparing this brief. Stein worked 8.3 hours at a requested rate of $425, and Mary Vargas worked 1.7 hours at a requested rate of $450. *See* Ex. A, Decl. of Michael Stein; Ex. B, Decl. of Mary Vargas. Applying the lodestar yields a total of $4,292.50 in reasonable attorneys' fees incurred in responding to Stony Brook's opposition to the fee petition.

## H. Conclusion

For the reasons stated in Sampson's fee petition and reply brief, this Court should award $82,092.50 in reasonable fees through the opening brief, $4,292.50 for work done on the reply brief, and $598.94 in reasonable costs.

Respectfully submitted,

*s/Mary C. Vargas*
Mary C. Vargas
Michael S. Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel.:   (240)793-3185
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

Charles Weiner
LAW OFFICES OF
  CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Tel:   (267)685-6311
charles@charlesweinerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system on October 6, 2023, on the following counsel of record for Stony Brook:

Helena Lynch
Assistant Attorney General
Office of the New York State Attorney General
helena.lynch@ag.ny.gov

*s/ Mary C. Vargas*
Mary C. Vargas
