# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand twenty-five.

PRESENT:

>GERARD E. LYNCH,
>BETH ROBINSON,
>ALISON J. NATHAN,
>>*Circuit Judges*.

_____

ROBERT SAMPSON,

>*Plaintiff-Appellant*,

>v.      No. 24-615

STONY BROOK UNIVERSITY, MAURIE MCINNIS, IN HER OFFICIAL CAPACITY AS PRESIDENT OF STONY BROOK UNIVERSITY,

>*Defendants-Appellees*.

_____

MANDATE

MANDATE ISSUED ON 03/26/2025

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | ANDREW J. DHUEY, Esq., Berkeley, CA (Bridget A. Clarke, Berkeley, CA; Mary C. Vargas, Michael Steven Stein, Stein & Vargas, LLP, Washington, D.C.; Charles Weiner, Law Office of Charles Weiner, Doylestown, PA, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | JOSHUA N. COHEN, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Judith N. Vale, Deputy Solicitor General, *on the brief*) *for* Letitia James, Attorney General of the State of New York, New York, NY. |

Appeal from an order of the United States District Court for the Eastern District of New York (Azrack, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on February 7, 2024, is **AFFIRMED**.

Plaintiff-Appellant Robert Sampson appeals the district court's order denying him an award of attorney's fees in connection with his suit against Defendants-Appellees Stony Brook University and its President (together, "Stony Brook") for violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In a separate action, Sampson, a medical student, sued non-party National Board of Medical Examiners ("NBME") after it denied him testing accommodations in connection with a nationally administered test that he had to pass in order to advance in his medical studies at Stony Brook.  In this case against Stony Brook, he alleged that Stony Brook violated the ADA and the Rehabilitation Act by failing to accommodate his need for additional time to graduate so he could secure the testing accommodations from NBME, take and pass the test, and then complete his medical studies.

In the NBME litigation, the district court issued an injunction requiring NBME to provide Sampson testing accommodations, which the Second Circuit subsequently vacated based on a lack of irreparable harm because "Sampson's alleged inability to progress in medical school depend[ed] not only on the outcome of [his] lawsuit [against NBME], but also on" whether he would be able to obtain an extension of his graduation date from Stony Brook. *Sampson v. National Board of Medical Examiners*, 2023 WL 3162129, at *1 (2d Cir. May 1, 2023).[1] Subsequently, in the Stony Brook litigation, on May 3, 2023, the parties stipulated that Stony Brook would give Sampson until August 12, 2024, to complete his medical education and

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

3

that Sampson would not advance to phase three of his medical education until he took and passed the exam in question. The parties' agreement accordingly established that Sampson would suffer irreparable harm if NBME did not provide him testing accommodations, which would thereby permit the district court to re-issue the injunction against NBME as the August 12, 2024 graduation date gave Sampson time to complete the requirements for his medical degree if he passed the imminent test. The stipulation, which expressly reserved the issue of attorney's fees, was memorialized in a court order.

Subsequently, Sampson moved for attorney's fees. On February 7, 2024, the court issued its decision denying Sampson's request for fees. The district court concluded that Sampson was not a prevailing party entitled to attorney's fees or, in the alternative, that special circumstances existed to warrant declining to impose attorney's fees.

By that time, Sampson had apparently passed the exam and was excelling in his clinical rotations, and the parties had reached an impasse with respect to a final settlement agreement. Concluding that Sampson had attained all the relief he sought in the case, the court then dismissed the action as moot. Sampson

4

appeals, challenging the district court's order denying his request for attorney's fees.

Under the ADA, the district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 12205. "[P]laintiffs are only eligible for [attorney's] fees if they achieve some material alteration of the legal relationship between them and their adversaries, and that change bears a judicial imprimatur." *Perez v. Westchester County Dep't of Corrections*, 587 F.3d 143, 149 (2d Cir. 2009) (emphasis omitted). Whether Sampson is a prevailing party is a question of law that we review without deference to the district court's reasoning. *Id.*

The district court concluded that Sampson was not a prevailing party because there was insufficient judicial imprimatur on the resolution of Sampson's claims. We agree that Sampson was not a prevailing party. Although he achieved his goal in extending his graduation deadline enough to allow him to attain accommodations from NBME, take and pass the test, and complete his medical studies, we conclude on the specific facts of this case that he did not secure enduring relief bearing sufficient judicial imprimatur to support his claim for fees.

5

"A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 605 (2001) (emphasis omitted). "Rather, a plaintiff 'prevails' under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Lackey v. Stinnie*, 604 U.S. __, 2025 WL 594737, at *6 (2025) (interpreting 42 U.S.C. § 1988). "[T]he enduring nature" of the change in the parties' legal relationship "must itself be judicially sanctioned." *Id*.

Thus, a plaintiff who successfully secures interim relief in the form of a preliminary injunction, and then ultimately achieves the desired result due to extrinsic factors that moot the case, may not be a prevailing party. *Id.* at *5–7. On the other hand, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. at 604; *see also Lackey*, 2025 WL 594737, at *8 ("So a consent decree is like a final judgment in the relevant ways: It conclusively resolves the claim, bears a judicial *imprimatur*,

and may grant enduring relief that materially alters the legal relationship between the parties.").

While the stipulation between the parties here was memorialized in a court order, that is not in itself sufficient to convert this agreement into the equivalent of a consent decree enforceable by the court. *Cf. Torres v. Walker*, 356 F.3d 238, 243–45 (2d Cir. 2004) (declining to treat a "so-ordered" stipulation of dismissal as the equivalent of a judgment or consent decree for the purposes of the Prison Litigation Reform Act fee cap because it "contained no obligations of the court that were beyond the power of the parties to perform" and "nothing in the record" indicated that the district court reviewed its terms); *see also Perez*, 587 F.3d at 151 n.6 (distinguishing the so-ordered stipulation in *Torres* as lacking sufficient judicial imprimatur because it "neither retained jurisdiction to enforce the underlying settlement[] nor incorporated the settlement['s] terms"). In fact, Stony Brook explicitly rejected Sampson's proposal to enter into a consent decree.

Nor was the stipulation incorporated into the order of dismissal. *See Buckhannon*, 532 U.S. at 604 n.7 ("[F]ederal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal."). The district court dismissed Sampson's

7

action as moot and did not retain jurisdiction to enforce the order approving the parties' stipulation.  *See Roberson v. Giuliani*, 346 F.3d 75, 83 (2d Cir. 2003) (concluding plaintiffs were prevailing party when dismissal order expressly provided for the court's retention of jurisdiction for enforcement purposes); *Perez*, 587 F.3d at 152 (concluding plaintiffs were prevailing party when dismissal order "explicitly incorporate[d] the terms of [the] settlement [agreement]").

Contrary to Sampson's assertions that the district court judge here "proposed, reviewed, revised, and approved" the terms of the stipulation, Appellant's Brief 37, the court was not significantly involved in crafting the specifics of the agreement or passing judgment on the merits of the litigation. *See Perez*, 587 F.3d at 152 ("[The district court judge] played an integral role in the resolution of the suit, he advised the parties on how they should expect the law to come out, he suggested appropriate settlement terms . . . ."). In updating the court on the parties' progress, counsel communicated the relevant terms of their proposed agreement to the court during a status conference on December 9, 2022. At most, the district court helped move the parties' negotiations forward in a time-sensitive context in which their agreement was essential to advancing Sampson's

position in a parallel litigation. That involvement is not sufficient to impart an enduring judicial imprimatur for purposes of attorney's fees.

\* \* \*

For these reasons, the district court's order is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

9